## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY NOVAK,** | ) | **CASE NO.  1:17-CV-2148** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **THE CITY OF PARMA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff Anthony Novak filed this civil rights action against the City of Parma (the "City"), Parma police officers Kevin Riley and Thomas Connor ("the Officer Defendants"), and John Doe, a law enforcement official and member of the Ohio Internet Crimes Against Children Task Force (collectively, the "Defendants") on October 10, 2017.  Doc #: 1.[1]  He filed his First Amended Complaint on October 18, 2017.  Doc #: 6.[2]  Before the Court are two motions: the City and the Officer Defendants each filed a Motion to Dismiss for Failure to State a Claim on January 15, 2018.  Doc #: 12, 13.  Plaintiff filed his Responses to the Motions on February 28, 2018.  Doc #: 15, 16.  The Defendants filed Replies on March 28, 2018.  Doc #: 17, 18.

---

[1]Plaintiff previously filed this action on September 19, 2016 but it was later dismissed without prejudice on January 25, 2017.  *See Novak v. City of Parma*, et al., 1:16-cv-2335.

[2]All citations are to the First Amended Complaint, Doc #: 6.

For the following reasons, the Motions are **GRANTED in part** and **DENIED in part**. Plaintiff's Claims 10 (Property Retention) and 29 (Replevin) are **DISMISSED WITH PREJUDICE**.  Claims 17 (Unconstitutionally Vague and Overbroad) and 18 (Unconstitutional As Applied) are **DISMISSED WITHOUT PREJUDICE**.  All remaining claims may proceed.

## I.     Facts

On a motion to dismiss, the court construes all well-pleaded facts in the light most favorable to the plaintiff.  *Johansen v. Presley*, 977 F. Supp. 2d 871, 876 (W.D. Tenn. 2013).

### A.     The Facebook Page

On March 2, 2016, Plaintiff created a Facebook page (the "Facebook Page") to criticize the Parma Police Department (the "Department") by posting parodies of Department releases. Compl. ¶ 45.  Specifically, he created the Facebook Page to anonymously voice his criticism and frustration on matters of public concern like the Department's policing priorities, racial sensitivity, and respect for civil rights, among others.  Compl. ¶ 49, 62.  He posted six times to the Facebook Page during the 12 hours it remained online and attracted less than 100 followers. Compl. ¶¶ 45, 55.  The six posts included ones such as:

a. An apology for neglecting to inform the public about an armed white male who robbed a Subway sandwich shop, requesting assistance identifying the "African American woman" loitering in front of the shop while it was robbed "so that she may be brought to justice."

b. A "Food Drive to benefit teen abortions" at which officers "will be giving out free abortions to teens using an experimental technique discovered by the Parma Police Department" "in a police van in the parking lot at Giant Eagle."

c. A "temporary law" introduced by the Department forbidding "residence [sic] of Parma from giving ANY HOMELESS person food, money or shelter in our city" as "an attempt to have the homeless population eventually leave our city due to starvation."

-2-

*Id.*  Unlike the Department's official page, the Facebook Page displayed the logo "We no [sic] crime." and was designated as a "community" fora instead of the official designations used in official police department pages.  Compl. ¶ 46.  Plaintiff's Facebook Page also lacked the official Facebook verification feature.  Compl. ¶ 47.  This feature signals to a person visiting a Facebook page that the authenticity of the page has not been verified.  *Id.*  The Department's official website links users directly to the Department's official Facebook account. *Id.*  The Department's official Facebook account remained fully accessible on March 2, 2016.  Compl. ¶ 62.

The same day that Plaintiff posted the Facebook Page, the Department posted a notice on its official Facebook page warning the public about the Facebook Page and informing them that the Department was investigating it.  Compl. ¶ 76.  By the end of the day, the Department had deleted dozens of comments from users mocking the Department for its inability to take a joke.  Compl. ¶¶ 77-78.  During that time, the Department also issued a press release to news outlets announcing the criminal investigation.  Compl. ¶ 92.  Once Plaintiff became aware of the Department's threats of criminal investigation, he took down the Facebook Page.  Compl. ¶ 97.

**B.**   **The Investigation**

Based solely on the Facebook Page's content, the Defendants took quick action to identify and punish its anonymous author.  Compl. ¶ 64.  Officer Riley opened a criminal investigation and assigned Officer Connor to the case, based on Officer Connor's experience with child-pornography investigations.[3]  Compl. ¶ 69.  Officer Riley believed that Officer Connor could leverage his experience combating child pornography to force Facebook to shut down the

---

[3]No allegation has ever been made that anything posted on the Facebook Page constituted child pornography.  Compl. ¶ 53.

Facebook Page.  Compl. ¶ 70.  Officer Connor spent two days monitoring Facebook and drafting a preliminary investigative report (the "Report").  Compl. ¶ 73.  The Report contains no allegation or evidence that any police services were disrupted by the Facebook Page.  *Id.*  Officer Connor also sent a takedown notice to Facebook stating that the Facebook Page was under criminal investigation.  Compl. ¶ 81.

Next, Officer Connor contacted John Doe, an officer on the Ohio Internet Crimes Against Children Task Force, to obtain the non-public contact information for the Facebook employee responsible for shutting down accounts engaged in illegal activity like child pornography.  Compl. ¶ 85.  Officer Doe provided Officer Connor with this individual's email address and Officer Connor promptly sent another takedown request.  Compl. ¶¶ 86-87.  Officer Connor also prepared and issued a subpoena to Facebook for the IP address of the Facebook Page's author.  Compl. ¶ 90.   Officer Riley directed Officer Connor to prepare a search warrant and affidavit against Facebook under Ohio Rev. Code § 2909.04(B).  Compl. ¶¶ 99-100.  This statute criminalizes the use of the internet to "disrupt, interrupt, or impair the functions of" the police.  *Id.*  Neither the warrant nor the affidavit identified a single police function or service that was disrupted by Plaintiff's Facebook Page.  Compl. ¶ 102.  Nor did they disclose that the Facebook Page was a parody.  *Id.*

On March 18, 2016, Officer Connor received nearly 3,000 pages of records from Facebook in response to his warrant.   Compl. ¶ 103.  These records identified Plaintiff as the author of the Facebook Page.  *Id.*  The Officer Defendants consulted the City's law director and decided to pursue a criminal charges against Plaintiff.  Compl. ¶ 104.  The Complaint charging Plaintiff with a single felony count of violating § 2909.04(B) was filed that same day.  Compl. ¶

105.  Officer Connor then applied for and obtained an arrest warrant from a Parma Municipal Court magistrate.  Compl. ¶ 107.  The warrant application stated only that Plaintiff created a fake Facebook account, purporting to be a legitimate Department page.  *Id.*  It did not mention any disruption in police operations.  *Id.*  Plaintiff was arrested on March 25, 2016 and spent four days in Cuyahoga County jail.  Compl. ¶ 108-09.  When word got out of Plaintiff's arrest, the public responded by flooding the Department's official Facebook page with accusations that the Department violated Plaintiff's First Amendment rights.  Compl. ¶ 110-113.

On March 25, 2016, the day of Plaintiff's arrest, Officer Connor–under Officer Riley's supervision–submitted a warrant application to search Plaintiff's apartment.  Compl. ¶ 116.  The application was based solely on Officer Connor's assertions that the Facebook Page's fake posts were disrupting police functions.  *Id.*  The Officer Defendants had no evidence of any disruption in police services, nearly three weeks after Plaintiff took the Facebook Page down. Compl. ¶ 118. Officer Connor also included misrepresentations in his warrant affidavit including that Plaintiff purported to be a Department representative on the Facebook Page and altered or affected the Department's official page.  Compl. ¶ 119.  The Parma Municipal Court signed the warrant. Compl. ¶ 121.  The Department's SWAT team executed the warrant on Plaintiff's apartment, that same day.  Compl. ¶ 122.  The SWAT team seized every electronic device in Plaintiff's residence including: two laptops, two hard drives, two videogaming consoles, a smartphone, a cell phone, and a computer tablet.  Compl. ¶ 123.  The Officer Defendants once again obtained and executed a warrant to search Plaintiff's electronic devices, relying on the same misrepresentations as with the previous warrants.  Compl. ¶ 127.  Nothing incriminating was found.  Compl. ¶ 131.

C.    **The Prosecution**

A grand jury returned a one-count indictment against Plaintiff.  Compl. ¶ 132.  At trial, both Officer Defendants testified against Plaintiff.  Compl. ¶¶ 141-44.  Officer Riley testified that he sought to shut down the Facebook Page to address officer safety concerns at the two locations referenced in the Facebook Page posts (i.e., the Giant Eagle where officers were performing free teen abortions using experimental techniques).  Compl. ¶ 143.  None of the warrants, subpoenas, or charging documents reflected any officer safety concerns.  Compl. ¶ 144.  The only evidence of disruption presented by Cuyahoga County prosecutors at trial was phone calls made by Parma residents complaining about the Facebook Page's affront to its officers, notifying the Department that the Facebook existed, or enquiring whether the Department authorized the Facebook Page.  Compl. ¶ 147.  These calls made up twelve minutes of total call time and were documented on April 5, 2016, over a week after Plaintiff was arrested and all the warrants had been executed.  Compl. ¶ 148.  After all evidence was presented and closing arguments concluded, the jury acquitted Plaintiff on August 11, 2016.  Compl. ¶ 151.

Plaintiff then brought the instant action asserting twenty-five claims against Officer Connor, twenty-six claims against Officer Riley, seven claims against the City, and one claim against Officer John Doe.

II.    **Legal Standard**

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.  *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1071 (S.D. Ohio 2013); *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012).  A court need not, however, credit

-6-

bald assertions, legal conclusions, or unwarranted inferences. *Kavanagh v. Zwilling*, 578 F. App'x 24, 24 (2d Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Twombly*, 550 U.S. at 570. The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Id.* at 555. Although Rule 12(b)(6) does not impose a probability requirement at the pleading stage, a plaintiff must present enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted). Simply reciting the elements of a cause of action does not suffice. *Iqbal*, 556 U.S. at 678.

### III.    Discussion

#### A.    Qualified Immunity

The Officer Defendants assert that Plaintiff cannot make a § 1983 claim against them in their individual capacities because they are entitled to qualified immunity. *See* Off. Mot. 2. To survive a motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). Although a qualified immunity issue should be resolved as early as possible, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v.*

*Campbell*, 779 F.3d 421, 433 (6th Cir. 2015).  Whether an officer is entitled to qualified immunity is usually dependent on the facts of the case and cannot be determined at the pleadings stage.  *Oshop v. Tennessee Dep't of Children's Servs.*, No. 3:09-CV-0063, 2009 WL 1651479, at *7 (M.D. Tenn. June 10, 2009).  Plaintiff pleaded sufficient facts to show that the Officer Defendants violated his First and Fourth Amendment rights and that those rights were clearly established.  The fact that the Officer Defendants were apparently unable to provide proof at Plaintiff's criminal trial of any disruption of police operations is a further reason why it is not appropriate to grant qualified immunity at this stage.  Thus, the Court finds it premature to determine whether the Officer Defendants were entitled to qualified immunity.

### B.      First Amendment Retaliation Claims (Claims 1-6)

Plaintiff has pleaded sufficient facts to establish each of his First Amendment retaliation claims.  In order to succeed on a retaliation claim, a plaintiff must establish the following elements: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010) (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998)).  The Officer Defendants present two arguments for why Plaintiff has failed to state a First Amendment retaliation claim: (1) Plaintiff had no First Amendment right to create the Facebook Page; and (2) if he did, that right was not clearly established.  Off. Mot. 3, 8.  The Court will address the Officer Defendants' first argument below but their second argument merely restates their qualified immunity argument which the Court has determined is premature.

-8-

First, Plaintiff pleaded sufficient facts to establish that he was engaged in a constitutionally protected activity.  He alleges that his Facebook Page was a parody.  Compl. ¶¶ 45-54.  Parody is a form of speech that is protected by the First Amendment.  *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988); accord *Parks v. LaFace Records*, 329 F.3d 437, 456 (6th Cir. 2003) ("parody is an artistic form of expression protected by the First Amendment").  Parodies involve speech that cannot "reasonably be understood as describing actual facts about [the subject of the parody]."  *Hustler Magazine, Inc.*, 485 U.S. at 57.  No reasonable person–whether police officer or Parma citizen–would believe that  Plaintiff's posts were describing actual facts about the Department (for example, that the Department was performing teen abortions using experimental techniques in a Wal-Mart parking lot).  Despite the Defendants' attempts to argue otherwise, it cannot be seriously contended that the Facebook Page was anything but a parody.  Thus, Plaintiff was engaged in constitutionally protected speech.

Next, Plaintiff alleges facts that would chill a person of *extra*ordinary firmness–let alone ordinary firmness–from exercising his First Amendment rights.  The Department immediately responded to the Facebook Page by issuing press releases announcing a criminal investigation.  Compl. ¶ 92.  This action alone would have had a chilling effect sufficient to state a retaliation claim.  But announcing the criminal investigation (at which time, like any reasonable person would have done, Plaintiff immediately took down the Facebook Page) was only the beginning.  Officer Defendants sought and executed numerous search warrants against Plaintiff.  They sought an executed an arrest warrant against Plaintiff, charged him with a felony, and put him in Cuyahoga County jail.  Compl. ¶ 108-09.  They sought a grand jury indictment against Plaintiff and testified against him in a felony trial.  Each of Defendants' actions alone would chill a person

-9-

of ordinary firmness from exercising his First Amendment rights.

Lastly, Plaintiff pleaded facts that show that the Officer Defendants' actions were motivated by his constitutionally protected speech.  The Defendants offer only one justification for their actions: Plaintiff disrupted police operations in violation of state law.  But since the only evidence of "disruption" ever produced was a total of twelve minutes of calls made to the Department on March 2, 2016 (documented by the Department over a month later on April 5, 2016), the officers' motivation can certainly be called into question.

Plaintiff alleges facts, which if proven, show that the Officer Defendants abused their police power to punish Plaintiff for exercising his First Amendment rights.  Plaintiff had a constitutional right to his Facebook Page on March 2, 2016 and he still does today.  Absent a significant disruption in police operations, Plaintiff cannot be harassed or prosecuted for his speech.  The Court cannot dismiss Plaintiff's retaliation claims.

### C.  Fourth Amendment Violation Claims (Claims 7-11)

Plaintiff makes five claims of Fourth Amendment violations and the Officer Defendants moved to dismiss all five.

#### 1.  Wrongful Arrest, Unlawful Search, and Unlawful Seizure

Plaintiff alleges that he was arrested, searched, and his property seized without probable cause.  Compl. ¶¶ 219, 229, 237-38.  The Officer Defendants argue that Plaintiff cannot establish any of these claims because they acted under search warrants issued by a magistrate.  Off. Mot. 13-17.  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]"  U.S. Const. amend. IV.  Normally, a facially-valid warrant is a complete

-10-

defense to § 1983 claims of unlawful searches or seizures (including arrests). *Id.* However, "[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court." *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006) (citation omitted); *see also Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 473 (N.D. Ohio 2012) ("[A]n action pursuant to § 1983 lies against a police officer who obtains an invalid search warrant by making in his affidavit material false statements either knowingly or in reckless disregard for the truth.").

Plaintiff alleges that none of the warrants executed against him–whether arrest or search warrants–were supported by probable cause. None of the warrants or affidavits drafted by Officer Connor identified a single police function or service that was disrupted by Plaintiff. *See, e.g.*, Compl. ¶ 102. The warrants also contained information that Officer Connor knew or should have known to be false including that the Facebook page purported to be the legitimate Department page, that Plaintiff purported to be a Department representative on the Facebook Page, and that Plaintiff altered or affected the Department's official page. The warrant application stated only that Plaintiff created a fake Facebook account, purporting to be a legitimate Department page. *Id.* These facts are sufficient to make out a claim that the warrant was invalid, and that Officer Connors knew or should have known that. Typically, only the officer who made the arrest or signed the warrant affidavit can be liable for § 1983 claims under the Fourth Amendment. *Schulz v. Gendregske*, 544 F. App'x 620, 625 (6th Cir. 2013). But Plaintiff alleges that Officer Riley supervised Officer Connors in drafting and executing the warrants so Plaintiff has properly alleged claim for supervisor liability against Officer Riley for his Fourth Amendment violations. *See* § III, H.

-11-

### 2.    Property Retention

Plaintiff next alleges that the Officer Defendants violated the Fourth Amendment by unlawfully retaining his property.  But the Fourth Amendment does not protect against unlawful property retention.  "[T]he Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property." *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999).  So that, "[o]nce that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Id.*  Thus, Plaintiff cannot establish a claim for unlawful property retention under the Fourth Amendment because such a claim does not exist.  Accordingly, the Court must dismiss Claim 10 of the Complaint.

### 3.    Malicious Prosecution

Plaintiff alleges that the Officer Defendants falsified evidence and submitted misleading investigative reports to establish probable cause for his criminal prosecution.  Compl. ¶¶ 250-60.  To support a claim of malicious prosecution, a plaintiff must establish that:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014).  The Officer Defendants argue that Plaintiff does not plead sufficient facts to establish the first two elements of a malicious prosecution claim.  Off. Mot. 11-13.

The first element of a malicious prosecution claim requires a plaintiff to plead facts:

> giving rise to a reasonable inference that either of the defendant officers

-12-

> 'influenced or participated' in the prosecutor's decision to continue the
> prosecution after he or she had knowledge of facts that would have led any
> reasonable officer to conclude that probable cause had ceased to exist and that
> continuing the prosecution would be in violation of plaintiff's clearly established
> constitutional rights.

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015).  Allegations that the officers testified for the prosecution and knowingly made false statements or failed to disclose evidence are sufficient to survive a motion to dismiss.  *Id.* at 655.  Plaintiff alleges that both Officer Defendants testified against Plaintiff at trial and falsified evidence.  Compl. ¶¶ 141-44, 254.  For example, Officer Riley testified at trial that he had grave concerns for officer safety and that disrupting protests would result from the Facebook Page.  Compl. ¶ 143.  Yet none of these concerns are listed in the warrant affidavits that Officer Riley approved.  Compl. ¶ 144.  These allegations are sufficient to establish the first element of a malicious prosecution claim.

The second element of a malicious prosecution claim requires a plaintiff to establish lack of probable cause for his criminal prosecution.  The Officer Defendants argue that because the Grand Jury charged Plaintiff with an indictment, probable cause existed for his prosecution.  Off. Mot. 11-12.  Previously, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause" for a prosecution, defeating a malicious prosecution claim.  *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).  However, the Supreme Court recently determined that no step in the legal process, including a grand jury indictment, can extinguish a person's Fourth Amendment claim when the initial arrest was not based on probable cause.  *Manuel v. Joliet*, 137 S.Ct. 911, 919 (2017).  Applying *Manuel*, the Sixth Circuit determined that the presumption of probable cause created by a grand jury indictment is rebuttable where: (1) an officer knowingly or recklessly

-13-

makes false statements in warrant affidavits or investigate reports; (2) these false statements are material to the plaintiff's ultimate prosecution; and (3) the false statement do not consist solely on grand jury testimony.  *King v. Hardwood*, 852 F.3d 568, 587-88 (6th Cir. 2017), *cert. denied*, 2018 WL 311323 (Jan. 8, 2018).  The Court already determined in § III(C)(1) that Plaintiff pleaded sufficient facts to show that Officer Connors knowingly made false statements in his warrant affidavits.  These false statements were used to justify the City's law director's decision to file criminal charges against Plaintiff and are not grand jury testimony.  Compl. ¶¶ 104-05. Thus, Plaintiff has pleaded sufficient facts to establish lack of probable cause for a malicious prosecution claim.  Accordingly, the Court cannot dismiss Plaintiff's malicious prosecution claim.

### D.    Municipal Liability Claims (Claims 12-14)

"A municipality is liable for a constitutional violation when execution of the municipality's policy or custom inflicts the alleged injury."  *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir.2008) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir.2013). Plaintiff makes three § 1983 claims against the City: (1) the City's law director and chief prosecutor authorized the Officer Defendants to seek and obtain the warrants (Claim 12); (2) he also authorized and implemented the unconstitutional policy of investigating and prosecuting

-14-

protected speech (Claim 13); and (3) the City failed to train its officers on clearly established First Amendment rights (Claim 14).  Defendants moved to dismiss all three claims so the Court will address each in turn.

### 1.      Authorized Action

The City moved to dismiss Plaintiff's claim that the City is liable for violations of his constitutional rights because the City's law director and chief prosecutor authorized the Officer Defendants to seek and obtain the warrants against Plaintiff.  Mot. 15.  The City argues that its law director and prosecutor did not have final policymaking authority.  *Id.* at 16.  "In Ohio, prosecutors and sheriffs are officials responsible for establishing policy with respect to decisions to prosecute, charge, and arrest, and a political subdivision may be held liable pursuant to *Monell* for the decisions of those individuals."  *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 470 (N.D. Ohio 2012) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)).  Accordingly, the City's argument is without merit.

### 2.      Unconstitutional Policy

Plaintiff alleges that the City had an illegal policy of criminally investigating and prosecuting protected speech.  The City argues that Plaintiff's claim fails because he cannot show examples of past situations.  But Plaintiff is only required to allege facts, "which if true, demonstrate the City's policy[.]"  *Williams v. City of Cleveland*, No. 1:09-cv-1310, 2009 WL 2151778, *4 (N.D. Ohio July 16, 2009).  Showing examples of past situations involving similar conduct is only one way to show an unconstitutional policy.  Nevertheless, Plaintiff does allege other instances where the City prosecuted protected speech or disregarded its citizens First Amendment rights.  *See* Compl. ¶ 278-80.  Thus, Plaintiff's claim is sufficient to survive a

motion to dismiss.

### 3.    Failure to Train

The inadequacy of police training only serves as a basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir.2005) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.2005)).  Plaintiff alleges that the City showed deliberate indifference by failing to adequately train its officers on clearly established First Amendment rights.  Compl. ¶ 277.  Plaintiff cites to a 2001 Ohio Supreme Court case vacating obstructing official business criminal convictions and instances where the City's law director acknowledged the City's duty to train.  Compl. ¶¶ 278-81.  Plaintiff further alleges that the Officer Defendants were last trained on First Amendment rights nearly twenty years ago. Compl. ¶ 281-82.  The City argues that Plaintiff's claim fails because he does not allege that City officials knew of a history of training problems or were on notice that training was deficient. Mot. 15.  But taking Plaintiff's allegations as true–as the Court must do on a motion to dismiss–the City's failure to update or supplement its training of its officers on First Amendment rights for over twenty years does tend to show deliberate indifference.

### E.    Conspiracy to Violate Civil Rights (Claim 15)

Plaintiff claims that the Officer Defendants conspired with John Doe to violate his

constitutional rights.  Compl. ¶¶ 288-92.  The Officer Defendants argue that Plaintiff's

conspiracy claim fails because he does not allege any racial motivation, which they argue is

required to plead a claim for civil conspiracy.  Off. Mot. 17.  But, as they concede, racial

motivation is only required to establish a § 1985(3) claim for civil conspiracy; the same is not

required for a § 1983 conspiracy claim.  While Plaintiff mistakenly cites 42 U.S.C. § 1985(3), he

clearly makes a § 1983 conspiracy claim against the Officer Defendants and John Doe.

Accordingly, the Court cannot dismiss Plaintiff's civil conspiracy claim.

### F.      Federal Privacy Protection Act Claim (Claim 16)

Title 42 U.S.C. § 2000aa(a) of the Federal Privacy Protection Act (the "Act") provides

that:

> Notwithstanding any other law, it shall be unlawful for a government officer or
> employee, in connection with the investigation or prosecution of a criminal
> offense, to search for or seize any work product materials possessed by a person
> reasonably believed to have a purpose to disseminate to the public a newspaper,
> book, broadcast, or other similar form of public communication, in or affecting
> interstate or foreign commerce[.]

Subsection (b) similarly applies to documentary materials.  42 U.S.C. § 2000aa(b).  The

Defendants argue that the Act's "suspect exception" prevents Plaintiff from making a claim

under the Act because the Officer Defendants had probable cause.  Mot. 17.  The Act does not

apply if the government officers or employees have "probable cause to believe that the person

possessing such materials has committed or is committing the criminal offense to which the

materials relate[.]"  42 U.S.C. §§ 2000aa(a)(1) & (b)(1).  As the Court already determined,

Plaintiff adequately pleaded facts that show that probable cause did not exist for the search and

seizure of his property, including the electronic devices he used to post his Facebook Page.  The

Defendants also argue that Plaintiff's Facebook Page does not affect "interstate or foreign commerce" and therefore cannot fall under the Act's protection.  Mot. 18.  The Defendants do not cite any legal authority as to why a Facebook Page would not affect interstate commerce, particularly when Facebook has over 1 billion users worldwide and millions of users across the United States.  Further, the Sixth Circuit has long recognized that the Internet is a means of interstate commerce.  *United States v. Fuller*, 77 F. App'x. 371, 379 (6th Cir. 2003).  Accordingly, the Court cannot dismiss Plaintiff's Federal Privacy Protection Act claim.

### G.      O.R.C. § 2909.04(B) (Claims 17 and 18)

Plaintiff claims that O.R.C. § 2909.04(B) is unconstitutionally vague and overbroad.  Compl. ¶¶ 302-12.  The statute states that:

> No person shall knowingly use any computer, computer system, computer network, telecommunications device, or other electronic device or system or the internet so as to disrupt, interrupt, or impair the functions of any police, fire, educational, commercial, or governmental operations.

O.R.C. § 2909.04(B).  Violating § 2909.04(B) is a felony of the fourth degree.

O.R.C. § 2909.04(C).  Federal courts are obligated not to "decide questions of a constitutional nature unless absolutely necessary to a decision of the case."  *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).  "State legislators swear to uphold the state and federal constitutions" and "a presumption of constitutionality accompanies their enactments."  *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) (citations omitted).  The Court finds it unnecessary in this case to address Plaintiff's constitutional challenges because the heart of Plaintiff's case is that the Officer Defendants misused the law to punish Plaintiff for his speech, not that the law itself was unconstitutional.

-18-

The Officer Defendants justified their actions and warrant applications by claiming that the Facebook Page disrupted police operations.  But Plaintiff claims that they were unable to present any evidence at trial that would rise to the level of disruption under O.R.C. § 2909.04(B).  Thus, Plaintiff's claim is that the Officer Defendants misused the law, knowing that they did not have sufficient evidence to prove a violation.  Plaintiff's Claims 17 and 18 are dismissed without prejudice.

### H.     Supervisor Liability (Claim 18a)

Plaintiff alleges that Defendant Riley is liable for Defendant Connor's constitutional violations through supervisor liability.  Compl. ¶¶ 313-14.  Supervisor liability under § 1983 cannot be based on respondeat superior, the right to control employees, or on awareness of employee misconduct.  *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (citations omitted).  "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Id.*  (citation omitted).  "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Plaintiff alleges that Officer Riley assigned Officer Connor to the case and directed him to obtain and execute the warrants against Plaintiff, knowing that doing so violated Plaintiff's First Amendment rights.  *See, e.g.*, Compl. ¶¶ 69, 99-100, 116.  These allegations are sufficient to support a claim for supervisor liability and therefore cannot be dismissed.

### I.     State Law Claims (Claims 19-29)

Plaintiff alleges ten violations of state law against the Officer Defendants including: (1) a false writings claim under O.R.C § 2921.03(C), (2) seven claims for civil liability from criminal acts pursuant to O.R.C § 2307.60, (3) a malicious prosecution claim, and (4) a tortious interference with contract claim.  Compl. ¶¶ 315-75.  The Officer Defendants do not argue the elements of each claim; rather, they maintain that they are immune from liability under Ohio's Political Subdivision Tort Liability Act, O.R.C § 2744.01, *et seq*.  O.R.C § 2744.03(A)(6) extends immunity from tort liability to police officers unless: (1) they act outside the scope of their employment; (2) they act with malicious purpose, in bad faith, or in wanton or reckless manner; or (3) a statute expressly provides for civil liability.  O.R.C § 2744.03(A)(6).  Whether an officer's behavior falls within one of these exceptions is typically a question of fact for the jury.  *Galloway v. Chesapeake Union Exempted Vill. Sch. Bd. of Educ.*, No. 1:11-CV-850, 2012 WL 5268946, at *10 (S.D. Ohio Oct. 23, 2012).  To grant a motion to dismiss under § 2744.03(A)(6), the pleadings must be "devoid of evidence tending to show that the [officers] acted wantonly or recklessly." *Id.*  (quoting *Irving v. Austin*, 741 N.E.2d 931, 934 (Ohio Ct. App. 2000)).  Plaintiff has alleged sufficient facts that the Officer Defendants' conduct was in bad faith, wanton, or reckless.  Thus, O.R.C § 2744.03(A)(6) does not immunize them from liability and these claims cannot be dismissed.

Plaintiff alleges his final state law claim against the City for replevin.  Compl. ¶¶ 376-81.  He alleges that the City seized his property, including his cell phone and laptop, but did not return them to him after he was acquitted at trial of the criminal charge.  *Id.* at ¶¶ 377-78.  The City states that, after the instant complaint was filed, it returned Plaintiff's belongings to him.

-20-

Mot. 19.  Plaintiff does not dispute this.  Thus, Plaintiff's replevin claim is moot and Count 29 must be dismissed.

## IV.     Conclusion

For the foregoing reasons, Plaintiff's Claims 10 (Property Retention) and 29 (Replevin) are **DISMISSED WITH PREJUDICE**.  Claims 17 (Unconstitutionally Vague and Overbroad) and 18 (Unconstitutional As Applied) are **DISMISSED WITHOUT PREJUDICE**.  His remaining twenty-six claims may proceed.  Accordingly, the Motions are **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster   Apr. 5, 2018*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**