IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ANTHONY NOVAK**<br>*Plaintiff,*<br>v.<br>**CITY OF PARMA**<br>*Defendant.* | Case No. 1:17-CV-02148<br><br>Judge Dan Aaron Polster<br><br>Magistrate Judge William H. Baughman, Jr. |
| **MOTION for PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER** | |

Plaintiff Anthony Novak respectfully moves for both a temporary restraining order and preliminary injunction prohibiting Defendants from taking any further actions to chill or retaliate for his parodic speech. Mr. Novak is experiencing ongoing chill on his ability to comment freely on civic affairs because Defendants remain unrepentant about their actions, and are prepared to investigate and prosecute him for the same or similar conduct. He requests that the Court issue a temporary restraining order at the upcoming January 15, 2020 status conference so that he may once again be free to speak out on public affairs—without the threat of prosecution. A memorandum in support follows.

**MEMORANDUM IN SUPPORT**

**I.   ISSUE PRESENTED**

In First Amendment cases, the test for issuing a preliminary injunction collapses into a single question: whether restrictions on First Amendment rights are justified to protect competing constitutional rights. Prosecuting Anthony Novak for joking about police advances no cognizable governmental interest but chills his speech and infringes the rights of his audience to receive his speech. Should the Court restrain further prosecutions?

## II. INTRODUCTION

Plaintiff Anthony Novak made fun of the Parma police, and they investigated, searched, arrested, and prosecuted him for it. Defendants' rationale was that he falsely attributed statements about "sensitive and divisive issues" to the Parma Police Department.[1]

Despite having been acquitted of any wrongdoing related to his parody, Mr. Novak is no freer today to criticize the police than he was the day he was thrown in jail, as Defendants escaped this bungled attempt at censorship without learning any lessons. They acknowledge no error and maintain to this day that Mr. Novak's speech enjoys no constitutional protection, that arresting him for it was fine, and that they remain free to do it all over again.

Although he wishes to resume his parodies and publish new content on Facebook, Defendants' obstinate posture leaves Mr. Novak unable to risk the possibility that another post—no matter how absurd—would lead to another SWAT team raid on his home, another stint in the Cuyahoga County jail, and another criminal trial.

This motion seeks an order permitting him to resume criticizing the police and other Parma officials without risking prosecution.

## III. FACTUAL BACKGROUND

This motion relies on the facts as laid out in the First Amended Complaint (Corrected) (Doc. #6), supported by Defendants' admissions included in the attached transcript of Mr. Novak's criminal trial (Doc. #6-1); and in the attached Declaration of Mr. Novak.

In summary, Mr. Novak posted several posts to a parody Facebook account, styled as updates from the Parma Police Department, about:

1. An "official stay inside and catch up with the family day" enforced by police curfew: "Anyone's seen outside their home from the hours of 12pm to 9pm will be arrested."

---

[1] Tr. 269:23–271:8 (attached as Ex 1-A).

2. A "Pedophile Reform event" with "multiple learning stations including a 'No means no' station filled with puzzles and quizzes," encouraging attendees to "Have fun out there!" and promising pedophiles recognition as "honorary police officer[s]" upon completion.

3. A "Food Drive to benefit teen abortions" at which officers "will be giving out free abortions to teens using an experimental technique discovered by the Parma Police Department" "in a police van in the parking lot at Giant Eagle."

4. An apology for neglecting to inform the public about an armed white male who robbed a Subway sandwich shop, requesting assistance identifying the "African American woman" loitering in front of the shop while it was robbed "so that she may be brought to justice."

5. A recruitment post "strongly encouraging minorities to not apply," announcing a "written exam for basic Police Officer for the City of Parma" comprised of "a 15 question multiple choice definition test followed by a hearing test" that, if passed, guaranteed recognition "as an officer of the Parma Police Department."

6. A "temporary law" introduced by the Department forbidding "residence of Parma from giving ANY HOMELESS person food, money or shelter in our city" as "an attempt to have the homeless population eventually leave our city due to starvation."[2]

Based on those posts, the City arrested him, raided his house, seized his property, jailed him, and sought to have him imprisoned on felony charges. Mr. Novak refused to entertain plea bargains, and a jury promptly acquitted him after a trial.

## IV. LEGAL STANDARD

A motion for a preliminary injunction typically requires consideration of four factors: "(1) the plaintiffs' likelihood of success on the merits, (2) whether the plaintiffs could suffer irreparable harm without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of the injunction on the public interest."[3] "The same four factors [are] considered in a motion for temporary restraining order."[4]

In First Amendment cases, though, the Sixth Circuit says the analysis is far simpler. Because of the unique dangers posed by government restrictions on speech and the heavy presumptions

---

[2] Declaration of Anthony Novak at ¶3.
[3] *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996).
[4] *Hall v. Edgewood Partners Ins. Ctr., Inc.*, No. 3:17-CV-821, 2017 WL 2869364, at *1 (N.D. Ohio July 5, 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

against them embedded in the law, the four preliminary-injunction factors in prior-restraint cases "collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights."[5]

## V. LAW AND ARGUMENT

### A. The Sixth Circuit's strong First Amendment precedents counsel in favor of enjoining any further retaliation against Mr. Novak.

Under the Sixth Circuit's "collapsed" test for cases like this one, the only constitutional rights in play are those of Mr. Novak himself and those of his readers. The only interest that would be injured by granting the injunction is the City's interest in avoiding criticism, which is not protected by the U.S. Constitution.

Because no one has any cognizable interest in prosecuting Mr. Novak for further parodies, and because the threat of further prosecution is chilling his speech and cutting off his readers from speech they are entitled to receive, the Court should issue the preliminary injunction and the temporary restraining order.

Even using the familiar, four-factor preliminary-injunction analysis, Mr. Novak remains entitled to relief enjoining any further prosecution: he is likely to succeed on the merits, he is already suffering irreparable harm, the injunction would not harm anyone else's interests, and a ruling in his favor would serve the public interest.

### B. Mr. Novak is likely to succeed on the merits.

Success on the merits is very likely here, where the Defendants' own writings and testimony—despite denying any liability—admit to all the facts necessary to prove their actions violated Mr. Novak's First Amendment rights. As detailed below, prosecuting Mr. Novak to stop

---

[5] *Cty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002).

him from making jokes about the police would impose a prior restraint on his speech and constitute retaliation for his exercise of his First Amendment rights.

### 1. Threatening criminal sanctions for making fun of the police effects a prior restraint.

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."[6] They can take many forms, including court orders,[7] statutes,[8] or even "informal procedures … designed to chill expression."[9] In this case, the Sixth Circuit has already acknowledged that the mere threat of criminal prosecution can effect a prior restraint,[10] as can an attempt to induce others to deplatform a speaker.[11]

Defendants admit taking those actions, and they have consistently acknowledged that their motive was to stifle Mr. Novak's speech: Defendant Riley testified that the City's purpose in investigating was to "reach out to Facebook and see if they would remove this as soon as possible,"[12] and Defendant Connor testified that when he was assigned to the case, his "primary goal was to have the page removed because of what it was creating."[13] Because their conduct was

---

[6] *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

[7] *New York Times Co. v. United States*, 403 U.S. 713 (1971).

[8] *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 723 (1931) (statute prohibiting publication of "malicious, scandalous and defamatory matter" is a prior restraint and "an infringement of the liberty of the press guaranteed by the Fourteenth Amendment.").

[9] *Multimedia Holdings Corp. v. Circuit Court of Fla., St. Johns Cty.*, 544 U.S. 1301, 1306 (2005).

[10] *Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)) ("Novak also plausibly alleges that the officers created a prior restraint with their press release threatening to take legal action.").

[11] *Id.* at 433 ("[B]ecause taking down the page would mean Novak could no longer post critical comments about the police on his page, the letter and email to Facebook could be administrative orders that constituted a prior restraint.").

[12] Tr. 66:21–23.

[13] Tr. 205:25–206:3.

designed to chill expression, it is a prior restraint and comes to the court with "a heavy presumption against its constitutional validity."[14]

The weight of that presumption cannot be overstated. Without a compelling governmental purpose and stringent procedural safeguards, including virtually instantaneous judicial review of potential First Amendment infringements—neither of which is present here—prior restraints are universally offensive to the Constitution.[15] They are not permissible to suppress obscene material.[16] They are not permissible to prevent breaches of peace or the commission of crime.[17] They are not permissible to prevent invasions of privacy.[18] They are not even permissible to protect military and diplomatic secrets.[19]

Defendants' likelihood of success on the merits is zero. Given their repeated, sworn admissions that their purpose was to stop Mr. Novak from publishing, their only ways out are either change their stories previously given under oath, or to persuade this Court—and every court above it—that the last century of First Amendment precedent does not apply to them.

The former they may very well do, but the Court should not countenance it.

---

[14] *Bantam Books, Inc.*, 372 U.S. at 70.

[15] *Id.* at 70 ("We have tolerated such a system only where it operated under judicial superintendence and assured an almost immediate judicial determination of the validity of the restraint.").

[16] *Id.* at 72 ("[T]he censor and First Amendment rights are incompatible.").

[17] *Near*, 283 U.S. at 721–22.

[18] *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419–20 (1971) ("Designating the conduct as an invasion of privacy, the apparent basis for the injunction here, is not sufficient to support an injunction against peaceful distribution of informational literature of the nature revealed by this record.").

[19] *New York Times Co.*, 403 U.S. at 715 (court order preventing "publication of information whose disclosure would endanger the national security" is a "flagrant, indefensible, and continuing violation of the First Amendment.") (Black, concurring).

The latter they cannot do. They cannot establish (1) that the government has a compelling interest in suppressing criticism;[20] (2) that criminal prosecution is a narrowly tailored means of achieving that interest;[21] or (3) that subsequent criminal prosecution—even with all its built-in procedural protections—offers the safeguards necessary to erect a system of prior restraints that can survive First Amendment analysis.

Indeed, the record in the criminal proceedings demonstrates the insufficiency of the protections Ohio courts offer to victims of First Amendment violations. The Parma Municipal Court approved warrants against Mr. Novak based solely on his false statements and his audience's criticisms of the police.[22] The trial court offered no more protection, rejecting without explanation a motion to dismiss on First Amendment grounds,[23] rejecting without explanation a Rule 29 motion on First Amendment grounds,[24] and rejecting without explanation a requested jury instruction on what speech the First Amendment does and does not protect.[25] This disregard of the First Amendment "right not to be tried"[26] underscores the imperative of federal intervention.

Because Defendants admit to the facts establishing their intent to effect a prior restraint, Mr. Novak is likely to succeed on the merits of his claim.

---

[20] *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) ("Since the day the ink dried on the Bill of Rights, the right of an American citizen to criticize public officials and policies is 'the central meaning of the First Amendment.'") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964)).

[21] *City of Houston, Tex. v. Hill*, 482 U.S. 451, 451–52 (1987) Criminalizing speech that interrupts the police "is not narrowly tailored to prohibit only disorderly conduct or fighting words, but impermissibly provides police with unfettered discretion to arrest individuals for words or conduct that are simply annoying or offensive.").

[22] Tr. 236:4–237:22.

[23] Journal Entry (Aug. 4, 2016) (attached as Ex. 1-B).

[24] Tr. 256:9–10.

[25] Tr. 261:4–10.

[26] *United States v. P.H.E., Inc.*, 965 F.2d 848, 853 (10th Cir. 1992).

### 2. Charging Mr. Novak with disrupting public services was and would be First Amendment retaliation.

The retaliatory nature of the charges against Mr. Novak offers the Court a separate, independent basis to enjoin any further prosecution. "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."[27] Establishing a retaliatory arrest moves in two steps: First, the arrestee must establish that retaliation was a substantial or motivating factor for his arrest, then the government may overcome the presumption of retaliation by proving that it would have arrested him even without that motive.[28]

As the Sixth Circuit has already ruled, Mr. Novak's claim for retaliatory arrest at this point "turns on two issues: (1) whether Novak's Facebook page was a parody and (2) whether the Parma police had probable cause to arrest Novak for his page."[29] And even the second question may be immaterial.[30]

### a. There is no likelihood a fact finder would be unable to recognize Mr. Novak's posts as parody.[31]

While Defendants seem to at least accept that they must live in a world where parody exists, they continue to fight against the idea that Mr. Novak's parody—of them—is the kind of parody that the Supreme Court meant to protect. But their attempts to wish away *Hustler v. Falwell* fall flat, as every basis they offer the Court for making such a distinction has already been rejected. Although

---

[27] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).
[28] *Novak*, 932 F.3d 421.
[29] *Id.* at 427.
[30] *Id.* at 432 ("It may be that, based on the Supreme Court's reasoning in that case and others, the general rule of requiring plaintiffs to prove the absence of probable cause should not apply here. We need not decide that now.").
[31] While the Sixth Circuit's *Novak* decision refers at one point to a factfinder [*id.* at 430] and at another to a jury [*id.* at 428], the latter reference seems to be dictum. Based on the undisputed facts in this case about what Mr. Novak posted, this Court could determine as a matter of law that no reasonable jury could find that a reasonable reader would have seen the above posts and concluded they stated actual facts.

rhetorical flourishes in their briefing occasionally betray the truth that they prosecuted Mr. Novak for hurting their feelings—denying his work could be protected, for instance, because it was "mean-spirited"[32] and "a cruel and juvenile prank"[33]—Defendants also beseech the Court to carve out four categories of unprotected parody, all of which the Sixth Circuit rejected in a decision now controlling this Court's analysis.

### b. The First Amendment protects jokes about the police even when they are not labeled a parody.

First, Defendants argue that Novak's parody is not protected speech because it carried no disclaimers.[34] As they understand the First Amendment, jokes about the Parma Police Department providing experimental abortions at Giant Eagle must be accompanied by conspicuous notices that the Parma Police Department is not *actually* providing experimental abortions at Giant Eagle.

But free speech is not a defective microwave. It is not a prescription drug or a known hazard; there is no duty to warn listeners they are about to be momentarily confused by humorous exaggerations. As the Sixth Circuit, citing well-established caselaw, held: "[A] parody need not spoil its own punchline by declaring itself a parody."[35]

Next, Defendants argue that Mr. Novak's parody is not a protected parody because Mr. Novak took affirmative steps to confuse his audience.[36] They argue that "Supreme Court case law

---

[32] Reply Br. of Appellants at 13, *Novak v. Parma*, No. 18-3373 (6th Cir.), Doc. #40.

[33] Appellants' Br. in Opp'n to Mot. to Dismiss at 11, *Novak v. Parma*, No. 18-3373 (6th Cir.), Doc. #26.

[34] *See, e.g.*, Riley and Connor Mot. to Dismiss, Doc. 13 at 7 (arguing to criminalize parody that "did not note that it was a satire or parody.").

[35] *Novak*, 932 F.3d at 428.

[36] *See, e.g.*, Doc. 13 at 5 (arguing to criminalize parody that was "trying to mimic official police communication."); Principal Br. of Appellants at 3, *Novak v. Parma*, No. 18-3373 (6th Cir.), Doc. #23 (arguing to criminalize parody because Novak wanted to "cause confusion to the citizens of Parma."); *id.* at 4 (arguing to criminalize parody because it was "meant to cause, actual confusion to Parma citizens."); *id.* at 10 (arguing to criminalize parody because it was "meant to fool and confuse the reader.").

… shows that while parody may inadvertently confuse the reader, affirmatively trying to fool the reader shows that a work is not parody."[37] Supreme Court case law shows the opposite.

Government officials have long sought to jail citizens for making intentionally false statements about them, but the Supreme Court put that abusive practice to rest in *United States v. Alvarez*, 567 U.S. 709 (2012), holding that even an "intended, undoubted lie"[38] enjoys First Amendment protection unless it falls into one of a few "categories of speech that have been historically unprotected."[39] Defendants do not argue that Mr. Novak's parody falls into any such category already recognized by the Supreme Court, and the Sixth Circuit did not indulge their attempt to create a new one here.

And while Defendants say Mr. Novak can't be a parodist because his Facebook page copied portions of the real Parma Police Department Facebook page, the Supreme Court recognizes that every dictionary entry for "parody" *requires* such conduct: "[T]he nub of the definitions … is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works."[40]

Third, Defendants argue Mr. Novak's parody is not protected parody because it actually confused as many as five people.[41] But actual confusion is not disproof of parody; it is "the genius

---

[37] Reply Br. of Appellants at 2, *Novak v. Parma*, No. 18-3373 (6th Cir.), Doc. #40 (citing no such Supreme Court case law).
[38] *Alvarez*, 567 U.S. at 715.
[39] *Id.* at 722.
[40] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994).
[41] *See, e.g.*, City's Mot. to Dismiss, Doc. #12 at 4 (arguing to criminalize parody because "some people … did not immediately recognize the obvious parody."); *id.* (arguing to criminalize parody because "some Parma residents called the Police Department to convey their concern about the Imposter FB Page and alert the department that it existed."); *id.* (arguing to criminalize parody because some people wanted to know "whether it was authorized."); *id.* (arguing to criminalize parody because "some Parma residents did not understand that the page was an imposter."); *id.* (arguing to criminalize parody because five people "believed the posts were authentic"); *id.* (arguing to criminalize parody because some people thought "believe this is real, this is really going on.").

of parody."[42] Defendants offered this backwards argument to the Sixth Circuit, which unequivocally rejected it: "The test is not whether one person, or even ten people, or even one hundred people were confused by Novak's page."[43] Instead, the question is "whether a reasonable reader would have seen Novak's Facebook page and concluded that the posts stated 'actual facts.'"[44] The existence of five people who may have actually fallen for the gag is irrelevant.

Fourth, and finally, Defendants argue Mr. Novak's parody is not protected parody because some people didn't like it.[45] But governments cannot impose or facilitate a heckler's veto by shutting down speech because its audience doesn't like it. "Listeners' reaction to speech is not a content-neutral basis for regulation."[46]

As a matter of law, then, neither Mr. Novak's failure to label his speech as parody, nor his intentional use of elements of the Parma Police Department's Facebook page, nor any actual confusion that resulted, nor the reaction of his audience can provide a basis for concluding that Mr. Novak's parody is not a protected parody.

The Sixth Circuit has rejected all Defendants' arguments against a finding of protected parody. All that is left is the question whether *reasonable* readers would actually believe that the Parma Police Department was performing abortions in the Giant Eagle parking lot, that it was actively working to recruit pedophiles for the police force while discouraging applications from minorities, and so on. Despite abundant case law announcing this standard, this is one argument Defendants

---

[42] *Novak*, 932 F.3d at 427.

[43] *Id.* at 427.

[44] *Id.* at 428.

[45] Doc. 12 at 4 (arguing to criminalize parody because some people "expressed confusion and anger."); *id.* at 4 (arguing to criminalize parody because "one resident … said 'shame on you'"); Doc. 13 at 5 (arguing to criminalize parody because "residents had concerns that others would be confused."); *id.* at 6 (arguing to criminalize parody because "because people did not know which page was real.").

[46] *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 134 (1992).

have studiously avoided developing. Whatever might have been going on in the minds of the few people who claim to have been duped by Mr. Novak's parody, no one in this case seems ready to argue that "on deliberate reflection,"[47] reasonable people would believe the Parma Police Department was openly advertising its racist, pedophile-loving, amateur-abortionist proclivities.

No reasonable reader could possibly believe the content of Mr. Novak's parody page stated actual facts, and there is no reasonable prospect that any factfinder would find otherwise.

### c. There is no likelihood a jury would find Mr. Novak's parodies established probable cause to believe he disrupted public services.

The remaining question, as the Sixth Circuit held, is whether Mr. Novak's parody gave police probable cause to believe there was "a 'disruption' or 'interruption' of police operations."[48] Defendants do not say what facts they believe support probable cause; they merely insist that probable cause *must have* existed because a magistrate approved an arrest warrant and a grand jury indicted Mr. Novak, ignoring the obvious fact that such determinations are frequently mistaken—especially when they are based on officers' misrepresentations.

But the Court can nonetheless assess the likelihood of a finding of probable cause by reviewing the transcript of the criminal case. There, Defendants laid out all their evidence of disruption, which the jury found sorely lacking:

- The police fielded fewer than a dozen phone calls on a non-emergency line about the parody page—none to the 911 line, none from Mr. Novak himself, and none that prevented them from answering other calls.[49]

- The officer investigating Mr. Novak's parody was not "working on any … other active cases."[50]

---

[47] *Novak*, 932 F.3d at 428.
[48] *Id.* 429.
[49] Tr. 114:5–17.
[50] Tr. 192:2–3.

- There was no harm to the police department's actual Facebook page or website.[51]
- No police officers were hurt.[52]
- Police computer systems were never affected and were always functional.[53]
- Police security systems were never affected and were always functional.[54]
- The City's 911 system was never affected.[55]

The jury needed little time to conclude that these facts amounted to no crime at all. And if these are the facts supporting probable cause, there is no real likelihood that a jury would conclude Defendants had probable cause to arrest Mr. Novak. Even the prosecutor acknowledged in his closing argument the *de minimis* nature of whatever impairment might have occurred: "Did the interruption result in a murder not getting investigated? No. … [W]as there a failure to respond to a 9-1-1 emergency? No."[56] Instead, he argued that the disruption consisted of officers getting distracted from "investigating real crimes" because they busy trying to "take down this fake page."[57] That may be what happened, but evidence that Defendants are easily distracted in their zeal to violate free speech is not evidence that Mr. Novak disrupted public services.

### C. The plaintiff will continue to suffer irreparable harm without the injunction.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[58] This Court should enjoin Defendants from continuing to inflict the ongoing injury now.

---

[51] Tr. 240:1–12.

[52] Tr. 71:3–5.

[53] Tr. 71:6–12.

[54] Tr. 71:24–6.

[55] Tr. 72:7–8.

[56] Tr. 272:8–10.

[57] Tr. 274:21–25.

[58] *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 548 (6th Cir. 2010) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Our courts ensure these rights are "stringently protected" because "if [they] are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future."[59] And even without proof of actual, current chilling effects, a plaintiff can establish irreparable harm through evidence of retaliation for the exercise of his First Amendment rights.[60]

The evidence here offers a straightforward demonstration of the chilling effects of the City's retaliation. Like so many of his neighbors, Mr. Novak recognized that the City's training and policies result in serious deficiencies in how its police force interacts with the citizens it is supposed to protect. He made jokes about those deficiencies, and those jokes struck a nerve—both with his neighbors, who joined in on the joke, and with the police themselves, who launched an investigation with "[t]he primary goal … to have the page removed because of what it was creating."[61]

Despite the success of his parody, Novak shut his page down within hours of starting it, due to the City's repeated threats of criminal sanctions. He attempted only once to post another parody, but, riddled with anxiety, he pulled it down immediately, unwilling to risk a second prosecution.[62] To this day, Mr. Novak has not resumed his parody. Indeed, he has posts he would like to post now, but he remains unwilling to do so because he knows that the City would respond by dragging him from his house and throwing him in jail.

The harms Defendants are inflicting on Mr. Novak by maintaining their position on his parody are irreparable and ongoing. This Court should bring them to an end.

---

[59] *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).

[60] *Id.* at 378 ("So too, direct penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury.").

[61] Tr. 206:2–3.

[62] Novak Decl. at ¶¶ 7–11 ("Within two hours it was starting to gain more and more viewers but after two hours I was riddled with so much anxiety and fear as to what they might do to me that I quickly deleted it. I have not made a parody page since.") (attached as Ex. 1).

### C. Defendants would suffer no harm from an injunction.

Defendants would suffer no cognizable harm if the court restrains further efforts to charge Mr. Novak for criticizing them. As discussed above, the Parma Police Department has no recognizable interest in being free from criticism, whether it comes from Mr. Novak or from citizens who believe it is engaged in misconduct.

Even if Defendants could somehow divine a way to prosecute Mr. Novak without running afoul of the First Amendment, which they can't, that interest would not be jeopardized, either, as the Court would have six years to resolve this case before the statute of limitations would expire on the charges.[63]

### D. Granting the injunction is in the public interest.

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights."[64] This is particularly true in cases involving infringements on the right of free speech.[65]

Even without this *per se* rule, the public interest would be particularly well served by an injunction in this case, where Mr. Novak's work earned him a national following in a matter of

---

[63] Ohio Rev. Code § 2901.13(A)(1)(a).

[64] *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) *See also Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) ("[T]he public is certainly interested in the prevention of enforcement of ordinances which may be unconstitutional."). *Accord*, *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013) ("[I]njunctions protecting First Amendment freedoms are always in the public interest."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest."); *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) ("[T]he public interest favors protecting core First Amendment freedoms."); *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983), *certified question answered,* 450 So. 2d 224 (Fla. 1984) ("The strong public interest in protecting First Amendment values combined with the interest in giving the state an opportunity to rule on this issue outweighs any countervailing interest in an uninterrupted malicious prosecution proceeding.").

[65] *Nixon v. N. Local Sch. Dist. Bd. of Educ.*, 383 F. Supp. 2d 965, 975 (S.D. Ohio 2005) ("[P]rotection of constitutional rights, and particularly First Amendment rights, is always in the public interest.").

hours, and where the chilling effects are not only infringing his right to criticize the government but his readers' First Amendment right to receive information criticizing the government.[66]

The Court should grant the motion to protect the public's interest in preventing further violations of Mr. Novak's and his readers' constitutional rights.

## VI. CONCLUSION

When a defendant threatens First Amendment freedoms, the courts put a heavy thumb on the scales weighing the propriety of injunctive relief. Given the abundant evidence that Mr. Novak was targeted because he criticized the police, the remainder of the preliminary-injunction factors fall readily into place, with questions of irreparable harm and public interest resolved in his favor *as a matter of law*. The Court should grant the motion and enjoin Defendants from making any effort to prosecute Mr. Novak for any further parodies.

A proposed temporary restraining order is submitted.

January 10, 2020

Respectfully submitted,

THE CHANDRA LAW FIRM LLC

*/s/ Subodh Chandra*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, Ohio 44113
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Attorneys for Plaintiff Anthony Novak*

---

[66] *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943) ("This freedom embraces the right to distribute literature … and necessarily protects the right to receive it."). *See also Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas."); *United States v. Borders*, 489 F. App'x 858, 863 (6th Cir. 2012) (holding ban on sex offender's possession of sexually suggestive materials would "infringe on Borders's First Amendment rights to receive information").