**MEMORANDUM IN SUPPORT**

**I.     PROCEDURAL HISTORY**

Defendants incorporate by reference the procedural history in the City's motion for summary judgment.

**II.    STATEMENT OF FACTS**

Defendants incorporate by reference the statement of facts in the City's motion for summary judgment. Also relevant are affidavits composed by Det. Connor and Capt. Riley, attached as Exhibits A and B, which confirm amongst other things that they acted in good faith, did not have any personal animus towards Plaintiff, and were not upset or angry. (Affidavits at ¶ 5; ¶ 7.)

**III.   LAW AND ARGUMENT**

   **A.    Plaintiff Fails To Set Forth Any Viable 42 U.S.C. § 1983 Official Capacity Claims Against Defendants.**

The claims against Det. Connor and Capt. Riley in their official capacities are subject to the same analysis as a claim against the City. *Leach v. Shelby Cty. Sheriff,* 891 F.2d 1241, 1245 (6th Cir. 1989). The Defendants incorporate by reference the official capacity law and arguments set forth in the City's motion for summary judgment.

   **B.    Defendants Are Entitled To Qualified Immunity.**

Qualified immunity protects government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It turns on "the objective reasonableness of an official's conduct, as measured by deference to clearly established law" and gives ample room for mistaken

judgments, protecting "all but the plainly incompetent or those who knowingly violate the law." *Id.* Plaintiff has the burden of proof. *McCloud v. Testa*, 97 F.3d 1536, 1542 (6th Cir. 1996).

Qualified immunity analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred;" (2) "whether the violation involved a ***clearly established constitutional right*** of which a ***reasonable person would have known***;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003) (emphasis added). This inquiry "must be undertaken in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In this case, there was no constitutional violation, and even if this Court finds that there was, any such right was not clearly established.

> **1. Plaintiff's constitutional right to create and maintain a fake police Facebook page to intentionally mislead the public, if it exists, was not clearly established.**

This case is unprecedented. There is no statutory or case law on point regarding the constitutionality of Plaintiff's actions – creating a fake Facebook page that was so similar to the official page that it fooled and confused readers. Det. Connor, faced with this novel issue, brought it to Dobeck for legal advice. Dobeck examined the facts and, in good faith, advised that Plaintiff may have violated R.C. 2901.04(B), disrupting public services. Whether Dobeck's advice was correct is irrelevant. It is ***exactly*** this type of novel legal and factual decision that qualified immunity is intended to protect.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official

2

would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

The *Ashcroft* Court noted that "[a]t the time of [the plaintiff's] arrest, not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional." *Id*. at 741. A right is "clearly established" only when it is held by controlling authority or "a robust consensus of cases of persuasive authority." *Id*. at 741–42.

Plaintiff has generally cited First Amendment case law in his amended complaint and motion to dismiss briefing. Of course, Plaintiff had a general right to free speech in 2016. However, there was not a single case *in the country* that would have provided legal guidance in light of the specific facts of this case.

### 2. Det. Connor and Capt. Riley are entitled to qualified immunity because they acted reasonably under the circumstances.

As detailed above, Det. Connor and Capt. Riley[1] are entitled to qualified immunity ***on all claims*** because Plaintiff's right to create and maintain an intentionally deceptive police department Facebook page was not clearly established at the time of the investigation. However, even if it was, Det. Connor and Capt. Riley are still entitled to qualified immunity. Det. Connor reasonably relied on the advice of counsel and Capt. Riley had no meaningful involvement in the case other than assigning the case and reviewing the police report.

---

[1] Captain Riley had no meaningful involvement in the investigation and should be dismissed on that basis alone. He acted reasonably in following the advice of Dobeck, issuing statements through the media warning of the fake page, and also relying on a seasoned detective with a good reputation to investigate the matter. He is entitled to qualified immunity on all claims.

Plaintiff's fake Facebook page presented Det. Connor with a novel legal issue. The only expert in this case has opined that not only did Det. Connor find himself presented with an unprecedented situation, but that officers in an unexpected situation should do exactly what Det. Connor did – seek legal advice – and rely on the good faith advice of a licensed attorney whom the City employs for such purpose.[2] The Supreme Court has strongly suggested, and other Circuits have adopted as rule, that a police officer's reliance upon legal advice cloaks him with qualified immunity unless a reasonable officer would have known the advice to be incorrect.

In *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the Supreme Court considered a police officer's entitlement to qualified immunity when he applied for an arrest warrant that was approved by a magistrate but later found to lack probable cause. The Court found that the magistrate's issuance of the warrant did not automatically shield the officer because a reasonable officer would have **known** that the warrant, while true, could not constitute probable cause. *Id*. at 345. The Court concluded that an officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; ***but if officers of reasonable competence could disagree on this issue, immunity should be recognized***." *Id*. at 341. *Malley* stands for the proposition that an officer applying for a warrant must "minimize th[e] danger" of an unconstitutional arrest "by exercising reasonable professional judgment" to be entitled to qualified immunity. *Id*. at 345. That is exactly what Det. Connor did.

Circuit courts "recognize the virtue in encouraging police, when in doubt to seek the advice of counsel." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir. 2010). Every Circuit that has considered the issue has concluded that an officer's consultation with counsel

---

[2] *See* Ryan Affidavit, attached hereto as Exhibit C, at ¶¶ 138, 140, 145, 146, 149, 151.

"and the purport of the advice obtained should be factored into the totality of the circumstances and considered in determining the officer's entitlement to qualified immunity." *Cox v. Hainey*, 391 F.3d 25, 34 (1st Cir. 2004). *See also Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir.2004) (pre-arrest consultation with a prosecutor may lend reasonableness to an officer's conclusion that probable cause exists and, thus, may help to establish qualified immunity); *E–Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 478 (8th Cir.1989) (legal advice can assist in "show[ing] the reasonableness of the action taken" and, thus, assist in determining the existence vel non of qualified immunity); *Dixon v. Wallowa Cty.*, 336 F.3d 1013, 1019 (9th Cir.2003) (pre-seizure consultation with a prosecutor is a factor to be considered in determining an officer's entitlement to qualified immunity); *Wadkins v. Arnold*, 214 F.3d 535, 542 (4th Cir.2000) (same); *Lavicky v. Burnett*, 758 F.2d 468, 476 (10th Cir. 1985) ("If the sheriff's duty is unclear, it should be a defense that he relied upon the advice of the prosecuting attorney's office.").

Analogous to the case before us, in *Cox* a police department investigating the plaintiff's son for snowmobile thefts learned that he may have also been selling drugs. 391 F.3d at 27. They set up a controlled drug buy, during which the plaintiff's son told the informant "that his father recently had returned from a 'drug run' to North Carolina and that he could have his father procure 'an eighth of marijuana' for future purchase." *Id*. The plaintiff's home was searched and the police found drugs and drug paraphernalia, though the plaintiff insisted that the drugs were legally prescribed for his medical condition and the paraphernalia was not his. *Id*. at 27–28. The defendant-police officer reviewed the evidence with an assistant district attorney, who advised that it constituted probable cause to arrest the plaintiff. *Id*. at 28. The plaintiff was arrested, but ultimately all charges were dropped and he sued the police officer among others under § 1983. *Id*.

5

The question before the court was "whether the defendant had confronted particular circumstances in which the application of general principles did not yield a certain answer and, if that were the case, to determine whether the defendant had responded reasonably to that idiosyncratic fact pattern." *Id*. at 30. Relevant to this inquiry, the officer "took the precaution of reviewing the known facts with the local prosecutor." *Id*. at 32. "[T]he assistant district attorney's agreement with [the officer's] preliminary assessment that probable cause existed buttress[ed] the conclusion that [his] actions were objectively reasonable." *Id*. The court *saw no need to decide whether probable cause existed*, because, based in part on the advice of the assistant attorney general, "at the time of the arrest, an objectively reasonable officer could have concluded that the salmagundi of facts added up to probable cause." *Id*. at 31–32.

While the underlying crime charged is different, the facts of the instant case closely mirror those of *Cox*. Det. Connor was presented with a novel legal issue – whether Plaintiff broke the law by creating and maintaining a fake and intentionally misleading Facebook page. He presented all of the facts to Dobeck, who advised him that probable cause existed to investigate and charge Plaintiff. This Court *need not decide whether probable cause existed* to confer qualified immunity to Det. Connor and Capt. Riley, because they took all reasonable steps to protect Plaintiff's constitutional rights and "at the time of the arrest, an objectively reasonable officer could have concluded that the salmagundi of facts added up to probable cause." *Id*. at 32. Further, a magistrate, municipal judge, grand jury, county prosecutor, and trial court judge all determined that there was probable cause for the charge.

Another case that dictates dismissal is *V-1 Oil Co. v. State of Wyo., Dep't. of Envtl. Quality*, 902 F.2d 1482, 1484 (10th Cir. 1990). There, an agent of Wyoming's Department of Environmental Quality drove by a gas station and noticed that suspicious work was being done

6

on its underground storage tanks. *Id*. He was refused permission to enter the property, so he turned to an assistant attorney general to obtain a warrant allowing him to inspect it. *Id*. No judge was available to issue the warrant, but the assistant attorney general advised the agent that the Wyoming Environmental Quality Act authorized him to conduct a warrantless search. *Id*. That evening, the agent, a police officer, and a city attorney conducted a warrantless search of the gas station to take soil samples. *Id*. The gas station sued under § 1983 and the agent argued that he had qualified immunity. *Id*.

The court determined, based on a review of case law, that the assistant attorney general did not have a reasonable basis to advise that a general statute like the Environmental Quality Act permitted a warrantless search. *Id*. at 1488. However, it noted that the Environmental Quality Act, specifically, had never faced scrutiny on this issue. *Id*. at 1488–89. Thus, it found that the agent's reliance on the assistant attorney general's advice was an "extraordinary circumstance" that conferred qualified immunity. *Id*. at 1488. "Whether reliance upon legal advice bars … imputation to the defendant of constructive knowledge concerning the laws allegedly violated by his conduct depends upon the circumstances of each case." *Id*. at 1489 (quotation omitted). "Relevant factors include [1] how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, [2] whether complete information had been provided to the advising attorney(s), [3] the prominence and competence of the attorney(s), and [4] how soon after the advice was received the disputed action was taken[.]" *Id*. (citations omitted).

The court in *V-1 Oil Co.* stressed the importance of the fact that no case had previously determined whether the Environmental Quality Act, specifically, conferred the authority to conduct a warrantless search. *Id*. It held that:

7

> a reasonable officer in [the agent's] position – that is, an officer who conducts a warrantless search on the same day he was advised by a fully informed, high-ranking government attorney that a particular statute, which had not yet been tested in any court, lawfully authorized that particular search – should not have been expected to have known that the search was unconstitutional.

*Id*. The agent had no reason to independently know whether his proposed course of action was legal, and because he relied on the incorrect advice of a competent attorney "was prevented by extraordinary circumstances from knowing the relevant legal standard." *Id*.

As discussed above, no case law had addressed whether Plaintiff's actions were legal as of 2016 (and to the present day). Even if Dobeck reached the wrong conclusion, Det. Connor had no reason to independently know whether Plaintiff's page was legal and acted reasonably by relying on Dobeck's advice.

The *V-1 Oil Co.* factors favor finding that Det. Connor and Capt. Riley are entitled to qualified immunity because they sought and acted on the advice of Dobeck. While, as established in the City's motion, Dobeck was not a final policymaker, part of his job was to be available as a resource for the officers when they faced unclear legal issues. The four *V-1 Oil Co.* factors control and dictate dismissal. *See York v. Purkey*, 14 Fed.Appx. 628, 630 (6th Cir. 2001) (applying *V-1 Oil Co.* factors).

Considering the first and second factors, Det. Connor provided Dobeck with a full account of the facts, and his advice was thus "specifically tailored to the particular facts giving rise to the controversy." *Id*. The third factor is met because Dobeck has an impeccable record as elected Law Director of Ohio's seventh most populace city. Plaintiff was arrested soon after Dobeck advised Det. Connor, making the fourth factor favorable as well. Even if Plaintiff's right to create an intentionally misleading police Facebook page was "clearly established" (even though it was not) Defendants have demonstrated their right to qualified immunity.

8

The First Circuit artfully explained why and how consultation with an attorney should factor into a police officer's qualified immunity: "[T]here is some room in the qualified immunity calculus for considering both the fact of a pre-arrest consultation and the purport of the advice received." *Cox*, 391 F.3d at 35. "As a matter of practice, the incorporation of these factors into the totality of the circumstances is consistent with an inquiry into the objective legal reasonableness of an officer's belief that probable cause supported an arrest." *Id*. Thus, "[i]t stands to reason that if an officer makes a full presentation of the known facts to a competent prosecutor and receives a green light, the officer would have stronger reason to believe that probable cause existed." *Id*. Furthermore, "[a]nd as a matter of public policy, it make eminently good sense, when time and circumstances permit, to encourage officers to obtain an informed opinion before charging ahead and making an arrest in uncertain circumstances." *Id*.

Of course, "[r]eliance would not satisfy this standard if an objectively reasonable officer would have cause to believe that the prosecutor's advice was flawed, off point, or otherwise untrustworthy." *Id*. "Law enforcement officers have an independent duty to exercise their professional judgment and can be brought to book for objectively unreasonable mistakes regardless of whether another government official (say, a prosecutor or a magistrate) happens to compound the error." *Id*. at 35–36. As in *Cox*, "the advice that [Det. Connor and Capt. Riley] received … was the kind that an objectively reasonable officer would be free to consider reliable." *Id*. at 36. "The undisputed facts indicate that [Det. Connor and Dobeck] reviewed the available evidence fully and had a frank discussion about it. This discussion culminated in [Dobeck's] statement that he believed [Det. Connor and Capt. Riley] had probable cause to arrest [Plaintiff]." *Id*. Finally, as in *Cox*, "there is nothing to suggest that [Dobeck] was operating in bad faith." *Id*.

The officers are entitled to qualified immunity. *See Beasley v. City of Keizer*, 525 Fed.Appx 549, 552 (9th Cir. 2013) (police officers entitled to qualified immunity for plaintiff's arrest when they reasonably relied on legal advice of district attorney regarding complex statutory scheme and case law).

### C. Plaintiff's Constitutional Rights Were Not Violated.

While Defendants are entitled to qualified immunity, and would thus not be liable even if they inadvertently violated Plaintiff's constitutional rights, no violation occurred here.

#### 1. The First Amendment claims fail.

##### a. *Plaintiff had no First Amendment right to create a fake police Facebook page and intentionally confuse the citizenry, which led to a disruption of public services.*

In order to state a claim for First Amendment retaliation, Plaintiff must establish that: 1) he engaged in a constitutionally protected activity; 2) Defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness; and 3) that the adverse action was motivated, at least in part, as a response to the exercise of his constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). The Sixth Circuit has explained that the third prong requires a showing of retaliatory animus on part of the defendant. *Kinkus v. Village of Yorkville,* 289 Fed.Appx. 86, 92 (6th Cir. 2008). Additionally, "[a] plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges." *Hartman v. Moore*, 547 U.S. 250, 252 (2006).

Plaintiff's fake police Facebook page was not protected speech. He disrupted the functions of the City's operations, violating R.C. 2909.04(B), as evidenced by the complaints received from the public and then subsequent actions taken by city employees. He deliberately perpetuated the ruse when he knew people were confused by removing comments questioning

10

the validity of the fake page. The fact that Plaintiff also posted derogatory things about the police cannot make constitutional otherwise unprotected speech. *See Packingham v North Carolina*, 137 S. Ct. 1730 (2017) ("Specific criminal acts are not protected speech even if speech is the means for their commission.").

Plaintiff also cannot prove the third prong of his First Amendment claim that a retaliatory animus caused the injury, because: (1) there is no evidence in the record proving that Defendants' actions were retaliatory, and (2) there was probable cause to bring the charge as affirmed by a magistrate, municipal court judge, grand jury, county prosecutor, and trial court judge. These Defendant Officers did not act with retaliatory motive. (*See* Connor Affidavit, ¶ 5, Riley Affidavit, ¶ 7.) There is no evidence in the record to the contrary.

There was also probable cause for Plaintiff's arrest. The inquiry as to whether probable cause existed is not tantamount to an inquiry into whether Plaintiff was in fact guilty. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. . . . [T]he establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. McClain,* 444 F.3d 556, 562-63 (6th Cir. 2005)**Error! Bookmark not defined.** (internal quotations and citations omitted). "The quantum of proof required to establish probable cause is significantly lower than that required to establish guilt." *Criss v. City of Kent,* 867 F.2d 259, 262 n.1 (6th Cir. 1988)**Error! Bookmark not defined.**. There was probable cause to charge Plaintiff under R.C. 2909.04(B). The citizen complaints show that the fake police page disrupted and interrupted the function of the Police Department and other City departments. Critically, a magistrate, municipal court judge, grand jury, county prosecutor, and trial court judge all found that there was probable cause to prosecute Plaintiff under R.C. 2909.04(B). (ECF No. 86.) A

11

grand jury indictment generally establishes probable cause as a matter of law and defeats a malicious prosecution claim. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). This Court has previously found that only a defendant knowingly or recklessly presenting false testimony to a grand jury to obtain the indictment can rebut a grand jury finding. (ECF No. 85, citing *Webb*.)[3]

It is expected that opposing counsel will argue that Det. Connor's grand jury testimony knowingly or recklessly presents false testimony. It does not. When Det. Connor gave grand jury testimony on April 11, 2016, the case had already been bound over from the City of Parma to the Cuyahoga County Prosecutor's Office, and the prosecution was in the hands of Cuyahoga County, not Det. Connor or the City of Parma. The assistant prosecutor was John Gallagher, who asked questions and was responsible for presenting the matter. The transcript lists Det. Connor as simply a "witness." (ECF No. 86-1.) Det. Connor responded to questions posed by Mr. Gallagher, as well as direct questions by grand jury jurors.

> Det. Connor was candid in his testimony that the actual posts were silly, stating:
>
> He had stuff in there in regards to that the Parma Police Department would now be arresting residents for helping the - for anyone who helped feed the homeless people and would receive 60 days incarceration for that. He also had posted in regards to an event that the Parma Police Department was sponsoring in regards to teen abortions, and then there was yet another that we were accepting applications for employment and minorities need not apply. Just a sampling of what was put on this page.

(*Id*. at pp. 3–4.) A witness attempting to hide the fact that Novak may have meant this as a joke or a prank would not have shared this information.

---

[3] This Court has also correctly found that "Grand jury witnesses have absolute immunity from § 1983 claims based on their testimony." (*Id.*, citing *Rehberg v. Paulk*, 566 U.S. 356 (2012).) But Novak's malicious prosecution claim is not based on Capt. Riley or Det. Connor's grand jury testimony, it is based on their prosecution of Novak. The grand jury testimony is relevant to rebut the presumption of probable cause." (ECF No. 85, PageID #: 4427.)

Det. Connor also notes that the look of the fake page "mirrored our real page," which is indisputably true, as Novak purposefully copied the official police banner and official Parma Police seal on his page. In fact, the transcript shows that the investigation was not based on Det. Connor taking personal offense at the mocking language of the posts. Det. Connor squarely addressed the issue on pages 6–7 of the testimony, stating that "there's no issues" with respect to the language Novak used about the police, and that the issue is Novak choosing to "mirror a government page" and copy "our logo" to pass the page off as authentic. Det. Connor even brought other satirical and mocking Facebook pages to the proceedings that, despite making fun of the Parma Police, were never investigated nor taken down. Det. Connor stated that there was no issue with respect to the First Amendment and that he did not believe the page was parody or satire. This was his good faith belief based on Dobeck's advice. (*See* Connor Affidavit, ¶¶ 2–5.) This cannot be deemed to be objectively 'false' testimony that could defeat probable cause when Cuyahoga County Prosecutor McGinty and the trial court judge independently reached the same conclusions.[4]

Indeed, in *Webb,* the statements that were deemed to present a question of fact on the issue were different in kind. In that case an agent misrepresented the identity of a witness during a drug deal. 789 F.3d at 665. In this case the factual representations by Det. Connor are true. While Plaintiff may disagree with some of his legal conclusions with respect to parody, satire, and the First Amendment, certainly those statements were made in good faith considering he was

---

[4] McGinty insisted he made an independent decision to prosecute the case and did not consider the page protected speech. Judge Clancy denied a motion to dismiss on First Amendment grounds, decided a First Amendment jury instruction was not warranted, and denied a Criminal Rule 29 motion. (Amended Complaint, ECF No. 6-A, PageID # 1309-20; 1343; 1556-64.)

relying on the advice of Dobeck, and at this point he was aware that the Cuyahoga County Prosecutor's Office had decided to pursue the matter.[5]

Furthermore, this case is unique because the grand jury indictment was not the only finding during this process of probable cause. County Prosecutor McGinty testified he believed the charge was warranted and decided to pursue it on his own. The trial judge denied a motion to dismiss on First Amendment grounds, denied a motion during trial for a Crim.R. 29(A) judgment of acquittal, and then let the matter go to a jury. (Amended Complaint, ECF No. 6-A, PageID # 1309-20; 1343; 1556-64.) These additional findings during Plaintiff's criminal trial also establish probable cause as a matter of law, and cannot reasonably be attributed any alleged dishonesty by Det. Connor. As a result there is probable cause as a matter of law.

### b. *The prior restraint claims fails.*

Plaintiff cannot maintain a prior restraint claim. Typically, "[t]he term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993). "[M]ost prior restraint cases have public officials with the power of pre-approval in common." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998).

---

[5] Opposing counsel may argue that Det. Connor was untruthful to Magistrate Fink when applying for a warrant and point to an answer he gave to a purposefully misleading question based on a series of assumptions that Det. Connor was instructed to make wherein Det. Connor stated that, upon reflection, a statement he made to Fink "may" not have been true. Det. Connor did not lie to Fink. He was emphatic on this point both during his deposition and in his errata. (Connor depo, p. 300-02, the relevant pages are attached to the City's motion; Connor Affidavit, Exhibit 1.) He was clear earlier in the deposition that he believed everything he told Fink was true at the time and that he didn't actually remember what he said to Fink that day. (*Id.* at 293.) Counsel refused to acknowledge Det. Connor's repeated statements that he did not remember the conversation and that the question confused him. Magistrate Fink testified that Connor answered all of his questions, and even after being told about the claims in this suit would have signed the warrant and does not think Connor hid or misrepresented anything. (Fink depo, p. 81-87.)

The Sixth Circuit questioned whether the letter Det. Connor sent to Facebook could constitute an "administrative order" because Plaintiff alleged it was a demand. (ECF No. 52-2, p. 14.) Discovery has shown this is not true. Plaintiff admitted in deposition that Det. Connor simply "requested that this account be taken down," and that Facebook was free to comply with or ignore it. (Plaintiff depo, p. 134-35, Exhibit 7.) Indeed, the fake page violated the Facebook terms of service as set forth fully in the City's motion, so this was likely an easy decision. This cannot be an administrative order sufficient to give rise to a claim.[6]

The Sixth Circuit also found that Plaintiff plausibly alleged that Capt. Riley's press release could be a prior restraint because it "threaten[ed] to take legal action," citing *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 67 (1963), but noting that the facts in that case were "more extreme than what we have here." (ECF No. 52-2, p. 15.) With the aid of discovery it is clear that the facts in this case are not "close enough." (*Id.*) The goal in *Bantam Books* was censorship of objectionable books. In this case Capt. Riley said his intention was not even to get the page taken down, "just to warn the public that this fake – that this was not us. Because, again, like I was telling you earlier, this happened in real time. I don't know what's coming next. I wanted people to know that's not us, that's not the Parma Police Department…" (Riley depo, p. 226-28.) Capt. Riley was "concerned" about what the then unknown author may have done next because people thought it was the actual Parma Police Department operating the page. This claim fails.

---

[6] The Sixth Circuit suggests that "because taking down the page would mean Novak could no longer post critical comments about the police on his page, the letter and email to Facebook could be administrative orders…" (ECF No. 52-2, p. 14-15.) Discovery has shown this is not the case. Plaintiff *was not* in any way prohibited from criticizing the police on Facebook, he was simply prohibited from purposefully seeking to fool readers as to which page was genuine. Det. Connor even brought other criticisms of the Parma Police to the grand jury proceeding to prove the prosecution was not based on some inability of Parma to take a joke or be criticized.

### 2. Plaintiff's Fourth Amendment claims fail.

#### a. *Defendants did not maliciously prosecute Plaintiff.*

To maintain his malicious prosecution claim, Plaintiff must show that: (1) a criminal prosecution was initiated against the plaintiff and defendants made, influenced, or participated in the decision to prosecute; (2) a lack of probable cause for the prosecution; (3) a deprivation of liberty apart from the initial seizure; and (4) the criminal proceedings were resolved in his favor. *Sykes v. Anderson,* 625 F.3d 294, 308–09 (6th Cir. 2010) **Error! Bookmark not defined.**. The malicious prosecution cannot be based on Defendants' allegedly false grand jury and trial testimony for which they are absolutely immune. *Sanders v. Jones,* 845 F.3d 721 (6th Cir. 2017).

Plaintiff cannot prove even the first prong, which requires that a defendant made, influenced, or participated in the decision to prosecute. *Powers v. Wallen***Error! Bookmark not defined.**, E.D.Tenn. No. 3:12-CV-96, 2014 WL 1491213, at *14-15 (Apr. 15, 2014). "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sanders*, 845 F.3d at 731. There must be "some element of blameworthiness or culpability in the participation," as "truthful participation in the prosecution decision is not actionable." *Id*. "It is absolutely clear . . . that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes***Error! Bookmark not defined.**, 625 F.3d at 314 (emphasis sic).

There is no evidence in the record that Defendants did anything more than relay truthful information to Dobeck and the Cuyahoga County Prosecutor's Office. Det. Connor consulted

16

with Dobeck at every step and obtained warrants from neutral judges and magistrates, who were free to ask him any question they wished or to decide that the charge was not warranted. Cuyahoga County then took the matter to the grand jury and trial after being provided with Connor's entire file. (Connor Affidavit, ¶ 8.)

Nor can Plaintiff establish the second prong because, as established above, there was probable cause to prosecute him. *McKinleyError! Bookmark not defined. v. City of Mansfield*, 404 F.3d 418, 444-45 (6th Cir. 2005**Error! Bookmark not defined.**). Plaintiff's malicious prosecution claim fails.

### b. *The unlawful search and seizure claim fails.*

As set forth above, the warrants were based on probable cause and signed by neutral judicial officers, who were given sufficient descriptions of the investigation and were free to ask any questions they wished. Det. Connor was truthful in his statements. Even after being cross-examined exhaustively by opposing counsel and informed of the factual and legal claims in this case, Magistrate Fink said that he would not have acted differently. (Fink depo, p. 81-87.) This claim fails.

**D. Plaintiff's Conspiracy Claim Fails.**

Plaintiff claims that Det. Connor and Capt. Riley conspired to shut down his fake Facebook page. Setting aside that Plaintiff deleted the page of his own volition after realizing that it might be illegal, this claim must fail. The Sixth Circuit recently applied the "intracorporate conspiracy doctrine" to § 1983 suits, meaning that "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). While Plaintiff previously alleged that Defendants conspired with a "John Doe" from the Ohio Internet

Crimes Against Children Task Force, he has not pursued his claim against any "John Doe," deposed anyone from the Task Force, or identified any additional defendant. Additionally, Det. Connor testified that his only interaction with the Task Force was to get a phone number. (Connor depo, p. 279.) This can hardly constitute conspiracy, so this claim must fail.

### E. The Federal Privacy Protection Act Does Not Apply.

The Federal Privacy Protection Act ("PPA") provides that it shall be "unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate" it. 42 U.S.C. § 2000aa(a).

The PPA's "suspect exception" applies where government officials "have probable cause to believe that the target of the search has committed an offense, and the materials seized are related to that offense." *Sennett v. United States*, 778 F. Supp. 2d 655, 656 (E.D. Va. 2011), aff'd, 667 F.3d 531 (4th Cir. 2012). As stated by *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 566–67 (6th Cir. 2007): "The goal of the [PPA] is to protect innocent third parties…" Thus, the "suspect exception" serves the goal of the statute because it allows for the search of a suspect's things rather than innocent third-parties. *Id*.

The statute does not apply to the targets of investigations themselves, like Plaintiff. *Id.* at 567. Further, Plaintiff's fake page does not affect "interstate or foreign commerce," and the materials cannot be said to be "work product." Moreover, the suspect exception applies. The claim fails.

### F. The State Law Claims Fail.

The Sixth Circuit concluded that all state claims against Defendants are analyzed under R.C §2744.03(A)(6)(b), which "insulates police officers from liability unless their actions were

18

taken with malicious purpose, in bad faith, or in a wanton or reckless manner." (ECF No. 52-2, p. 20.) As set forth in the qualified immunity section of this brief, Det. Connor and Capt. Riley acted in good faith, and their actions fall far short of stating an actionable state claim.

### G. The Supervisor Liability Claim against Capt. Riley fails.

Plaintiff alleges that Capt. Riley is liable for failing to properly supervise Det. Connor. The standard for such claim is stringent. "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 844 (E.D. Tenn. 2011).

Plaintiff cannot establish unconstitutional conduct by Det. Connor. Even if he did, he has not shown "specific, affirmative acts" by Capt. Riley that encouraged or condoned any wrongful conduct. *Id.* at 845. Capt. Riley talked to Dobeck initially and assigned the case, but was not involved in the charging decision, arrest decision, or the search warrants in this matter. He approved the report of Det. Connor which was sent to the County Prosecutor because it appeared to be in order and was consistent with advice from Dobeck. (Riley Affidavit, ¶ 6.) Capt. Riley believed that Det. Connor is an experienced, honest detective. (*Id.* at ¶2.) The claim fails.

### H. The Punitive Damage Claims Should Be Dismissed.

A plaintiff who proves a cause of action under § 1983 may recover punitive damages where the plaintiff is entitled to an award of compensatory damages, even if nominal, and the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Blair v. Harris*, 993 F. Supp. 2d 721, 732–33 (E.D. Mich. 2014), citing *Smith v. Wade,* 461 U.S.

30, 56 (1983). There is no evidence of wronging on behalf of the officer Defendants, much less evil or callous intent. This case does not merit punitive damages.

## IV. CONCLUSION

For the forgoing reasons, Detective Connor and Captain Riley respectfully request that the Court grant summary judgment in their favor as to each of Plaintiff's claims, including punitive damages.

Respectfully submitted,

*/s/Steven D. Strang*
**D JOHN TRAVIS (0011247)**
**STEVEN D. STRANG (0085444)**
GALLAGHER SHARP LLP
1215 Superior Avenue, 7th Floor
Cleveland, Ohio 44114
(216) 241-5310 (phone)
(216) 241-1608 (fax)
jtravis@gallaghersharp.com
sstrang@gallaghersharp.com
***Attorneys for Defendants City of Parma, Kevin Riley, and Thomas Connor***

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>13th</u> day of November, 2020 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/Steven D. Strang*
**D JOHN TRAVIS (0011247)**
**STEVEN D. STRANG (0085444)**
***Attorneys for Defendants City of Parma, Kevin Riley, and Thomas Connor***