IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ANTHONY NOVAK** <br> *Plaintiff,* <br><br> v. <br><br> **CITY OF PARMA** <br><br> *Defendant.* | Case No. 1:17-CV-02148 <br><br> Judge Dan Aaron Polster <br><br> Magistrate Judge William H. Baughman, Jr. |
| **PLAINTIFF ANTHONY NOVAK'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PROBABLE CAUSE** | |

Plaintiff Anthony Novak respectfully moves that this Court enter partial summary judgment under Fed. R. Civ. P. 56(a) on the element of probable cause in each of the following claims:

- Claim 7: Fourth Amendment violation under 42 U.S.C. § 1983—wrongful arrest;
- Claim 8: Fourth Amendment violation under 42 U.S.C. § 1983—unlawful search;
- Claim 9: Fourth Amendment violation under 42 U.S.C. § 1983—unlawful property seizure; and
- Claim 11: Fourth Amendment violation under 42 U.S.C. § 1983—malicious prosecution.

Mr. Novak also respectfully moves this Court to enter partial summary judgment on the issue of probable cause for all claims in the amended complaint, ruling that, as a matter of law, Mr. Novak's speech in his parody Facebook page did not provide probable cause for a violation of Ohio Rev. Code § 2909.04(B).

A memorandum in support follows.

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iv

ISSUES PRESENTED .............................................................................................................1

RELEVANT, UNDISPUTED FACTS.........................................................................................1

I.      Novak created a parody Facebook account mocking the Parma Police
        Department. ....................................................................................................1

II.     Defendant Connor investigated Novak for allegedly disrupting public services
        under Ohio Rev. Code § 2909.04(B). ........................................................... 3

III.    Defendant Connor submitted a complaint and arrest warrant to Magistrate Fink. .... 5

IV.     Defendant Connor asked Judge Deanna O'Donnell for search warrants for
        Novak's residence and seized electronic devices. ....................................... 7

V.      Defendant Connor testified before the grand jury to secure an indictment. .............. 8

VI.     Defendant Connor testified twice that his investigation of Novak's Facebook page
        interrupted his work on a home-invasion case. .......................................... 9

LAW AND ARGUMENT ........................................................................................................10

I.      This Court is authorized to decide the legal question of probable cause. ................10

II.     Defendants lacked probable cause that Novak violated Ohio Rev. Code
        §2909.04(B)................................................................................................. 11

III.    Novak's Facebook page did not disrupt, interrupt, or impair the functions and
        operation of the Parma Police Department in violation of Ohio Rev. Code
        § 2909.04(B).................................................................................................12

        A.  The phone calls and emails from residents didn't disrupt, interrupt, or impair
            Parma Police operations. .......................................................................12

        B.  Defendant Connor's choice to investigate Novak didn't disrupt, interrupt, or
            impair Parma Police operations...............................................................13

IV.     Novak did not possess the requisite mental state under Ohio Rev. Code § 2909.04(B)
        because he did not "knowingly" disrupt police services. ...........................14

V.      Defendants lacked probable cause to arrest Novak, seize his property, search his
        residence and electronics, and prosecute him under Ohio Rev. Code § 2909.04........15

**A.  Defendants lacked probable cause to arrest Novak under Ohio Rev. Code § 2909.04 (Claim 7).** ...........................................................................................15

**B.  Defendants lacked probable cause to search Novak's residence and electronics (Claim 8).** ...........................................................................................16

**C.  Defendants lacked probable cause to seize Novak's property (Claim 9).** ..............17

**D.  Defendants lacked probable cause to prosecute Novak (Claim 11).** .....................17

**VI.  Under *Gerics v. Trevino*, this Court may revisit the objective "reasonable reader" standard to determine whether probable cause could exist based solely on Novak's speech.** ...........................................................................................19

**CONCLUSION** .............................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Camara v. Municipal Court*, 387 U.S. 523 (1967) ........................................................................ 17

*City of Euclid v. Moore*, No. 75145, 1999 WL 1129580 (8th Dist. Dec. 9, 1999) ...................................... 12

*City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987) ..................................................................12, 20

*Franks v. Delaware*, 438 U.S. 154 (1978) .................................................................................... 16

*Fridley v. Horrighs*, 291 F.3d 867 (6th Cir. 2002) ........................................................................ 15

*Gerics v. Trevino*, --- F.3d ----, 2020 WL 5494574 (6th Cir. 2020) ..........................................10, 19

*Hill v. McIntyre*, 884 F.2d 271 (6th Cir. 1989) ............................................................................ 17

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ................................................................ 19

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017) ............................................................................ 18

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) .......................................................................... 11

*McCallum v. Geelhood*, 742 Fed.Appx. 985 (6th Cir. 2018) .......................................................... 16

*Middaugh v. City of Three Rivers*, 629 Fed.Appx. 710 (6th Cir. 2015) ...................................... 17

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019) .............................................................17, 19

*Ornelas v. U.S.*, 517 U.S. 690 (1996) ..................................................................................10, 11

*State v. Brand*, 2 Ohio App. 3d 460 (1981) ................................................................................ 12

*State v. Schwing*, 42 Ohio St. 2d 295 (1975) .............................................................................. 12

*Swiecicki v. Delgado*, 463 F.3d 489 (6th Cir. 2006) .................................................................... 11

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ...................................................................16, 17

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................................................................................ 17

*Toledo v. Thompson-Bean*, 173 Ohio App. 3d 566 (2007) ........................................................ 12

*Vakilian v. Shaw*, 335 F.3d 509 (6th Cir. 2003) ........................................................................ 16

*Wesley v. Campbell*, 864 F.3d 433 (6th Cir. 2017) .................................................................... 11

*Yancey v. Carroll County*, 876 F.2d 1238 ......................................................................................16

**Statutes**

42 U.S.C. § 1983 ...............................................................................................................15

Ohio Rev. Code § 2909.04................................................................................... 4, 12, 14, 15, 16

Ohio Rev. Code § 2909.04(B) ..................................................... 1, 3, 7, 11, 12, 13, 14, 20

Ohio Rev. Code § 2917.12.................................................................................................12

Ohio Rev. Code § 3761.11.................................................................................................12

**Rules**

Fed. R. Civ. P. 30(b)(6).................................................................................................. 4, 12, 13

**Other Authorities**

*All Mixed Up About Mixed Questions*, 7 J. App. Prac. & Process 101 (2005) ...........................10

*The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175 (1989) ..............................10

**ISSUES PRESENTED**

1. **Probable cause:** When the historical facts preceding a police officer's action are undisputed, the determination of probable cause is a question of law for the Court, not the jury.

   a. **Wrongful arrest (Claim 7):** An arrest warrant doesn't establish probable cause when an officer induced its issuance through material false statements, misrepresentations, or omissions. Defendant Connor told Magistrate Fink that Anthony Novak intended to deceive and that callers believed it was the real page. He didn't tell Fink Novak did nothing other than speech nor that the page was a joke—which would have been relevant to Fink. Did Connor have probable cause to arrest Novak?

   b. **Unlawful search (Claim 8):** A search warrant doesn't establish probable cause when the officer's warrant affidavit contained a false statement or omission, made deliberately or recklessly, that was material to the judge finding probable cause. Here, Judge O'Donnell relied upon Magistrate Fink's probable-cause determination to issue search warrants. Did Connor have probable cause to search Novak's residence and property?

   c. **Unlawful property seizure (Claim 9):** Property seizure is unlawful if it's unreasonable, as determined by balancing the government interest in seizure against the invasion seizure entails. Here, the only "interest" in seizing Novak's electronics was to determine whether he wrote the Facebook posts, which were protected speech. Did Connor have probable cause to seize the electronics?

   d. **Malicious prosecution (Claim 11):** The probable-cause presumption from indictment is rebutted when an officer knowingly makes false statements to initiate prosecution; these false statements are material to the ultimate prosecution; and the false statements aren't entirely grand-jury testimony. Here, Connor made false statements to Magistrate Fink, in his warrant affidavits, and to the grand jury. Does this evidence rebut probable cause?

   e. **Parodic speech alone (elements of all claims ____):** Here, the historical facts regarding Novak's speech that Defendants sought to punish under Ohio Rev. Code § 2909.04(B) are undisputed—indeed, Novak's parodic Facebook posts are in writing—so the Court is authorized to apply the objective-reasonableness standard to determine the legal issue of probable cause. Did Defendants have probable cause to prosecute Novak for his Facebook posts?

**RELEVANT, UNDISPUTED FACTS**

I. **Novak created a parody Facebook account mocking the Parma Police Department.**

The following content of Novak's six Facebook posts is undisputed:

- **March 2, 2016, 03:46 UTC:** "PARMA, OHIO – Due to the slow increase of a homeless population in our city, the Parma Police Department is pleased to announce that it will be introducing a new temporary law that will forbid residence [sic] of Parma from giving ANY HOMELESS person food, money, or shelter in our city for 90 days. This is in an attempt to have the homeless population eventually leave our city due to starvation. Residents caught giving the homeless population food, shelter, or water will be sentenced to a minimum of 60 days in jail. You have been warned."[1]

---

[1] Plaintiff's Dep. Ex. 4-A, Facebook Business Record, Page 48 (attached as **Ex. 1**).

- **March 2, 2016, 04:00 UTC:** "POLICE OFFICER City of Parma The Parma Civil Service Commission will conduct a written exam for basic Police Officer for the City of Parma to establish an eligibility list. The exam will be held on March 12, 2016. Applications are available February 14, 2016 through March 2, 2016. Parma is an equal opportunity employer but is strongly encouraging minorities to not apply. The test will consist of a 15 question multiple choice definition test followed by a hearing test. Should you pass you will be accepted as an officer of the Parma Police Department. By order of Parma Civil Service Commission John L. Kirk, Jr., Chairman Timmy Baycock Dan Coffee An Equal Opportunity Employer."[2]

- **March 2, 2016, 05:03 UTC:** "We have forgotten to post that on September 30, 2015 at approximately 10:00am the Parma Subway Sandwich Shop located at 5890 Broadview Rd. was robbed at knife point. The white male offender got away with a small amount of money and did not harm the clerk. Moments after an unrelated African American woman was seen loitering for over 20 minutes in front of the store despite their no loitering policy. If you have any information regarding this African American womans whereabouts please contact The City of Parma Police Department so that she may be brought to justice. This is the best still photo we have of the offender. Mentor Police and Middleburg Hts. Police have reported similar loitering offenses which may be the same female. The Parma Police Department is seeking assistance identifying the individual in the picture. Please contact Det. Joe Tremble."[3]

- **March 2, 2016 at 16:04 UTC:** "The Parma Police Department & Parma Auxiliary Police Food Drive to benefit teen abortions will take place on Saturday. We will be giving out free abortions to teens using an experimental technique discovered by the Parma Police Department. All teens must bring a note from their parent to be part of the experiment. The abortions will be held Saturday 4/19/2016 from noon to 4pm in a police van in the parking lot at Giant Eagle (7400 Broadview Rd.)[4]

- **March 2, 2016 at 17:41 UTC:** "UPDATE: The City of Parma Police Department will enact a Pedophile Reform event outside of St. Anthony of Paduas Church on 5 – 1 – 16 in an attempt to reform pedophiles to normality. We will have multiple learning stations including a "No means no' station filled with puzzles and quizzes. Anyone who passes all of the stations will be removed from the sex offender registry and accepted as an honorary police officer of the Parma Police Department. Have fun out there!"[5]

- **March 3, 2016 at 00:59 UTC:** "PARMA: Tuesday will be our official stay inside and catch up with the family day in Parma! The Parma Police Department has set this day to allow families to come together in an effort to reduce future crime by having children have well balanced communication with their families. Anyone's seen outside their home from the

---

[2] *Id.* at 45.
[3] *Id.* at 44.
[4] *Id.* at 36.
[5] *Id.* at 30.

hours of 12pm – 9 pm will be arrested. Thank you."[6]

## II. Defendant Connor investigated Novak for allegedly disrupting public services under Ohio Rev. Code § 2909.04(B).

Defendant Kevin Riley assigned Detective Thomas Connor to investigate Novak's Facebook page around 8:30 or 9:00 a.m. on March 2, 2016, and Connor testified that when he first looked at it, he believed it was the actual Parma Police Department page.[7] He believed the official page had been hacked or compromised upon "initial view," but he soon realized it was a separate Facebook page after "actually reading each post" and pulling up the official Parma Police Department page and comparing both pages.[8]

Shortly after Defendant Riley assigned Defendant Connor to look into the Facebook page, Connor called Parma Law Director Timothy Dobeck, and the two of them reviewed statutes regarding impersonating and disrupting public services.[9] They eventually settled on Ohio Rev. Code § 2909.04(B), which provides that "[n]o person shall knowingly use any computer, computer system, computer network, telecommunications device, or other electronic device or system of the internet so as to disrupt, interrupt, or impair the functions of any police…operations."[10] Defendant Connor believed that Novak disrupted police services because there were "phone calls coming into the dispatch center" and because he was assigned to work the case.[11]

Defendant Connor obtained those calls from dispatch, and although he received 11 recorded calls, two were between Parma Police Department employees, and two were continuations of disconnected resident calls—which meant that dispatch received nine calls from seven residents.[12] Of those seven callers, Connor thought that, at most, *one* resident thought the Facebook page was

---

[6] *Id.* at 19.
[7] Dep. of Thomas Connor 18:9–13, 177:15–24, Mar. 11, 2020 (excerpts attached as **Ex. 2**).
[8] *Id.* at 18:21–19:21.
[9] *Id.* at 178:23–179:3.
[10] Ohio Rev. Code § 2909.04(B).
[11] Connor Dep. at 175:13–176:11.
[12] *Id.* at 212:6–24.

the genuine Parma Police page.[13] He didn't remember whether he told Law Director Dobeck about
the content of those seven calls.[14]

These seven residents called the non-emergency line, as established by the recordings of the
calls themselves.[15] The number of external incoming calls about the Facebook page (nine)
represented less than 2% of the 473 total calls (emergency and non-emergency) the dispatch center
received on March 2, 2016.[16] These nine calls represented less than 0.29% of the 3,116 calls the
dispatch center received for the week of February 28, 2016 to March 5, 2016.[17] The calls comprised
a total duration of nine minutes and 42 seconds.[18]

Although Defendant Connor characterized residents' calls to the dispatch center as the
primary disruption of public services, those calls didn't prevent the dispatchers from answering a
single emergency call. As dispatch records and the City of Parma's Fed. R. Civ. P. 30(b)(6) testimony
show, dispatchers answered every incoming 911 and seven-digit emergency-line call.[19]

Yet Defendant Connor considered even one call to dispatch to be sufficient to disrupt,
interrupt, or impair police services under the felony statute of Ohio Rev. Code § 2909.04[20]—even as
he admitted that people often call the non-emergency dispatch line about things that aren't police
responsibility.[21] But, according to Connor, these calls about Novak's Facebook page interrupted
police services "because a dispatcher had to take the call to address the misinformation that was out
there, so it took away from her or he doing his job perhaps focusing on a different type of call that

---

[13] *Id.* at 211:1–212:9.
[14] *Id.* at 325:15–17.
[15] Plaintiff's Dep. Ex. 9 (included as part of **Ex. 2**).
[16] Fed. R. Civ. P. 30(b)(6) Dep. of City of Parma (Samiljlenko) 19:7–9 (excerpts at **Ex. 3**).
[17] Ex. 11 to Fed. R. Civ. P. 30(b)(6) Dep. of City of Parma (Samiljlenko), DFNT-0017620 (included as part of **Ex. 3**).
[18] Connor Dep. at 215:21–216:19; Plaintiff's Dep. Ex. 9.
[19] Fed. R. Civ. P. 30(b)(6) Dep. of City of Parma (Samiljlenko) 16:18–17:16.
[20] Connor Dep. at 231:10–14.
[21] *Id.* at 190:16–22.

was a legitimate call."[22] Under Connor's understanding of the law, even a 30-second call from someone tattling to dispatch about the joke Facebook page was enough for Novak to have committed a felony.[23]

## III.  Defendant Connor submitted a complaint and arrest warrant to Magistrate Fink.

Defendant Connor went before Magistrate Fink on March 18, 2016 to present a complaint and arrest warrant, and explained the case to Magistrate Fink.[24] Connor told Magistrate Fink "[t]hat we're investigating Mr. Novak. He created a fake Facebook account which, based on the account, it looked like the real Parma Police Department page. People believed it was real. They were calling the Parma Police dispatch center to report that."[25] He later reiterated that he told Magistrate Fink "[t]hat people believed this was the real page."[26]

Magistrate Fink testified likewise, explaining that, while he had never seen the page, Defendant Connor told him "it was confusing to the public because it was an exact website with the same banner, header, logo, or whatever it is."[27] More specifically, Defendant Connor conveyed that Novak's page was designed "to confuse or to fool the public."[28] It was Magistrate Fink's understanding that people were confused and believed that Novak's page was the genuine Parma Police Department Facebook page.[29]

To support probable cause for the complaint and arrest warrant, Defendant Connor told Magistrate Fink that the City "had received several calls questioning or being confused…inquiring as to what those things were, whether they were legitimate and so forth."[30] (Connor had listened to

---

[22] *Id.* at 231:15–22.
[23] *Id.* at 231:23–232:8.
[24] *Id.* at 293:1–19.
[25] *Id.* at 293:24–294:5.
[26] *Id.* at 296:8–298:2 (quoting 296:8–10).
[27] Dep. of Magistrate Judge Fink 20:4–11 (excerpts at **Ex. 4**).
[28] *Id.* at 20:23–21:3.
[29] *Id.* at 21:21–24.
[30] *Id.* at 21:9–16.

these calls to dispatch before he described them to the judicial officers.[31]) Based on what Connor told him,[32] Magistrate Fink thought these calls were "impeding the normal functions" of the police and creating "a time waste" for dispatch and the police.[33] And notably, Connor did not tell Magistrate Fink that the calls to dispatch came through the non-emergency line.[34] The calls were the only "disruption" Defendant Connor described to Magistrate Fink, who didn't think Connor referred to his time investigating as a disruption of public services.[35]

Defendant Connor did not provide the posts' full content to Magistrate Fink, whether by showing him screenshots or the text or by reading the posts aloud in court.[36] Connor never told Magistrate Fink that Novak's Facebook page was a parody, satire, or a joke.[37] And he didn't tell Magistrate Fink that 16 days before he sought an arrest warrant he already knew the page was a joke—instead, he "focused basically on the fact that there was misinformation posted to the public and that people were calling and inquiring and so forth."[38] So Magistrate Fink didn't know that Novak's page was a joke in 2016—but had he known, it would have been relevant to him.[39]

According to Magistrate Fink, nothing Defendant Connor told him alerted him to the fact that what Novak was accused of doing was pure speech.[40] If a free-speech issue had become clear to Magistrate Fink, he would have investigated it, but that's not what Connor presented to him.[41]

Magistrate Fink signed the arrest warrant, and Novak was arrested on March 25, 2016.[42]

---

[31] Connor Dep. at 224:6–9.
[32] Defendant Connor did not play audio recordings for Magistrate Fink nor give him transcripts of the calls. Fink Dep. at 65:2–11.
[33] Fink Dep. at 51:10–22.
[34] *Id.* at 66:10–15.
[35] *Id.* at 69:7–9.
[36] *Id.* at 25:5–25.
[37] *Id.* at 21:25–22:15.
[38] *Id.* at 23:1–12.
[39] *Id.* at 94:9–18.
[40] *Id.* at 108:11–20.
[41] *Id.* at 108:21–109:8.
[42] Connor Dep. at 308:11–15.

**IV.    Defendant Connor asked Judge Deanna O'Donnell for search warrants for Novak's residence and seized electronic devices.**

Defendant Connor went before Judge Deanna O'Donnell on March 25, 2016 to obtain a search warrant for Novak's residence and then again on March 28, 2016 to obtain a search warrant to access Novak's seized electronics.[43] Based on what Defendant Connor told her, Judge O'Donnell understood that this was a page purporting to be the genuine Parma Police Department page and an imposter page attempting to fool the public.[44] But, as with Magistrate Fink, Defendant Connor didn't provide the contents of Novak's six posts[45]

Unlike Magistrate Fink, Judge O'Donnell did not consider whether Defendant Connor presented probable cause that Novak violated Ohio Rev. Code §2909.04(B)—she relied upon Magistrate Fink's prior, Connor-induced, probable-cause determination made when he issued the arrest warrant and complaint.[46] Instead, she considered whether the warrant affidavits indicated probable cause to believe *that evidence existed*, explaining that she concerned herself with whether there was an ongoing investigation, that the detective believed there was evidence related to this investigation.[47] In other words, Judge O'Donnell's review of Connor's affidavits was limited to whether it was appropriate for him to search the residence and later search the electronics seized from the residence, on the assumption that probable cause for the investigation had been determined.[48] She relied on the prior probable-cause decision supporting the ongoing investigation[49] and never inquired into how Novak disrupted the function of the Parma Police Department, as Defendant Connor's affidavit alleged.[50]

---

[43] Dep. of Judge Deanna O'Donnell 4:12–20, Jun. 25, 2020 (excerpts at **Ex. 5**).
[44] *Id.* at 16:15–21.
[45] *Id.* at 16:25–17:4.
[46] *Id.* at 21:21–22:1.
[47] *Id.* at 22:2–23:1.
[48] *Id.* at 23:2–11.
[49] *Id.* at 23:12–16.
[50] *Id.* at 24:1–6; *see also*, *id.* at 33:1–21.

The two search-warrant affidavits contained the same factual summary under the heading "Current investigation."[51] In these affidavits, Defendant Connor averred that Novak "purported himself to be a representative of the Parma Police Department" and "disrupted and impaired the function of the Parma Police Department by knowingly posting false information."[52] He further averred that "Parma City Hall, Parma Law Department and Parma Police Department received numerous calls and complaints regarding the content."[53] Judge O'Donnell executed both warrants.[54]

## V.      Defendant Connor testified before the grand jury to secure an indictment.

Defendant Connor testified before the grand jury on April 11, 2016.[55] Detective Connor told the grand jury that "the police department including the 911 call center and city hall were getting *inundated* with phone calls in regards to this account."[56] He told the grand jury that he listened to "the calls that came in to the 911 dispatch center" and that there were "11 phone calls placed from residents" who "honest to God believed that we posted this and this was real information."[57] He also referred to the law director receiving emails from residents "saying basically, have you guys lost your mind?" Connor also explained that "we believed absolutely that this guy creating this page that mirrored our page absolutely disrupted the police department that day and continued to do so because I had to investigate this case."[58]

Unprompted, Detective Connor also reassured the jury that the First Amendment presented no obstacle to the requested indictment: "You can see the difference between parody and satire. Trust me, there's no issues with that, there's no issues with the first amendment, but you can't do

---

[51] Plaintiff Dep. Exs. 7 and 8 (included as part of **Ex. 5**).
[52] Plaintiff Dep. Exs. 7 and 8, Current Investigation, ¶ 5.
[53] Plaintiff Dep. Exs. 7 and 8, Current Investigation, ¶ 6.
[54] Plaintiff Dep. Exs. 7 and 8.
[55] Trans. of grand-jury proceedings 1, ECF No. 86-1 (included as **Ex. 6**).
[56] *Id.* at 3. (Emphasis added.)
[57] *Id.* at 4.
[58] *Id.* at 4–5.

what he did and absolutely mirror a government page and then portray yourself to be something you're not."[59] He went on: "That's what our argument is. This is not satire. This is not parody. Many—maybe he was thinking he was doing that, but he didn't by any means."[60] Connor referred to "pages out there that they have, you know, our logo up there and instead of force they put farce, f-a-r-c-e. Clearly parody, clearly satire. His was not. It was an exact replica of our page."[61]

The grand jury indicted Novak.

## VI. Defendant Connor testified twice that his investigation of Novak's Facebook page interrupted his work on a home-invasion case.

At Novak's criminal trial on August 11, 2016, Defendant Connor testified that the Novak investigation required him to move or rearrange his schedule for a higher-priority case.[62] He testified that he had been trying to obtain a buccal DNA swab from a criminal defendant in a home-invasion case, and that he had been scheduled to take the swab March 2, 2016—but that the Facebook investigation required him to postpone the swab until March 5, 2016.[63]

In this civil lawsuit, Defendants produced Connor's report showing the work he performed on the home-invasion case.[64] At his March 2020 deposition, Defendant Connor admitted that his report showed a conversation with the defense attorney, not a buccal swab, set for March 2, 2016.[65] Nothing in Connor's report showed he had any plan to take the swab on March 2, 2016.[66] Instead, the report showed arrangements to take the swab on March 4, 2016.[67] At his deposition, Connor claimed he and the defense attorney arranged to take the swab on March 4, 2016 because he could

---

[59] *Id.* at 6–7.
[60] *Id.* at 7
[61] *Id.* at 7.
[62] Novak criminal-trial transcript 198:13–16, ECF No. 1-1 (excerpts at **Ex. 7**).
[63] *Id.* at 198:13–199:9. *See also* Connor Dep. at 350:11–351:3.
[64] Connor Dep. at 350:3–10.
[65] Connor Dep. at 351:4–9.
[66] *Id.* at 351:10–17.
[67] *Id.* at 352:1–4.

not attend the pretrial scheduled for March 2, 2016.[68]

Defendant Connor's report contained no reference to a pretrial scheduled or cancelled for March 2, 2016[69]—because, as the public docket for this case shows, the pretrial was never set for March 2, 2016.[70] The pretrial was held on March 1, 2016, *before* Novak created his page.[71] Defendant Connor's testimony to the criminal-case jury and in this case about the buccal-swab case was false.

LAW AND ARGUMENT

**I.     This Court is authorized to decide the legal question of probable cause.**

The Sixth Circuit recently held in *Gerics v. Trevino* that when the relevant facts are undisputed, the determination of probable cause is a question of law for the Court, not the jury.[72] This comports with the gravamen of probable cause, an objective standard that defines the scope of an individual's Fourth Amendment constitutional rights.[73] If juries determined probable cause, "then the extent of one's constitutional rights could vary according to the whims of any given group of twelve citizens."[74] Constitutional rights based on objective-reasonableness standards should not arbitrarily expand and contract. Instead, the federal judiciary should safeguard the integrity of these rights.

The Sixth Circuit in *Gerics v. Trevino* relied upon and clarified the Supreme Court's analysis in *Ornelas v. United States*,[75] which explained that probable cause is composed of two parts. First, there must be a "determination of historical facts" (defined as the events leading to the officer's action), and second, the Court must decide "whether the rule of law as applied to the established facts is or

---

[68] *Id.* at 352:1–20.

[69] *Id.* at 352:12–23.

[70] NOVAK015352–79 (attached as **Ex. 8**), publicly available at https://cpdocket.cp.cuyahogacounty.us/CR_CaseInformation_Docket.aspx?q=QIkNADjvWvLlcrwmGQaaeQ2 (last accessed Nov. 12, 2020). The docket shows that the court held a pretrial on February 9, 2016 and set the next pretrial for March 1, 2016, which occurred as planned.

[71] *Id.*

[72] *Gerics v. Trevino*, --- F.3d ----, 2020 WL 5494574 at *5 (6th Cir. 2020).

[73] *Id.*, citing Randall H. Warner, *All Mixed Up About Mixed Questions*, 7 J. App. Prac. & Process 101, 109 (2005).

[74] *Id*, citing Warner at 144; *see also* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1181–2 (1989).

[75] *Id.*, citing *Ornelas v. U.S.*, 517 U.S. 690, 695 (1996).

is not violated."[76] Here, where the "historical events" of what happened before Defendant Connor obtained warrants, effected searches and seizures, and testified before the grand jury are established, this Court is fully empowered to decide the legal question of whether Defendant Connor's actions were supported by probable cause.

## II.    Defendants lacked probable cause that Novak violated Ohio Rev. Code § 2909.04(B).

Probable cause exists if the facts and circumstances known to the defendant officer would cause a prudent person to believe the suspect committed the offense at issue.[77] And these facts and circumstances must be "reasonably trustworthy."[78] For example, if an officer has reason to believe that an eyewitness "was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection," that eyewitness is not reasonably trustworthy and does not provide a basis for probable cause.[79] Moreover, an officer must attempt to consider the totality of reasonably trustworthy evidence: An officer examining probable cause must consider both inculpatory and exculpatory evidence.[80] Most significantly, the probable-cause standard is one of objective reasonableness—the officer's subjective intent or state of mind is legally irrelevant.[81]

In this case, the facts and circumstances of Novak's Facebook page would not have caused any prudent or reasonable police officer—and especially an experienced detective like Defendant Connor—to believe that Novak disrupted police services. Putting aside for now that officers cannot use protected speech as the sole basis for probable cause,[82] no reasonably trustworthy evidence demonstrates that any "disruption" occurred, nor that Novak "knowingly" caused any supposed disruption.

---

[76] *Id.*, citing *Ornelas*, 517 U.S. at 696–97.
[77] *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007).
[78] *Id.*
[79] *Id.* at 440.
[80] *Wesley v. Campbell*, 864 F.3d 433, 439-40 (6th Cir. 2017).
[81] *Nieves* at 1724-25. (Internal citations omitted.)
[82] *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006).

### III. Novak's Facebook page did not disrupt, interrupt, or impair the functions and operation of the Parma Police Department in violation of Ohio Rev. Code § 2909.04(B).

The City of Parma officially took the position, through its Fed. R. Civ. P. 30(b)(6)

representative, that Novak disrupted police services in four ways: (1) nine calls to the dispatch

center, (2) three phone calls to the law department, (3) three phone calls to the safety department,

and (4) what appeared to be two emails to the safety department reporting the existence of the

page.[83]

Defendants' paltry evidence of supposed "disruption" highlights the absurdity of an overly

literal reading of Ohio Rev. Code § 2909.04. Courts must read a "substantiality" requirement into

Ohio Rev. Code § 2909.04(B) for the statute to be constitutional. Were it otherwise, § 2909.04(B)

would bestow unfettered discretion upon officers to ensnare individuals like Novak for all manner

of constitutionally protected speech.[84]

But regardless of substantiality, whatever "disrupt, interrupt, or impair" means, Defendant

Connor didn't have probable cause for it in 2016.

### A. The phone calls and emails from residents didn't disrupt, interrupt, or impair Parma Police operations.

As the City of Parma's own documents and testimony show, the dispatch calls that

Defendants held up as the primary mode of disruption did not disrupt, interrupt, or impair Parma

dispatchers in the performance of their duties to the public. Notwithstanding Connor's (pretextual)

---

[83] Fed. R. Civ. P. 30(b)(6) Dep. of City of Parma (Dobeck) 115:2–19 (excerpts at **Ex. 9**).

[84] *City of Houston, Tex. v. Hill*, 482 U.S. 451, 455 (1987) (ordinance against "interrupt[ing] any policeman in the execution of his duty" could not constitutionally apply to protected speech, because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers"). *Cf. State v. Schwing*, 42 Ohio St. 2d 295, 306 (1975) (imposing substantiality requirement to preserve constitutionality of Ohio Rev. Code § 3761.11); *State v. Brand*, 2 Ohio App. 3d 460, 460 (1981) (imposing substantiality requirement to preserve constitutionality of Ohio Rev. Code § 2917.12); *Toledo v. Thompson-Bean*, 173 Ohio App. 3d 566, 573 (2007) (imposing substantiality requirement to preserve constitutionality of local safe-school ordinance); *City of Euclid v. Moore*, No. 75143, 1999 WL 1129580, at *5 (8th Dist. Dec. 9, 1999) (imposing substantiality requirement to preserve constitutionality of local school-disruption ordinance).

fretting that these nine calls lasting a total of nine minutes and 42 seconds prevented dispatchers from "focusing on a different type of call that was a legitimate call[,]"[85] that didn't happen. The dispatchers answered all emergency calls on March 2, 2016—from both 911 and the seven-digit emergency line.[86] The dispatchers' operation was undisturbed. Any reasonable officer would have factored this information into the probable-cause calculus, but Defendant Connor chose to ignore it.

As to the other calls supposedly made to the law department or safety department, the City neither had recordings nor other evidence of the calls' duration.[87] But three calls to each department, with no further evidence that the calls affected the departments' operation, is insufficient to show that the calls disrupted, interrupted, or impaired the public services these departments provide.

The Parma Safety Department apparently received two emails,[88] which no reasonable officer could consider an interruption—especially when emails can easily be ignored. The City received five times that number of emails *after* Defendants caused Novak to be arrested,[89] but they've never charged Defendant Connor with disrupting public services for unlawfully securing his arrest.

## B. Defendant Connor's choice to investigate Novak didn't disrupt, interrupt, or impair Parma Police operations.

Defendant Connor's claim that his own time investigating constituted "disruption" also fails. By choosing to investigate Novak for pure speech, Defendant Connor disrupted his own schedule, which doesn't manufacture probable cause that Novak committed an offense. As broad as Ohio Rev. Code § 2909.04(B) is, even its terms cannot be stretched to permit police officers to define a violation based on the officer's discretionary conduct rather than the individual's conduct. Such a

---

[85] Connor Dep. at 231:15–22.
[86] Fed. R. Civ. P. 30(b)(6) Dep. of City of Parma (Samiljlenko) 16:18–17:16.
[87] Fed. R. Civ. P. 30(b)(6) Dep. of City of Parma (Dobeck) 116:22–117:15. Defendant Connor did not have any knowledge of the content of these calls to the Safety Department. Connor Dep. at 228:5–15.
[88] Plaintiff's Dep. Ex. 14, DFNT-0017431 (included as **Ex. 9**).
[89] Plaintiff's Dep. Ex. 39 (included as **Ex. 10**), containing 10 emails and numerous social-media messages complaining about Novak's arrest.

construction would never pass constitutional muster, and Defendant Connor's attempt to weaponize his own frivolous investigation against Novak perfectly exemplifies why.

Even if Novak's Facebook page presented compelling reason to investigate—which it didn't, Defendant Connor has offered no truthful testimony or evidence to show that this investigation interrupted any other work: his testimony that this testimony prevented him from taking a time-sensitive buccal DNA swab of a home-invasion defendant is demonstrably false based on the City and Common Pleas Court's records. And false testimony does not create probable cause.

Regardless of whether Detective Connor rearranged his work schedule to rage-scroll through Facebook comments, to the detriment of more valuable work, the choice was his. And it's the nature of investigations that some don't pan out. As the jury told the County prosecutor after they acquitted Novak, it's a dispatcher's job to take calls and an officer's job to investigate.[90]

## IV. Novak did not possess the requisite mental state under Ohio Rev. Code § 2909.04(B) because he did not "knowingly" disrupt police services.

Defendant Connor had no probable cause that Novak spoke on his Facebook page with the *mens rea* required by Ohio Rev. Code § 2909.04(B), which prohibits "knowingly" using a computer "so as to disrupt, interrupt, or impair" police operations. In Defendant Connor's grand-jury testimony, he admitted that Novak may have thought he was publishing a parody or satire.[91]  Indeed, Connor knew the Facebook page was a joke, at least by the time he had read all of Novak's page.[92] Defendant Connor testified, he was investigating public services—regardless of Novak's intent.[93] But this admission betrays the single-minded animosity driving Connor's pursuit of Novak: the "knowing" mental state was essential, not ancillary, to probable cause for a violation of Ohio Rev. Code § 2909.04. Yet Defendant Connor brushed it aside, as this Court should not.

---

[90] Plaintiff's Dep. Ex. 20 (included as **Ex. 11**).
[91] Trans. of grand-jury proceedings at 7.
[92] Connor Dep. at 187:21–188:5.
[93] *Id.* at 174:22–175:5. *See also id.* at 190:12–15 (Connor did not have knowledge of Novak's intent).

**V.**     **Defendants lacked probable cause to arrest Novak, seize his property, search his residence and electronics, and prosecute him under Ohio Rev. Code § 2909.04.**

Novak seeks summary judgment on the probable-cause element of each of the following Fourth Amendment claims:

- Claim 7: Fourth Amendment violation under 42 U.S.C. § 1983—wrongful arrest;

- Claim 8: Fourth Amendment violation under 42 U.S.C. § 1983—unlawful search;

- Claim 9: Fourth Amendment violation under 42 U.S.C. § 1983—unlawful property seizure; and

- Claim 11: Fourth Amendment violation under 42 U.S.C. § 1983—malicious prosecution.

Novak also seeks the Court to resolve the element of all claims that relates to the parodic nature of his speech, given the undisputed facts in the record and recent Sixth Circuit case law discussed below.

### A. Defendants lacked probable cause to arrest Novak under Ohio Rev. Code § 2909.04 (Claim 7).

To prevail on Claim 7, Novak must demonstrate that Defendant Connor lacked probable cause for his arrest.[94] An arrest warrant doesn't establish probable cause when a magistrate issued it because of the officer's "material omissions," "material misrepresentations," or "material false statements" made deliberately or with "reckless disregard for the truth."[95]

Here, Defendant Connor made material false statements and misrepresentations and omitted material information when seeking the warrant from Magistrate Fink. As detailed above, Connor told him that the people calling dispatch about Novak's page believed it was the genuine Parma Police Facebook page, which is demonstrably false. He also told Magistrate Fink that the calls impeded the functions of the police, which, as the dispatch records and City testimony show, did not happen. Connor misled Magistrate Fink into believing that Novak intended to dupe the public

---

[94] *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).
[95] *Id.* at 439.

and failed to disclose (a) that Novak's only conduct was speech and (b) that Novak's page was a parody and joke—both of which, Magistrate Fink said, would have been relevant.

## B. Defendants lacked probable cause to search Novak's residence and electronics (Claim 8).

To prevail on Claim 8, Novak must prove that Detective Connor lacked probable cause for his search of Novak's residence: a search warrant may not issue except "upon probable cause, supported by Oath or affirmation."[96] As with arrest warrants, an officer cannot rely on a judge's determination of probable cause if the officer knowingly made false statements and omissions to the judge that caused the warrant to be issued.[97] To demonstrate that a warrant was issued based on a false affidavit, the plaintiff must show that: (1) the officer's warrant affidavit contained a false statement or omission made deliberately or with reckless disregard for truth; and (2) this false statement or omission was material to the judge's finding of probable cause.[98]

The Fourth Amendment requires the Court to disregard any false statements in the warrant affidavit and consider any omitted information to determine whether the corrected affidavit would still probable cause.[99] If not, the search violated the Fourth Amendment.[100]

In this case, the judicial officer who executed the search warrants, Judge O'Donnell, testified that she did not determine whether probable cause existed for a violation of Ohio Rev. Code § 2909.04 to justify the searches. Instead, she relied upon Magistrate Fink's determination of probable cause when he executed the complaint and arrest warrant. As a result, the same false

---

[96] U.S. Const. amend. IV.

[97] *McCallum v. Geelhood*, 742 Fed.Appx. 985, 991 (6th Cir. 2018), citing *Yancey v. Carroll County*, 876 F.2d 1238, 1243.

[98] *McCallum*, 742 Fed.Appx. at 991, citing *Vakilian v. Shaw*, 335 F.2d 509, 517 (6th Cir. 2003) and *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

[99] *Sykes*, 625 F.3d at 305.

[100] *McCallum*, 742 Fed.Appx. at 991, citing *Franks v. Delaware*, 438 U.S. 154, 156 (1978). *See Sykes*, 625 F.3d at 305 (explaining that Court sets aside false statements or material omissions in the warrant affidavit to determine if probable cause still exists) and at 306–07 (discussion of how Court disregarded warrant affidavit's "false and misleading statements" and "material omissions" to evaluate probable cause for false-arrest claim).

statements, misrepresentations, and omissions that showed the absence of probable cause for the arrest warrant also mean that the search warrants are not supported by probable cause.

### C. Defendants lacked probable cause to seize Novak's property (Claim 9).

Property seizure is unlawful if it is unreasonable.[101] This inquiry is objective and asks whether the facts available to the officer at the moment of seizure would cause a "person of reasonable caution" to believe the seizure was appropriate.[102] There is "no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails."[103] This requires the Court to balance the government interest in the seizure against the individual's rights.[104] Here, where the government had no interest in seizing Novak's electronics because Connor lacked probable cause, the government's side of the scale is empty, and Novak's Fourth Amendment right to be free from unreasonable seizure must prevail.

### D. Defendants lacked probable cause to prosecute Novak (Claim 11).

To prove his claim for malicious prosecution under federal law, one element that Novak must show is that Defendant Connor lacked probable cause.[105] Novak seeks summary judgment only on the probable-cause element of this claim, and not the other elements.

Although a grand-jury indictment ordinarily confers a presumption of probable cause, that presumption is rebuttable where:

> (1) a law-enforcement officer, when setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence;
>
> (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and

---

[101] *Middaugh v. City of Three Rivers*, 629 Fed.Appx. 710, 715 (6th Cir. 2015).

[102] *Hill v. McIntyre*, 884 F.2d 271, 277 (6th Cir. 1989), citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

[103] *Terry*, 392 U.S. 21, citing *Camara v. Municipal Court*, 387 U.S. 523, 534–37 (1967).

[104] *Id.*, 392 U.S. at 22–23.

[105] *Novak v. City of Parma*, 932 F.3d 421, 435 (6th Cir. 2019), citing *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

(3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).[106]

Here, Defendant Connor's false statements to Magistrate Fink, Judge O'Donnell, and the grand jury meet all three requirements.

First, Defendant Connor knowingly or recklessly made false statements to set this prosecution in motion. Connor secured the complaint and arrest warrant to initiate criminal proceedings by misleading Magistrate Fink into believing that Novak created his page to confuse the public and that people were calling the City because they believed it was the real Parma Police Department page, thereby impeding police functions and wasting police time. Connor also failed to advise Magistrate Fink that Novak's only "conduct" was speech and that the page was a joke—both of which, Magistrate Fink testified, would have been relevant to him. Since Judge O'Donnell relied upon Magistrate Fink's probable-cause determination for the offense, these errors were repeated for the search warrants. She also reviewed Connor's warrant affidavits, both of which falsely stated that Novak had purported himself to be a Parma police officer and that he disrupted and impaired police function because City offices received "numerous" calls.

Then Connor told the grand jury that the police department, dispatch, and city hall were "getting inundated" with calls from residents who "honest to God" believed police had posted this page. Next, Connor crossed the line from fact witness to advocate, reassuring the grand jury that Novak's page wasn't parody or satire and that prosecution wouldn't violate the First Amendment.

---

[106] *King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017). Note that this three-part standard to rebut the presumption of probable cause attached to a grand-jury indictment is narrowly tailored to avoid imposing liability for grand-jury testimony itself. Indeed, while Novak points to Connor's false statements to the grand jury to rebut the presumption of probable cause, enabling him to pursue a malicious-prosecution claim, Novak also shows that Connor made other false statements, including to judicial officers, to set the unlawful prosecution in motion.

Second, these false or misleading statements and omissions were material to the ultimate prosecution of Novak. Without the false statements about disruption and failure to advise that Novak's page was a joke—and limited to speech—instead of an intentional effort to disrupt public services, Magistrate Fink wouldn't have issued the complaint and arrest warrant. Because Judge O'Donnell's search warrants piggybacked upon the probable-cause determination on which the complaint and arrest warrant were premised, the search warrants wouldn't have been issued if Magistrate Fink found no probable cause. And, of course, the grand-jury indictment Connor achieved by lying to and misleading the grand jury—while simultaneously reassuring them that the First Amendment didn't bar the prosecution and advocating that the page was not parody or satire—was material to the County's prosecution of Novak.

Third, as shown above, this evidence of Defendant Connor's deception is not limited to his false grand-jury testimony. As a result, the evidence adduced in discovery has not only rebutted the indictment's presumption but has shown the opposite: Connor did not have probable cause.

## VI. Under *Gerics v. Trevino*, this Court may revisit the objective "reasonable reader" standard to determine whether probable cause could exist based solely on Novak's speech.

The Court should also enter partial summary judgment on the lack of probable cause for Novak's speech vis-à-vis his Facebook posts. In the Sixth Circuit's qualified-immunity-appeal opinion in this case, the court discussed the "custom" of deferring to jury findings on parody, citing *Hustler v. Falwell*.[107] But the legal standard for parody is a reasonableness standard. And given the Sixth Circuit's ruling less than two months ago in *Gerics v. Trevino*, this legal issue is ripe for decision. The "historical facts" about Novak's speech are undisputed in the record, and this Court should decide as a matter of law whether Defendant Connor could base probable cause for a violation of

---

[107] *Novak v. City of Parma*, 932 F.3d 421, 428 (6th Cir. 2019), citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 57 (1988).

Ohio Rev. Code § 2909.04(B) upon the words of Novak's posts. After all, it has been clearly established since *City of Houston v. Hill* that police officers cannot fashion probable cause from pure speech that interrupts police operations.[108] Even Defendant Riley—confronted with other statutes that require him to apply a reasonable-person standard and Novak's posts—did a 180-degree turn and admitted that a reasonable reader, upon reflection, wouldn't believe the absurd things Novak said.[109] Where the record is as crystal clear that that is the case, the Court should just say so. No probable cause existed.

**CONCLUSION**

Plaintiff Anthony Novak respectfully requests that the Court grant his motion for partial summary judgment, (1) finding the lack of probable cause for Claims 7, 8, 9, and 11 and (2) establishing for all claims that Novak's speech was parodic and cannot form the basis for probable cause for any criminal offense.

Dated: November 13, 2020                              Respectfully submitted,

 */s/ Subodh Chandra*
Subodh Chandra (0069233)
Jessica S. Savoie (0099330)
Brian Bardwell (0098423)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, Ohio 44113
216.578.1700 (p) / 216.578.1800 (f)
Subodh.Chandra@ChandraLaw.com
Jessica.Savoie@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Attorneys for Plaintiff Anthony Novak*

---

[108] *City of Houston, Tex. v. Hill*, 482 U.S. 451, 455 (1987) (ordinance against "interrupt[ing] any policeman in the execution of his duty" could not constitutionally apply to protected speech, because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers").
[109] Dep. of Kevin Riley 64:22–68:17; 72:13–15. (excerpts at **Ex. 13**).

**VERIFICATION OF COMPLIANCE WITH PAGE LIMITS**

I certify that this case has been assigned to the standard track, and that the Memorandum in Support of Plaintiff Anthony Novak's Motion for Partial Summary Judgment on Probable Cause adheres to the page limitations set forth in Loc. R. 7.1(f).

Dated: November 13, 2020

/s/ Subodh Chandra
Subodh Chandra (0069233)
Jessica S. Savoie (0099330)
Brian Bardwell (0098423)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone/216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Jessica.Savoie@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Attorneys for Plaintiff Anthony Novak*