IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY NOVAK, | ) | Case No. 1:17-cv-2148 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| THE CITY OF PARMA, *et al.* | ) | |
| | ) | **OPINION & ORDER** |
| Defendants. | ) | |
| | ) | |

Before the Court are the following motions:

1. Motion for Summary Judgment filed by Defendant, the City of Parma ("Parma") (ECF Doc. 100);

2. Motion for Summary Judgment filed by Defendants Kevin Riley ("Riley") and Thomas Connor ("Connor") (ECF Doc. 101); and

3. Motion for Partial Summary Judgment filed by Plaintiff Anthony Novak ("Novak") (ECF Doc. 102).

On December 22, 2020, the parties filed oppositions to the motions for summary judgment. ECF Doc. 122, ECF Doc. 123, ECF Doc. 124. On January 12, 2021, they filed replies. ECF Doc. 125, ECF Doc. 126, ECF Doc. 127. For the reasons stated below, the Court GRANTS Defendants' motions for summary judgment (ECF Doc. 100 and ECF Doc. 101) and DENIES Novak's motion for partial summary judgment. ECF Doc. 102.

I.      **Introduction**

Plaintiff Anthony Novak ("Novak") created a Facebook page that mimicked the official
Parma Police Department's official Facebook page.  He used it to post false information about
the police department.  As he sees it, his page was a parody and was clearly protected by the
First Amendment.

The Parma Police Department saw it differently.  They started receiving calls from the
public about Novak's Facebook page and opened an investigation.  Novak portrays this
investigation as a hot-headed police pursuit designed to punish him for making fun of them.  But
the parties' Fed. R. Civ. P. 56 materials do not support Novak's one-sided portrayal.

The Sixth Circuit aptly noted that Novak's Facebook page was "either a protected parody
in the great American tradition of ridiculing the government or a disruptive violation of state law.
Maybe both."  And, in the context of Fed. R. Civ. P. 12, the Sixth Circuit recognized, as did this
Court, that Novak's portrayal of the events precluded dismissal, even when qualified immunity
was considered.  *Novak v. City of Parma,* 932 F.3d 421, 424 (6th Cir. July 29, 2019).

But the Fed. R. Civ. P. 56 materials have revealed a different picture of the investigation
and prosecution of Novak.  The evidence does not show that Detective Thomas Connor and his
co-defendants were acting as hot-headed police officers seeking revenge against Novak for his
"parody."  Rather, it shows that they sought advice from multiple sources about the legality of
Novak's Facebook page and followed the proper procedures by obtaining warrants before
arresting Novak, searching his property, and presenting the facts of their investigation to the
County Prosecutor and grand jury.

Novak's Facebook page may very well be protected by the First Amendment.  At the
very least, there is a genuine dispute of material fact on that issue.  *Novak,* 932 F.3d at 428.  But

Novak mistakenly believes that his First Amendment right to post a parody on Facebook, if that is what he did, was absolute.  It wasn't.

Moreover, determining if Novak's Facebook page was protected by the First Amendment is not the only important issue in this case.  Indeed, the Court does not even have to resolve the First Amendment issue to rule on the parties' motions for summary judgment.  Because even if the content of Novak's Facebook page *was* protected, Novak's conduct in confusing the public and disrupting police operations was not.  And, if the defendants had probable cause to arrest Novak for knowingly disrupting police operations, they are immune from civil liability.  *Reichle v. Howards,* 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985; *Novak,* 932 F.3d at 429.

Nor does the fact that Novak was ultimately acquitted of the crime of disrupting police operations expose defendants to civil liability if they had probable cause to believe that Novak committed that crime.  Conviction requires proof beyond a reasonable doubt, but charging someone with a crime requires only probable cause.  *See Lozman v. City of Riviera Beach,* 138 S. Ct. 1945, 1952, 138 L. Ed. 2d 342 (2018).

Here, after considering the parties' arguments and the materials submitted pursuant to Fed. R. Civ. P. 56, the Court recognizes that there are no genuine disputes of material fact as to whether the defendants had probable cause to investigate and charge Novak with a violation of Ohio Rev. Code § 2909.04(B).  For this reason, the defendants are entitled to summary judgment as further explained below.

## II.    Statement of Facts

On March 1, 2016, around 11:00 p.m., Novak posted a Facebook page mimicking the official Parma Police Department page.  Novak's page purported to be the official police page; it had the same name, cover photo, and profile photo.  Novak Depo., ECF Doc. 90 at 106.  The

only distinguishing features were that small font text identified Novak's page as a "Community" page, and it lacked the "Police Station-Government Organization" designation held by the official department page.  *Id.*  Novak's page also lacked the official "blue checkmark" denoting Facebook verification.  ECF Doc. 6 at 14.

Novak published six posts on the fake Facebook page.  The topics of his posts included: criminalizing assisting the homeless; announcing openings for Parma Police officers (but discouraging minorities from applying); prioritizing a search for an African-American loitering suspect over a search for a white armed robbery suspect; advertising free abortions for teenagers provided by police in the Wal-Mart parking lot; announcing a "pedophile reform" event; and instituting a daytime curfew for families.  ECF Doc. 6 at 13.

In the following hours, Novak's Facebook page generated around 50,000 views and numerous posts.  Novak Depo., ECF Doc. 90 at 131.  Novak deleted comments claiming the page was a hoax.  *Id.* at 104.  His roommate later testified that Novak was using the fake Facebook page to "mess with people."  Kozelka Depo., ECF Doc. 97-1 at 15-16.  Several citizens contacted the Parma Police Department non-emergency dispatch line, the city's Law Department, and Parma City Hall.  Connor Depo., ECF Doc. 71-7 at 184.  The main reasons for these calls were to alert the city and to verify that Novak's Facebook page was not the official police department page.  Riley Depo., ECF Doc. 105-1 at 31-32.  Seven of the calls to the Parma Police dispatch line were recorded.  *Id.* at 32.

On March 2, 2016, Captain Kevin Riley, then a lieutenant, assigned Detective Thomas Connor to investigate the page.  Connor Depo., ECF Doc. 71-7 at 20-21.  Connor looked at Novak's page and determined that the official department page had not been hacked.  He then contacted Timothy Dobeck, the Law Director and Prosecutor for the City of Parma.  *Id.*  Dobeck

and Connor reviewed statutes involving impersonation of a police officer and disruption of public services.  *Id*. at 178-179.  Dobeck advised Connor that Novak's conduct may have violated Ohio Rev. Code § 2909.04(B), disrupting public service.  *Id*.  Ohio Rev. Code §2909.04(B) prohibits "knowingly us[ing] any computer, computer system, computer network, telecommunications device, or other electronic device or system of the internet so as to disrupt, interrupt, or impair the functions of any police . . . . operations."

After seeking advice from Dobeck[1], Detective Connor applied for a search warrant for Novak's IP address from Facebook on March 2, 2016.  Dobeck Depo., ECF Doc. 79-3 at 126; Novak Depo., ECF Doc. 90, Exhibit 8.  He also subpoenaed Facebook and requested that Novak's page be taken down.  Connor Depo., ECF Doc. 71-7 at 336.  Connor identified the first Facebook profile to share the fake account as "anthony.h.novak." ECF Doc. 71-7 at 184.

Captain Riley also spoke to Dobeck on March 2, 2016 and received the same advice - to investigate the page as a possible violation of disrupting public services.  Riley Depo., ECF Doc. 71-1 at 176.  On the official Parma Police Department Facebook, Captain Riley notified the public that Novak's Facebook page was a fake.  *Id*. at 99.  But Novak replicated this warning and posted it on the fake page as well.  *Id*.  Such conduct went far beyond mere parody or poking fun at the police and was consistent with the testimony of his roommate that Novak was using his Facebook page to "mess with people."  Kozelka Depo., ECF Doc. 97-1 at 15-16.  It was also evidence that Novak was trying to disrupt police operations.  Captain Riley also appeared on Channel 8 warning the public about the fake page.  *Id*. at 223.  Cleveland.com also interviewed him about the fake Facebook page.  *Id*.  After learning about the Channel 8 broadcast, Novak

---

[1] Dobeck also reviewed the affidavits for search warrant that Detective Connor prepared.  Dobeck Depo., ECF Doc. 79-3 at 127, 159-160.

voluntarily deleted the Facebook page.  Novak Depo., ECF Doc. 90 at 125.  The page had been viewable on Facebook for 12 hours.  Id.

On March 3, 2016, Detective Connor applied for another search warrant, this time seeking all Facebook records related to the now-deleted page.  Novak Depo., ECF Doc. 90-1 at 526.  Parma Municipal Judge Kenneth Spanagel issued a search warrant around 12:45 p.m. on March 3, 2016.  Novak Depo., ECF Doc. 90-1 at 526.  On March 18, 2016, Connor reviewed the thousands of pages of documents received from Facebook as a result of the subpoena (Connor Depo., ECF Doc. 71-7 at 289), and shared them with Dobeck.  Dobeck Depo., ECF Doc. 79-3 at 52.  Detective Connor then sought an arrest warrant for Anthony Novak on March 18, 2016.  Id. at 57, 125-26.  Magistrate Judge Edward Fink issued the warrant, based on a violation of the disrupting public services statute.  Fink Depo. pp. 82-84, ECF Doc. 92-1 at 22.

Novak was arrested on March 25, 2016.  Connor Depo., ECF Doc. 71-7 at 308.  That same day, Detective Connor applied for a search warrant for Novak's apartment.  O'Donnell Depo., ECF Doc. 108-1 at 29-31.  Judge Deanna O'Donnell issued the search warrant.  Id.  On March 28, 2016, Judge O'Donnell issued a second search warrant, granting police authority to search the contents of electronic devices seized from Novak's apartment.  Id. at 35, Ex. 8.  Because disrupting public services is a felony, the case was transferred to the Cuyahoga County Court of Common Pleas.  Dobeck Depo., ECF Doc. 79-3 at 238-41.

The assistant prosecutor for Cuyahoga County presented the facts to a grand jury in April 2016.  Id. at 65-66, 240.  On April 11, 2016, a grand jury indicted Novak with a violation of Ohio Rev. Code § 2909.04(B).  The case proceeded to trial in August 2016.  Connor Depo., ECF Doc. 71-7 at 319.  Following the government's case, the trial court denied a motion to dismiss on First Amendment grounds and a motion for acquittal.  ECF Doc. 6-1 at 256.  In denying the

motion for acquittal, the trial judge ruled that there was evidence from which a reasonable jury could conclude that Novak was guilty of knowingly interrupting the operations of the police department.

Novak was acquitted on August 11, 2016. *Id.*  After his acquittal, Novak filed this civil rights action against the City of Parma; Parma police officers, Kevin Riley and Thomas Connor; and John Doe[2], a law enforcement official and member of the Ohio Internet Crimes Against Children Task Force.  ECF Doc. 1.

## III.     Procedural History and Remaining Claims

Novak filed this lawsuit on October 10, 2017, and a week later, filed a First Amended Complaint asserting 30 claims against the various defendants.  ECF Doc. 6.  On April 5, 2018, the Court issued an order and opinion dismissing four of Novak's claims.  ECF Doc. 19.  The Court dismissed Novak's property retention claim because such a claim does not exist (ECF Doc. 19 at 12), and his replevin claim because it was moot.  ECF Doc. 19 at 20-21.  The Court also dismissed without prejudice Novak's challenges to the constitutionality of Ohio Rev. Code § 2909.04 because it was not necessary to decide those claims[3].  ECF Doc. 19 at 18.  The Court denied dismissal on the remaining claims because Novak had alleged facts that, if true, would defeat defendants' claim of qualified immunity in this case.  ECF Doc. 19.  Because the Court's decision involved a question of qualified immunity, it was immediately appealed.

On July 30, 2019, the Sixth Circuit Court of Appeals substantially affirmed the Court's decision.[4]  ECF Doc. 24.  The Court accepted Novak's allegations as true and drew all

---

[2] Novak did not amend his complaint or further pursue his claim against this John Doe defendant.
[3] Novak never sought to refile these claims.
[4] As shown in the following chart, the Sixth Circuit reversed the Court's decision to deny the motion to dismiss on Novak's claims related to anonymous speech, censorship in a public forum, and right to receive speech.  ECF Doc. 24 at 21.

reasonable inferences in his favor. ECF Doc. 24 at 2. The Sixth Circuit determined that there was a question of fact as to whether Novak's Facebook page was a protected parody and that a jury would have to make that decision. ECF Doc. 24 at 8. The Sixth Circuit did not make a finding on the issue of probable cause; it determined that more facts were needed. *Id.* And the Sixth Circuit recognized, as this Court must also, that *if* the officers had probable cause, they were entitled to qualified immunity because there would be no constitutional violation. ECF Doc. 24 at 9.

The status of Novak's claims is as follows:

| Claim #: | Type of Claim: | Against: | Pending or Disposed: |
|---|---|---|---|
| Claim 1 | First Amendment Retaliation, 42 U.S.C. § 1983 – Prior Restraint (ECF Doc. 6 at 38) | Riley and Connor | Pending |
| Claim 2 | First Amendment Retaliation, 42 U.S.C. § 1983 – Anonymous Speech (ECF Doc. 6 at 40) | Riley and Connor | Dismissed by Court of Appeals (ECF Doc. 24 at 16-17) |
| Claim 3 | First Amendment Retaliation, 42 U.S.C. § 1983 – Criticism of Police Officers (ECF Doc. 6 at 41) | Riley and Connor | Pending |
| Claim 4 | First Amendment Retaliation, 42 U.S.C. § 1983 – Right to Receive Speech (ECF Doc. 6 at 42) | Riley and Connor | Dismissed by Court of Appeals (ECF Doc. 24 at 15) |
| Claim 5 | First Amendment Retaliation, 42 U.S.C. § 1983 – Designated Public Forum (ECF Doc. 6 at 43) | Riley and Connor | Dismissed by Court of Appeals (ECF Doc. 24 at 15) |
| Claim 6 | First Amendment Retaliation, 42 U.S.C. § 1983 – Retaliatory Arrest (ECF Doc. 6 at 45) | Riley and Connor | Pending |
| Claim 7 | Fourth Amendment Violation, 42 U.S.C. § 1983 – Wrongful Arrest (ECF Doc. 6 at 46) | Riley and Connor | Pending |
| Claim 8 | Fourth Amendment Violation, 42 U.S.C. § 1983 – Unlawful Search (ECF Doc. 6 at 47) | Riley and Connor | Pending |
| Claim 9 | Fourth Amendment Retaliation, 42 U.S.C. § 1983 – Property Seizure (ECF Doc. 6 at 467 | Riley and Connor | Pending |

| Claim 10 | Fourth Amendment Retaliation, 42 U.S.C. § 1983 – Property Retention (ECF Doc. 6 at 48) | Riley and Connor | Dismissed with prejudice – ECF Doc. 19 at 12. |
|---|---|---|---|
| Claim 11 | Fourth Amendment Violation, 42 U.S.C. § 1983 – Malicious Prosecution (ECF Doc. 6 at 49) | Riley and Connor | Pending |
| Claim 12 | Municipal Monell Liability, 42 U.S.C. § 1983 – Authorized Action (ECF Doc. 6 at 50) | Parma | Pending |
| Claim 13 | Municipal Monell Liability, 42 U.S.C. § 1983 – Authorized Action (ECF Doc. 6 at 51) | Parma | Pending |
| Claim 14 | Municipal Monell Liability, 42 U.S.C. § 1983 – Failure to Train (ECF Doc. 6 at 52) | Parma | Pending |
| Claim 15 | Conspiracy to Violate Civil Rights, 42 U.S.C. § 1983 (ECF Doc. 6 at 54) | Riley, Connor and John Doe | Pending |
| Claim 16 | Federal Privacy Protection Act (ECF Doc. 6 at 55) | Riley, Connor and Parma | Pending |
| Claim 17 | Constitutional Challenge to Ohio Rev. Code § 2909.04(B) as vague and overbroad (ECF Doc. 6 at 56) | Riley, Connor and Parma | Dismissed without prejudice - ECF Doc. 19 at 18-19. |
| Claim 18a | Constitutional Challenge to Ohio Rev. Code § 2909.04(B) as applied (ECF Doc. 6 at 56) | Riley, Connor and Parma | Dismissed without prejudice - ECF Doc. 19 at 18-19. |
| Claim 18b | Supervisor Liability (ECF Doc. 6 at 57) | Riley | Pending |
| Claim 19 | False Writings, Ohio Rev. Code § 2921.03(C) (ECF Doc. 6 at 57) | Riley and Connor | Pending |
| Claim 20 | False Writings, Ohio Rev. Code § 2307.60(A)(1) and 2921.03(A) (ECF Doc. 6 at 58) | Riley and Connor | Pending |
| Claim 21 | Civil Liability for Criminal Acts under Ohio Rev. Code § 2307.60(A)(1) and 2921.12 – Tampering with Evidence (ECF Doc. 6 at 59) | Riley and Connor | Pending |
| Claim 22 | Civil Liability for Criminal Acts under Ohio Rev. Code § 2307.60(A)(1) and 2921.45 – Interference with Civil Rights (ECF Doc. 6 at 60) | Riley and Connor | Pending |
| Claim 23 | Civil Liability for Criminal Acts under Ohio Rev. Code § 2307.60(A)(1) and 2921.13 – Falsification (ECF Doc. 6 at 60) | Riley and Connor | Pending |

| Claim 24 | Civil Liability for Criminal Acts under Ohio Rev. Code § 2307.60(A)(1) and 2921.11 – Perjury (ECF Doc. 6 at 61) | Riley and Connor | Pending |
|---|---|---|---|
| Claim 25 | Civil Liability for Criminal Acts under Ohio Rev. Code § 2307.60(A)(1) and 2921.32 – Obstruction of Justice (ECF Doc. 6 at 62) | Riley and Connor | Pending |
| Claim 26 | Civil Liability for Criminal Acts under Ohio Rev. Code § 2307.60(A)(1) and 2921.44(E) –Dereliction of Duty (ECF Doc. 6 at 62) | Riley and Connor | Pending |
| Claim 27 | Malicious Criminal Prosecution (ECF Doc. 6 at 63) | Riley and Connor | Pending |
| Claim 28 | Tortious Interference with Contract (ECF Doc. 6 at 64) | Riley and Connor | Pending |
| Claim 29 | Replevin (ECF Doc. 6 at 64) | Parma | Dismissed with Prejudice, ECF Doc. 19 at 20-21. |

## IV.      Standard of Review

Summary judgment is appropriate when there exists no genuine dispute with respect to the material facts and, in light of the facts presented, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The court may look to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits when ruling on the motion. Fed. R. Civ. P. 56(c).  The facts must be viewed in the light most favorable to the non-moving party and the benefit of all reasonable inferences in favor of the non-movant must be afforded to those facts.  *Id.*  The mere "scintilla of evidence" within the record that militates against the overwhelming weight of contradictory corroboration does not create a genuine issue of fact. *Bible Believers v. Wayne Cty.*, 805 F.3d 228 (6th Cir. 2015), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## V.  Brief Summary of Parties' Arguments[5]

### A.  Defendants Connor's and Riley's Motion for Summary Judgment

Defendants Connor and Riley filed their motion for summary judgment on November 13, 2020.  ECF Doc. 101.  They characterize Novak's conduct as "creat[ing] a fake Parma Police Facebook page that was nearly identical to the official Parma Police page," and they argue that his conduct was not protected by the Constitution.  They further argue that they had probable cause to charge him with a violation of Ohio Rev. Code § 2909.04.

### B.  Defendant City of Parma's Motion for Summary Judgment

On November 13, 2020, the City of Parma ("Parma") filed a motion for summary judgment.  ECF Doc. 100.  Parma argues that it cannot be held liable under § 1983 because Novak's constitutional rights were not violated.  Parma also contends that it did not have an official policy that led to the investigation and arrest of Novak; the alleged constitutional violation was not the result of a widespread practice or custom; and it cannot be held liable under a final policymaker theory.

### C.  Plaintiff Anthony Novak's Motion for Partial Summary Judgment

Plaintiff Anthony Novak ("Novak") has moved for summary judgment on four of his remaining Fourth Amendment claims:  Claim 7 - §1983 claim for wrongful arrest; Claim 8 - §1983 claim for unlawful search; Claim 9 - §1983 claim for unlawful property seizure; and Claim 11 - § 1983 claim for malicious prosecution.  He has also moved for summary judgment on the issue of probable cause for all of the remaining claims in the amended complaint.  Specifically, he has asked this Court to hold, as a matter of law, that his parody Facebook page

---

[5] This brief summary is not intended to fully re-state the parties' arguments.

11

was protected speech and that defendants lacked probable cause to arrest him for a violation of

Ohio Rev. Code § 2909.04.

Citing *Gerics v. Trevino*, 974 F.3d 798 (6th Cir. 2020)[6], Novak argues that the Court is

permitted to decide the legal question of probable cause.  He argues that this applies to both the

probable cause determination (ECF Doc. 102 at 15) and to the issue of whether his Facebook

page was a parody.  ECF Doc. 102 at 24.  He argues that the Court should find, as a matter of

law, that Officer Connor lacked probable cause to suspect that Novak had violated

Ohio Rev. Code § 2909.04(B).  ECF Doc. 102 at 16.  This is based on his position that his

Facebook page did not "disrupt, interrupt or impair" the functions or operations of the Parma

Police Department.  Novak contends that, as a matter of law, "nine calls to the dispatch center,

three phone calls to the law department, three phone calls to the safety department and what

appeared to be two emails to the safety department reporting the existence of the page" could not

be considered a "disruption" of police services.  He argues that the Court must read a

"substantiality" requirement into the statute.  Novak also argues that Detective Connor decided

on his own to investigate his Facebook page, and that any interruption to his otherwise planned

work activities cannot be attributed to Novak.  ECF Doc. 102 at 19.

Novak also asserts that he did not have the required *mens rea* to violate

Ohio Rev. Code § 2909.04(B).  The statute provides that no one may "knowingly" use a

computer "so as to disrupt, interrupt or impair" police operations.  Novak cites Connor's grand

jury testimony where he stated that Novak "may have thought" he was creating a parody, but he

---

[6] *Gerics* held that the district court should have decided the issue of probable cause because the facts were undisputed.  *Gerics*, 974 F.3d at 805-806.

wasn't.  ECF Doc. 86-1 at 7.  Novak argues that this shows that he could not have "knowingly" violated the statute.

Novak contends that defendants lacked probable cause to arrest him, search his residence and electronics, seize his property and prosecute him under Ohio Rev. Code § 2909.04.  Novak argues that because Connor made material omissions or misrepresentations to Magistrate Fink and other judicial officers, the warrants he obtained do not establish probable cause.  ECF Doc. 102 at 20.  He further argues that the government had no legitimate interest in seizing his electronics.  Finally, Novak argues that there was no probable cause to prosecute him and that Connor lied to the grand jury by telling them that the police department, dispatch and city hall were "getting inundated" with calls from residents about his Facebook page.

## VI.    Law & Analysis

### A.    Qualified Immunity

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978)) (for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v.*

13

*Forsyth,* 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (emphasis deleted).  The

"driving force" behind creation of the qualified immunity doctrine was a desire to ensure that

"'insubstantial claims' against government officials [will] be resolved prior to discovery."

*Anderson v. Creighton,* 483 U.S. 635, 640, n. 2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity

questions at the earliest possible stage in litigation."  *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.

Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam).  In this particular case, the question could not be

resolved prior to discovery because Novak alleged facts that, if true, would have shown a lack of

probable cause.  Now that the parties have conducted discovery, the immunity question is ready

for resolution.  *See Novak v. City of Parma,* 932 F.3d 421 (6th Cir. July 29, 2019).

Qualified immunity shields government officials from civil damages liability unless the

official violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct.  *Reichle v. Howards,* 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985.

citing *Ashcroft v. al-Kidd,* 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).  To be

clearly established, a right must be sufficiently clear "that every 'reasonable official would [have

understood] that what he is doing violates that right.'  *Id.,* at 741, 131 S. Ct. 2074, 2083, 179 L.

Ed. 1149 (quoting *Anderson,* 483 U.S. at 640.)  In other words, "existing precedent must have

placed the statutory or constitutional question beyond debate."  563 U.S., at 741, 131 S. Ct. 2074,

2083, 179 L. Ed. 1149.  This "clearly established" standard protects the balance between

vindication of constitutional rights and government officials' effective performance of their

duties by ensuring that officials can " 'reasonably . . . anticipate when their conduct may give

rise to liability for damages.'  *Anderson, supra,* at 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523

(quoting *Davis v. Scherer,* 468 U.S. 183, 195, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)).

### B. Alleged Constitutionally Protected Conduct

Novak's remaining claims are largely based on an alleged violation of his First and Fourth Amendment rights. Novak contends that his First Amendment rights were violated when the police arrested and prosecuted him for a violation of Ohio Rev. Code § 2909.04. But the Supreme Court has previously explained that the right allegedly violated must be established, "'not as a broad general proposition,' *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam), but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official. *Anderson, supra,* at 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523. So here, as in *Reichle,* the constitutional right at question is not whether Novak was entitled to be free from retaliatory action based on his speech. He was. *See Kennedy v. City of Villa Hills, Ky.,* 635 F.3d 210, 219 (6th Cir. 2011). The more specific question that the instant case presents is: whether Novak was free from an arrest that was supported by probable cause. And *that* question was already clearly decided prior to Novak's arrest. *See Reichle,* 566 U.S. at 665.

The fundamental problem with Novak's claims is that the Supreme Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause. *Reichle,* 566 U.S. at 664-665. "The Supreme Court said that in 2012, and it remains true today." *Novak v. Parma,* 932 F.3d 421, 429 (2019). Thus, even if Novak could show, as a matter of law, that he had a First Amendment right to post a parody on Facebook about the Parma police, if the defendants had probable cause to investigate and arrest him under Ohio Rev. Code § 2909.04, Novak cannot show any constitutional violation. In short, if defendants had probable cause, Novak's First Amendment claim, though significant in a general sense, is irrelevant to this Court's determination on the motions for summary judgment.

15

### 1. First Amendment Claims

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill,* 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-463. The "right to be free from retaliatory arrest after insulting an officer was clearly established" before Novak's arrest in 2016. *See Kennedy,* 635 F.3d at 219 (6th Cir. 2011). But here, Novak's conduct did more than insult a police officer, it also disrupted police operations in violation of Ohio Rev. Code § 2909.04(B).

Novak claims that he clearly had a First Amendment right to post a "parody" on a Facebook page about the Parma Police Department. The Sixth Circuit Court of Appeals dedicated several pages of its opinion to considering whether Novak's Facebook page was, in fact, a parody protected by the First Amendment and concluded there was a dispute of fact on that issue.[7] ECF Doc. 24 at 8. This Court agrees that there is a genuine dispute of material facts on whether the Facebook post was protected by the First Amendment.

But Novak's conduct also confused some members of the public, leading them to believe that his was the real Parma Police Facebook page. ECF Doc. 86-1 at 4. When Connor consulted with Law Director Dobeck, they reasoned that Novak's conduct may have violated Ohio Rev. Code § 2909.04(B) with the following elements: 1) "knowingly;" 2) "using a computer;" and 3) "to disrupt, interrupt, or impair the functions of any police … operations." And Connor's investigation resulted in a finding of probable cause on each of those prima facie

---

[7] Novak and defendants disagree. They both seemingly argue that the Court should decide, as a matter of law, whether Novak's posting was constitutionally protected activity. ECF Doc. 102 at 24-25; ECF Doc. 101-5 at 10-11. But such a determination is not necessary in this case.

elements.  Because defendants had probable cause, it is not necessary for this Court to decide whether the content of Novak's Facebook page was protected by the First Amendment.  *Reichle,* 566 U.S. at 664-665; *Novak,* 932 F.3d at 429 ("If the officers did have probable cause, . . . they are entitled to qualified immunity."); *Phillips v. Blair*, 786 F. App'x 519, 529 (6th Cir. 2019) ("Without controlling authority clearly establishing a First Amendment right to be free from a retaliatory arrest otherwise supported by probable cause, we also reverse the denial of qualified immunity on this claim."); *Marshall v. City of Farmington Hills,* 693 F. App'x 417, 426-427 (6th Cir. 2017) (finding that officers who had probable cause were entitled to qualified immunity on a retaliatory arrest claim).

At this stage, the survival of Novak's constitutional claims can be boiled down to one question: Did Officers Riley and Connor have probable cause to believe that Novak violated Ohio Rev. Code § 2909.04?  The Court agrees with Novak (ECF Doc. 102 at 15) that this is a legal question for the Court because the material facts leading up to Novak's arrest and prosecution are generally undisputed.  *See Gerics v. Trevino,* 974 F.3d 798, 806 (6th Cir. 2020). And, if there is no genuine dispute of material fact on the question of probable cause, then Novak has failed to show any violation of a clearly established constitutional right.

### a.  Prior Restraint

Novak has also asserted a First Amendment claim based on prior restraint.  (Claim 1).  "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications in advance of the time that such communications are to occur."  *Alexander v. United States,* 509 U.S. 544, 550 (1993).  In affirming this Court's denial of defendants' motion to dismiss, the Sixth Circuit questioned whether prior restraints had occurred when: 1) Detective Connor sent a letter to Facebook; and 2) Captain Riley issued a

17

press release.  *Novak*, 932 F.3d at 433.  Either of these communications could constitute a prior

restraint, but only if each qualified as an "administrative order." *Id.* at 422.

Since then, two developments lead the Court to conclude that these communications were

not administrative orders under the *Alexander* standard.  First, discovery has shown that

Detective Connor's letter to Facebook only requested that the false page be taken down.  He did

not necessarily expect Facebook to comply with his request.  Connor Depo., ECF Doc. 107-1 at

336-337.  And, Captain Riley testified that the primary purpose of the press release was to warn

the public that the page was fake and to stop the continued phone calls that the police were

receiving.  Riley Depo., ECF Doc. 105-1 at 225-227.  While the Sixth Circuit did note that

something might be considered an "administrative order" even if it "is not on its terms

binding," 932 F.3d at 433, there still must be the lurking threat of some form of action that the

official intends to enforce in the event of noncompliance.  In the instant case, any such threat no

longer existed because Novak voluntarily deleted his Facebook page.

Second, the record reflects that both communications were sent after the creation of the

Facebook page and the posting of most, if not all, of the material.  At that stage, Novak had

already spoken, so to speak; the words were out there, and therefore it is not clear that any threat

that existed in Captain Riley's press release was a prior restraint, rather than a reference to

prosecution post-publication.  Any threat that may have existed from Riley's press release could

only be a reference to prosecution post-publication.  And the Supreme Court has acknowledged

the "well-established distinction between prior restraints and subsequent criminal punishments."

*Alexander*, 509 U.S. at 548.  If the press release threatened post-facto enforcement, therefore, it

would not also qualify as a prior restraint.  Prior restraint typically exists when "a public official

has been given discretionary power to deny use *in advance of* actual expression." *Connection*

*Distributing Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n.5 (1989)) (emphasis added).  Neither Connor nor Riley had the power to deny Novak's use of Facebook; on the contrary, the request and press release only arose after Novak used the forum. As such, the prior restraint claim fails.

### 2.  Fourth Amendment Claims

Novak's Fourth Amendment claims will also fail if defendants had probable cause to arrest him for a violation of Ohio Rev. Code §2909.04.  The Fourth Amendment protects "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  Given our common-law tradition treating the home as "first among equals,"  *Florida v. Jardines*, 569 U.S. 1, 6, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013), the Supreme Court has interpreted this language generally to require a warrant for a search of a private residence.  *E.g., Georgia v. Randolph*, 547 U.S. 103, 109, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006).  That requirement, in turn, triggers another Fourth Amendment command: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Probable cause, the Supreme Court has "often" said, "is not a high bar."  *Kaley v. United States,* 571 U.S. 320, 338, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014); *Wesby*, 138 S. Ct. at 586.  Here, defendants claim that they had probable cause, and it is undisputed that they obtained warrants for Novak's arrest and the search of his house and electronic devices.  If there are no disputes of material fact as to the existence of probable cause, defendants are entitled to summary judgment on his Fourth Amendment claims as well.

### 3. Probable Cause

Novak argues that defendants did not have probable cause to arrest him, to search his property and/or his electronic devices.  Defendants charged and prosecuted Novak with a violation of Ohio Rev Code §2909.04(B), which provides that "[n]o person shall knowingly use any computer, computer system, computer network, telecommunications device, or other electronic device or system or the internet so as to disrupt, interrupt, or impair the functions of any police, fire, educational, commercial, or governmental operations."  There is no dispute that Novak used a computer and the internet to post his Facebook page.  However, he argues that Connor lacked probable cause to believe that Novak 1) "knowingly" violated the statute; and 2) actually "disrupted, interrupted, or impaired" the police operations.

"Probable cause exists 'if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'"  *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)).  The officer must examine "the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence."  *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

Here, the Rule 56 materials do not show a lack of probable cause on the "knowingly" or "disruption" elements of Ohio Rev. Code § 2909.04(B).  Officer Connor became aware that someone had posted a Facebook page that appeared almost identical to the Parma Police Department's official page.  Members of the public began calling the police department and posting on the fake Facebook page.  Thus, Connor sought legal advice from Parma's Law Director, Timothy Dobeck.  Connor and Dobeck determined that Novak had potentially violated Ohio Rev. Code § 2909.04.  Then, as further detailed below, Connor methodically discussed the

20

facts of the case with several judicial officers and sought the appropriate search warrants for his investigation. None of the judicial officers identified a lack of probable cause.

Novak does not dispute that he posted the fake Parma Police Facebook page. Rather, he contends that Connor knew that Novak had not "knowingly" "disrupted" "police operations." Novak argues that Connor knew that Novak thought his Facebook page was a satire or parody. And he argues that his Facebook page did not actually disrupt police operations.

Regarding the "knowingly" element of Ohio Rev. Code § 2909.04, intent is often difficult to prove and can be established by circumstantial evidence and inferences therefrom. *U.S. v. Goodwin,* 748 F. App'x 651, 655 (6th Cir. 2018). And in the context of probable cause, a reasonable officer is permitted to make inferences as to intent. *See U.S. v. Tagg,* 886 F.3d 579, 589 (6th Cir. 2018). Here, Connor had probable cause to believe that Novak was ***knowingly*** disrupting police business. Connor's investigation showed that Novak had deleted comments claiming that his page was a hoax. Novak Depo., ECF Doc. 90 at 131. And, when the police department attempted to warn the public about Novak's fake page, Novak copied the official warning and posted it on his page as well. Riley Depo., ECF Doc. 71-1 at 99. In other words, Novak took deliberate steps in real time to perpetuate the hoax which led to the police disruption. Officer Connor was permitted to infer that these deliberate steps evidenced the "knowingly" element of Ohio Rev. Code § 2909.04.[8]

Regarding the "disruption or interruption of police operations" element of Ohio Rev. Code § 2909.04, Novak argues that there was no real disruption or interruption of police operations. But Novak's argument is contrary to Connor's own testimony (ECF Doc.

---

[8] Novak's roommate, Kozelka, also later testified that Novak was "messing with" the public through his Facebook page. Kozelka Depo. pp. 45-51, ECF Doc. 97-1 at 15.

107-1 at 232), and is based entirely on Novak's subjective interpretation of what should be required to substantiate a "disruption" of police operations under the statute.[9] Detective Connor didn't write Ohio Rev. Code § 2909.04, and the statute doesn't specify that the disruption of police operations must be "substantial."

Novak cites several cases in which courts determined statues were overly broad when they proscribed constitutionally protected activity. *See, City of Houston, Tex. v. Hill,* 482 U.S. 451, 455 (1987); *State v. Schwing,* 42 Ohio St. 2d 295, 306 (1975); *State v. Brand,* 2 Ohio App. 3d 460, 460 (1981); *Toledo v. Thompson-Bean,* 173 Ohio App. 3d 566, 573 (2007); *City of Euclid v. Moore,* No. 75143, 1999 Ohio App.LEXIS 5900 at * (8th Dist. Dec. 9, 1999). But none of these cases held that, in the absence of any clear legal precedent and for purposes of qualified immunity, a police officer should question whether a statute is constitutional. Moreover, in addition to Connor's testimony that *he* reasonably believed that Novak had violated the statute, several other law enforcement officials reviewed the facts before charges were brought against Novak.

### a. Dobeck's Legal Advice

Although not necessarily dispositive, the fact that Connor sought legal advice from Law Director Dobeck is a factor suggesting that Connor's investigation was reasonable and that he had probable cause. After Connor was told to investigate the Facebook page, he sought legal advice from Dobeck. Connor testified that if Dobeck had advised that Novak should not be charged, he would not have charged him. ECF Doc. 107-1 at 261. Consultation with [an

---

[9] Novak's assertion is also contrary to his roommate's understanding that Novak posted the fake Facebook page to "mess with" the public, not as a parody on the police. *See* Kozelka Depo., ECF Doc. 97-1 at 15.

attorney] is a factor to be considered in evaluating whether an officer acted reasonably.[10]

*Hasalah v. City of Kirtland,* 2013 U.S. Dist. LEXIS 71042 (N.D. Ohio May 20, 2013); *see also*

*Cox v. Hainey,* 391 F.3d 25 (1st Cir. 2004) (officer was entitled to qualified immunity because he

met with the prosecutor, discussed the case and the prosecutor stated that the officer had

probable cause); *Konja v. Seitzinger,* 363 F. 3d 645, 648 (7th Cir. 2004) (awarding officer

qualified immunity and holding that the officer's consultation with prosecutor "goes far" to

establish qualified immunity); *Dixon v. Wallowa County,* 336 F.3d 1013 (9th Cir. 2003) (a

reasonable officer could have believed that his conduct was lawful based on the prosecutor's

advice); *Wadkins v. Arnold,* 214 F.3d 535, 543 (4th Cir. 2000) (police officer who consulted with

prosecutor and obtained a warrant from the magistrate judge acted reasonably and was, therefore,

entitled to qualified immunity).  The fact that Connor sought legal advice before proceeding with

his investigation lends support to the reasonableness of his investigation and arrest of Novak.

### b.  Warrants Issued by Magistrate Fink and Judge O'Donnell

After seeking advice from Law Director Dobeck, Connor appeared before Magistrate

Edward Fink to obtain an arrest warrant.  ECF Doc. 107-1 at 294.  Detective Connor told

Magistrate Fink that people were calling into the police station about Novak's Facebook page.

Magistrate Fink considered this a disruption and issued the warrant.  ECF Doc. 92-1 at 14.

---

[10] Reliance would not satisfy this standard if an objectively reasonable officer would have cause to believe that the prosecutor's advice was flawed, off point, or otherwise untrustworthy. Cf. *Groh v. Ramirez* 540 U.S. 551, 124 S. Ct. 1284, 1293-94, 157 L. Ed. 2d 1068 (2004) (holding that qualified immunity could not shield an officer from liability for actions predicated upon an obviously deficient arrest warrant).  Law enforcement officers have an independent duty to exercise their professional judgment and can be brought to book for objectively unreasonable mistakes regardless of whether another government official (say, a prosecutor or a magistrate) happens to compound the error. *See Malley v. Briggs,* 475 U.S. 335, 340-41, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).  However, in this case, Connor did not make an objectively unreasonable mistake.

Normally, "[p]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir. 1989).  However, "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id.*  A plaintiff, thus, may challenge an officer's qualified immunity defense in a civil rights case by showing that (1) the officer's warrant affidavit contained a false statement or omission that was made either deliberately or with reckless disregard for the truth; and (2) the false statement or omission was material to the finding of probable cause.  *See Vakilian v. Shaw,* 335 F.3d 509, 517 (6th Cir. 2003); *Sykes v. Anderson,* 625 F.3d 294, 305 (6th Cir. 2010).

Here, Novak has not shown that Detective Connor made any false statements to Magistrate Fink.  ECF Doc. 92-1 at 14.  Novak's contention that Detective Connor lied to Magistrate Fink to secure the warrant (ECF Doc. 102 at 20) is not supported by Magistrate Fink's testimony.  ECF Doc. 92-1 at 14.  Nor has Novak shown that Connor omitted material information when seeking the warrant.  Novak argues that Detective Connor should have told Magistrate Fink that Novak's conduct was speech and that his Facebook page was a parody or joke.  ECF Doc. 102 at 21.  But that was not how Detective Connor saw it, and he was not misleading Magistrate Fink by failing to characterize it that way.

Similarly, Connor obtained search warrants from Judge Kenneth Spanagel and Judge Deanna O'Donnell.  Connor's affidavit for search warrant relayed the general facts of his investigation (ECF Doc. 108-1 at 183-187), including that there had been "numerous" calls and

24

complaints to the police department.  ECF Doc. 108-1 at 25.  Judge O'Donnell testified that "numerous" to her meant two, three, four or above.  ECF Doc. 108-1 at 28.  Thus, even if Connor's affidavit had stated the exact amount of calls – eleven,[11] Judge O'Donnell would have issued the search warrants.  Judge O'Donnell also testified that she thought people would have believed that Novak's Facebook page was real.  ECF Doc. 108-1 at 19.  Like the warrant issued by Magistrate Fink, the warrants issued by Judges Spanagel and O'Donnell lend support to the reasonableness of Connor's investigation and arrest of Novak.  Novak has not shown that Connor obtained the search warrant from Judges Spanagel and O'Donnell by making material misrepresentations or omissions.

### c.  Decision to Prosecute and Grand Jury Indictment

Novak's failure to show that Connor misled others also impacts his malicious prosecution claim.  As police officers, Riley and Connor lacked the authority to prosecute, but Novak could still proceed with his malicious prosecution claim against them if he could show that they influenced or participated in the decision to prosecute.  *Sykes v. Anderson*, 625 F.3d 294, 311 (6th Cir. 2010).  The term "participated" is construed "within the context of tort causation principles."  *Webb v. United States,* 789 F.3d 647, 659 (6th Cir. 2015), (quoting *Sykes*, 625 F.3d at 308 n.5).  Prosecution must have been a reasonably foreseeable consequence of the defendants' conduct, and the conduct must have actually influenced the decision to prosecute.  *See Sykes*, 625 F.3d at 314-15.  An indictment or the filing of charges by a prosecutor, if independently supported and insulated from the officers' influence, can break the chain of causation, unless the officer "could reasonably foresee that his misconduct would contribute to

---

[11] Novak argues that the number of calls was insignificant (as a matter of law) and did not disrupt police operations – but there were more than two, three or four calls – the number Judge O'Donnell thought could constitute "numerous."  Connor testified to the grand jury that there had been eleven calls.  ECF Doc. 102-7 at 4.

an independent decision that results in a deprivation of liberty." *Id.* at 316 (citations and internal quotation marks omitted). The officer must have participated "in a way that aids in the decision, as opposed to passively or neutrally participating," *Webb*, 789 F.3d at 660 (quoting *Sykes*, 625 F.3d at 308 n.5), which requirement is satisfied by showing some "element of blameworthiness or culpability in the participation," *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015)

As with his other claims, in order to defeat the defense of qualified immunity on his malicious prosecution claims, Novak must show a lack of probable cause. Specifically, he must point to a genuine dispute of material fact showing Riley and Connor acted in a way that would permit an inference of blameworthiness or culpability – "less than malice" but more than "negligence or innocent mistake"—and that their "deliberate or reckless falsehoods result[ed] in [Novak's] prosecution **without probable cause**." *Johnson*, 790 F.3d at 655. (emphasis added).

Regarding the decision to prosecute, Cuyahoga County Prosecutor McGinty testified that he made the decision independently and, like the police officers, he did not consider Novak's Facebook page to be protected speech. ECF Doc. 93-1 at 5. He also stated that he independently looked at the police report and screenshots of Novak's Facebook page before deciding to prosecute. He testified that Connor told him that the police had received "multiple calls" about the Facebook page. ECF Doc. 93-1 at 14. McGinty's decision to prosecute was an independent one. And the facts supporting his decision were accurate. Novak has failed to show that Riley and Connor misled Prosecutor McGinty or that they were somehow culpable in influencing him to prosecute Novak. The fact that McGinty made an independent decision to seek an indictment insulates the officers from a malicious prosecution claim and also lends support to a finding that the officers had probable cause to arrest Novak in the first place.

26

The prosecutor took the matter to a grand jury.  As a general rule, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Webb v. United States,* 789 F.3d at 659, citing *Barnes v. Wright,* 449 F.3d 709, 716 (6th Cir. 2006).  An exception to this general rule applies when defendants knowingly or recklessly present false testimony to the grand jury to obtain the indictment. *Martin v. Maurer,* 581 F. App'x 509, 511 (6th Cir. 2014); *Robertson v. Lucas,* 753 F.3d 606, 616 (6th Cir. 2014).

Novak argues that Connor "crossed the line from fact witness to advocate," when he told the grand jury that the police department, dispatch and city hall were "getting innundated" with calls from residents who "honest to God" believe police had posted this page.  ECF Doc. 102 at 23; ECF Doc. 102-7.  But Connor later told the grand jury that the dispatch center had received 11 phone calls.  ECF Doc. 102-7 at 4.  So, facts were presented to the jury by which they could decide whether this was a disruption of police operations.  Novak also contends that Connor crossed the line when he told the grand jury that Novak's Facebook page was not a parody.  True, Connor expressed his opinion that Novak's Facebook page was not a parody, but he also referred to this as an "argument."  The grand jury was free to reject Connor's "argument" about Novak's Facebook page.  ECF Doc. 102-7 at 7.  Novak has not shown that Connor lied or misled the grand jury.  The grand jury indictment lends further support that defendants had probable cause to investigate and arrest Novak for a violation of Ohio Rev. Code § 2909.04.

Finally, the trial judge denied a motion to dismiss on First Amendment grounds and a motion for acquittal following the government's case.  ECF Doc. 6-1 at 256.  In denying the motion for acquittal, the trial judge ruled that there was evidence from which a reasonable jury could conclude that Novak was guilty of knowingly interrupting the operations of the police

27

department.  The standard of conviction – proof beyond a reasonable doubt – is far more stringent than mere probable cause.  Thus, the trial court's determination that there was sufficient evidence to support Novak's conviction lends support to a finding that the officers had probable cause to investigate and arrest Novak.

Novak has failed to show a lack of probable cause for his arrest, search, seizure and prosecution.  Defendant Connor sought legal advice before proceeding with his investigation against Novak.  He properly obtained an arrest warrant; there are no facts showing he misled Magistrate Fink.  He obtained valid search warrants; there are no facts showing he misled Judges Spanagel or O'Donnell.  Prosecutor McGinty made an independent decision to prosecute; there are no facts showing Connor misled Prosecutor McGinty.  And, a grand jury decided to indict Novak; there are no facts showing that Connor falsely testified to the grand jury.  In short, Novak has failed to show that Officers Riley and Connor lacked probable cause for his investigation and arrest.  There are no genuine disputes of material fact on the issue of probable cause.  Novak has failed to show any violation of a clearly established constitutional right.  For this reason, Riley and Connor are entitled to summary judgment on Novak's pending First Amendment and Fourth Amendment claims, Claims 1, 3, 6, 7, 8, 9, and 11, and his malicious prosecution claim, Claim 27.

### C. *Monell* Liability against Parma

Section 1983 creates a federal cause of action against state or local officials who, while acting under the color of state law, deprive a person of a federal right.  42 U.S.C. § 1983.  To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom.  *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).  A municipality "may not be sued

under § 1983 for an injury inflicted solely by its employees or agents." *Id.*  Section 1983 liability

does not attach to a municipality based on the actions of its employee tortfeasors under the

doctrine of respondeat superior; instead, such liability may only be imposed on the basis of the

municipality's own custom or policy.  *Monell*, 436 U.S. at 691.  "Under § 1983, local

governments are responsible only for their own illegal acts" and may not be held vicariously

liable for the actions of their employees.  *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir.

2014) (quoting *Connick v. Thompson,* 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417

(2011)).

　　　　To bring a claim under § 1983, a plaintiff must "identify a right secured by the United

States Constitution and the deprivation of that right by a person acting under color of state law."

 *Watkins v. City of Battle Creek,* 273 F.3d 682, 685 (6th Cir. 2001) (quoting *Russo v. City of*

*Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992)).  Here, Novak has failed to identify the

violation of any constitutional right because, as already stated, the Supreme Court has never

recognized a First Amendment right to be free from a retaliatory arrest that is supported by

probable cause.  *Reichle,* 566 U.S. at 664-665.  And because probable cause existed, Novak has

also failed to show a Fourth Amendment violation.  Because Novak has failed to show an

underlying constitutional violation, Parma is entitled to summary judgment on Novak's *Monell*

claims.

　　　　Moreover, Novak's *Monell* claims would fail even if he had shown an underlying

violation of his constitutional rights.  There are at least four avenues a plaintiff may take to prove

the existence of a municipality's illegal policy or custom, but all of them require an underlying

constitutional violation.  The plaintiff can look to (1) the municipality's legislative enactments or

official agency policies; (2) actions taken by officials with final decision-making authority; (3) a

policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.  *Id.*; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996).  Here, Novak has asserted claims for *Monell* liability based on an authorized action and on a failure to train.  (See Claims 12, 13, and 14).  Claims 12 and 13 are based on Connor and Dobeck's decision to investigate and prosecute Novak.  Claim 14 alleges that Parma failed to adequately train its employees on clearly established First Amendment rights.

Parma claims that it did not have an express policy that violated Novak's rights and that Timothy Dobeck was not a policymaker for the City of Parma.  Parma acknowledges that Dobeck reviewed this incident for possible criminal conduct, but contends he only gave advice and did not create policy for Parma.  Parma also argues that *Pembaur v. City of Cincinnati,* is distinguishable.  ECF Doc. 100-5 at 23.

Novak first argues that *Connor* had policymaking authority over his investigation.  He argues that Connor made final decisions and had "unfettered discretion" over his investigation.  ECF Doc. 124 at 22-24.  Citing *Pembaur,* Novak also argues that Dobeck had policymaking authority.  Finally, he argues that Parma failed to properly train its officers on First Amendment rights.

### 1.  Authorized Action or Policymaker Liability under *Monell*

In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (March 25, 1986), the Supreme Court held that a county defendant was subject to liability under *Monell* because its prosecutor's instruction to the deputy sheriff to make a warrantless entrance into a third party's property to seize witnesses constituted a decision by an official authorized to

30

establish county policy, even though the actions were only taken once.  *Id.* at syllabus.  However, the Court stated that it might have found for the county defendant if the prosecutor had only rendered "legal advice."  *Id.* at 484-485.

Parma argues that Dobeck only gave legal advice to Connor in this case; that he was not making policy; and that it is not liable under *Monell* for Dobeck's advice.  Conversely, Novak argues that both Connor and Dobeck were policymakers with "unfettered discretion" as to whether he would be charged under Ohio Rev. Code § 2909.04.  Here, the undisputed facts support Parma's argument.  During their depositions, Connor and Dobeck were careful to describe their interaction with one another as Connor "seeking advice."  *See e.g.,* Dobeck Depo., ECF Doc. 96-1 at 4-5; Connor Depo., ECF Doc. 107-1 at 167-170.  Novak hasn't cited any evidence that Dobeck "ordered" Connor to charge Novak with a crime.[12]  In fact, Law Director Dobeck testified that he did not authorize the charge against Novak; he only gave legal advice and that Detective Connor sought search warrants from Judges O'Donnell, Spanagel and Magistrate Fink.  Dobeck Depo., ECF Doc. 96-1 at 13.

The fact that Connor sought warrants from several different officials *after* he discussed the case with Dobeck undermines Novak's policymaking argument.  In *Pembaur,* the prosecutor ordered the police officers to enter a third-party's property without a warrant to seize witnesses.  Shortly after the prosecutor gave these instructions, the police officers executed them.  *Pembaur,* 475 U.S. at 484-485.  There was no impartial subsequent review.  But here, after Connor discussed the facts with Dobeck, he applied to Magistrate Fink for a warrant.  Magistrate Fink

---

[12] Connor testified that he would not have charged Novak if Dobeck had advised against it.  However, he did not testify that Dobeck ordered him to proceed with the investigation.  Here, that distinction is significant and distinguishes this case from *Pembaur.*

did not perceive a violation of Novak's constitutional rights and issued a warrant for his arrest. Fink Depo., ECF Doc. 92-1 at 82-84.

This is not a case in which Parma is only "disingenuously arguing" that Dobeck rendered legal advice rather than a final decision for Parma.  After Connor sought legal advice from Dobeck, he sought warrants from several judicial officers and testified before a grand jury, which ultimately indicted Novak.  Dobeck did not make policy for Parma by advising Connor.  And, his advice – that Novak may have violated Ohio Rev. Code § 2909.04 and that Connor should obtain warrants – was not a violation of any constitutional right.

Novak cites several cases arguing that Monell liability applies when investigating officers have "unfettered discretion" and cause right violations.  *Monistere v. City of Memphis,* 115 F. App'x 845 (6th Cir. 2004).  *Rush v. City of Mansfield,* 771 F. Supp.2d 827 (N.D. Ohio Feb. 11, 2011); *Cline v. City of Mansfield,* 745 F. Supp.2d 773 (N.D. Ohio Sep. 30, 2010).  But Novak's cases are inapposite; they involve officer conduct that was not reviewed by an impartial judicial officer and was not supported by a valid warrant.  Moreover, Connor and Dobeck did not have "unfettered discretion."  As already stated, their decision to continue with the investigation against Novak was reviewed by several other judicial officers and a grand jury before charges were brought.

The instant case is distinguishable from *Pembaur.*  Parma did not assign unfettered discretion to Connor and Dobeck.  Their decision to move forward with an investigation against Novak was reviewed by several impartial judicial officers.  Connor obtained an arrest warrant and search warrants.  And it was a grand jury who decided to indict Novak.  These facts are not in dispute.  Because there was no violation of Novak's constitutional rights and because Connor and Dobeck did not make any policy on behalf of Parma, the City of Parma is entitled to

summary judgment on Novak's *Monell* – policymaker theory of liability asserted in Claims 12 and 13 of his amended complaint.  ECF Doc. 6 at 50-51.

### 2.   Failure to Train

Novak has also asserted a claim for *Monell* liability for Parma's failure to train its officers on First Amendment rights.[13]   (Claim 14 – ECF Doc. 6 at 52).   Inadequate training can be the basis for a § 1983 municipal liability claim when it "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Comm'rs,* 870 F.3d 471, 487 (6th Cir. 2017).  But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)).  To succeed on an inadequate training claim, a plaintiff must prove: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury."  *Roell,* 870 F.3d at 487 (quoting *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016)).

Here, Novak argues that Parma failed to adequately train its officers on potential First Amendment violations.  ECF Doc. 124 at 29.  But officers' tasks do not so regularly involve First Amendment issues to mandate training on this subject.  And because the recognition of First Amendment issues is based on common law, it is not stagnant.  Thus, Parma would have been required to regularly train its officers on updates to First Amendment law.  And even if it had, First Amendment training may not have precluded an investigation into Novak's Facebook

---

[13] As with his policymaker claims, this claim fails because Novak has not shown an underlying constitutional violation.

page.  Several lawyers (Dobeck, McGinty, Spanagel and O'Donnell) reviewed the facts of this case and failed to identify any First Amendment violation.  If their law degrees inadequately trained them to recognize a potential First Amendment violation, it is very unlikely that Parma could have provided officer training that would have halted this investigation.

Officer Connor testified that he was trained to seek advice from the Law Department for things that he didn't know in the "legal sense."  ECF Doc. 107-1 at 261.  Given the fluidity and complexity of First Amendment corpus juris, this was a better policy than attempting to train law enforcement officers on potential First Amendment violations.  In addition to failing to show an underlying constitutional violation, Novak has failed to show that Parma's training program was inadequate to its officers tasks; that this inadequacy was the result of Parma's deliberate indifference; and that the inadequacy was closely related to or actually caused his injury.  Because there are no genuine disputes of material fact on these elements, Parma is entitled to summary judgment on Novak's claim for *Monell* liability for failure to train (Claim 14).

### D.  Conspiracy

Novak has also asserted a conspiracy claim against Riley, Connor and John Doe.  (Claim 15, ECF Doc. 6 at 54).  Riley and Connor point out that Novak has not pursued a claim against the "John Doe" defendant and that the Sixth Circuit has held that "members of the same legal entity cannot conspire with one another if their acts were within the scope of their employment." *See Jackson v. City of Cleveland,* 925 F.3d 793, 818 (6th Cir. 2019).  Novak has not opposed Riley and Connor's motion for summary judgment on the conspiracy claim.  The Sixth Circuit cited *Jackson,* and permitted Novak's conspiracy claim to continue only because he had named a John Doe defendant who could have been working for a different legal entity.  *Novak*, 932 F.3d at 436-437.  But Novak has never amended his pleadings or even argued that John Doe worked

for a different entity.  Because Riley and Connor both work for the Parma Police Department and

Novak has not pursued any claim against the John Doe defendant, the intracorporate conspiracy

doctrine applies and Riley and Connor are entitled to summary judgment on Novak's conspiracy

claim.  *Id.*

### E.  Federal Privacy Protection Act

Novak has asserted a Federal Privacy Protection Act against all three defendants.  The

Federal Privacy Protection Act makes it unlawful for a government officer to "search for or seize

any work product materials possessed by a person reasonably believed to have a purpose to

disseminate" information to the public.  42 U.S.C. § 2000aa(a)(1).  But the statute has a "suspect

exception."  *S.H.A.R.K. v. Metro Parks Serving Summit Cty.,* 499 F.3d 553, 567 (6th Cir. 2007).

The Act does not apply if the officers have "probable cause to believe that the person possessing

such materials has committed or is committing the criminal offense to which the materials

relate."  42 U.S.C. § 2000aa(a)(1); see *S.H.A.R.K.,* 499 F.3d at 567.

Like his other claims, Novak's Privacy Protection Act claim depends on whether Riley

and Connor had probable cause to search and seize the contents of his apartment.  *See Novak,*

932 F.3d at 435-436.  As explained above, before searching and seizing any of Novak's property,

Connor obtained a valid search warrant, and there are no facts suggesting that he made false

statements or omissions to obtain it.  Because defendants' search of Novak's property was

pursuant to a valid search warrant supported by probable cause, defendants are entitled to

summary judgment on Novak's Federal Privacy Protection Act claim (Claim 16).

### F.  Supervisor Liability

Claim 18b of Novak's amended complaint is a supervisor liability claim against

Defendant Riley.  ECF Doc. 6 at 57.  Respondeat superior is not a proper basis for liability under

§ 1983.  *McQueen v. Beecher Cmty. Sch.,* 433 F.3d 460, 470 (6th Cir. 2006), citing *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845, 105 S. Ct. 156, 83 L. Ed. 2d 93 (1984).  Nor can the liability of supervisors be based solely on the right to control employees, *Bellamy,* 729 F.2d at 421, or "simple awareness of employees' misconduct."  *Leary,* 349 F.3d at 903; *Bellamy,* 729 F.2d at 421.  Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir. 1982)).  "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays,* 668 F.2d at 874).

As already explained, Officers Riley and Connor are immune from liability for the charges that were brought against Novak.  They had probable cause to believe that a violation of Ohio Rev. Code § 2909.04 had occurred.  Even if the content of Novak's Facebook page was protected by the First Amendment, Novak did not have a First Amendment right to be free from a retaliatory arrest that was supported by probable cause.  There was no constitutional violation. Defendant Riley is immune from liability and is entitled to summary judgment on Novak's supervisor liability claim.

## G.  State Law Claims

Novak has asserted several claims based on various state laws and a tortious interference with contract claim against Defendants Riley and Connor (Claims 19, 20, 21, 22, 23, 24, 25, 26, and 28).  The parties seem to agree that Riley and Connor are entitled to state law immunity on

these claims unless they acted with "malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code § 2744.03(A)(6)(b).  Novak's state law claims survived defendants' motion to dismiss because he alleged that Connor misled Magistrate Fink and the grand jury to advance his investigation and prosecution of Novak.  But the Rule 56 materials have not evidenced any misleading, malicious purpose or bad faith on Detective Connor's part.  As already stated, he was not obligated to explain to Magistrate Fink or the grand jury that Novak viewed his Facebook page as a parody protected by the First Amendment.  Connor didn't see it that way, and he had probable cause to believe that Novak had violated Ohio Rev. Code § 2909.04.  Because Novak has not shown that there are any genuine disputes of material fact on the question of whether Connor and/or Riley acted with malicious purpose, in bad faith, or in a wanton or reckless manner, they are entitled to immunity and summary judgment on his state law claims and his claim for tortious interference with contract.

## VII.    Conclusion

It has been almost exactly 5 years since Novak posted his Facebook page that led to the events in this case.  While the doctrine of qualified immunity has generated a great deal of recent controversy, that has mainly involved the use of force by law enforcement officers, particularly the use of deadly force.

This case at its core revolves around the decision whether or not to prosecute.  One can legitimately question whether 11 calls to the police office from members of the public confused by Novak's Facebook page was enough of an interference to warrant the expenditure of resources to investigate and prosecute Novak.  But that was a judgment call for the police officers to make.  So long as they had probable cause to believe that Novak had violated the law, which they did, the doctrine of qualified immunity justifiably shields them from personal

liability.  The police officers sought legal advice from the Parma Law Director, and then sought and obtained warrants at every step of the way.   Each judge who approved a warrant made a determination that there was probable cause.   And ultimately the Cuyahoga County Prosecutor made an independent review of the evidence and concluded it was sufficient to prosecute, and he sought and obtained a grand jury indictment.   Under the facts of this case and Supreme Court and 6th Circuit case law, the officers are entitled to qualified immunity.

Because there are no genuine disputes of material fact on any of Novak's remaining claims, the Court GRANTS summary judgment in favor of defendants (ECF Doc. 100 and ECF Doc. 101) and DENIES summary judgment in favor of plaintiff.  ECF Doc. 102.  The Court does not reach the issue of punitive damages because defendants are entitled to summary judgment on all of the remaining claims.

Dated: February 24, 2021                    *s/Dan Aaron Polster*
                                            United States District Judge