RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0090p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ANTHONY NOVAK,

     *Plaintiff-Appellant*,

    *v.*

CITY OF PARMA, OHIO; KEVIN RILEY and THOMAS CONNOR, individually and in their official capacities as employees of the City of Parma, Ohio,

     *Defendants-Appellees*.

No. 21-3290

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:17-cv-02148—Dan A. Polster, District Judge.

Argued: April 8, 2022

Decided and Filed: April 29, 2022

Before: SUTTON, Chief Judge; THAPAR and READLER, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Donald Screen, THE CHANDRA LAW FIRM LLC, Cleveland, Ohio, for Appellant. D. John Travis, GALLAGHER SHARP, LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Donald Screen, Subodh Chandra, THE CHANDRA LAW FIRM LLC, Cleveland, Ohio, for Appellant. D. John Travis, Richard C.O. Rezie, Zoran Balac, GALLAGHER SHARP, LLP, Cleveland, Ohio, for Appellees. David J. Carey, AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, Columbus, Ohio, Freda J. Levenson, AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, Cleveland, Ohio, Ronald London, FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, Washington, D.C., Larry H. James, CRABBE, BROWN & JAMES, LLP, Columbus, Ohio, Alejandro V. Cortes, R. Todd Hunt, WALTER | HAVERFIELD LLP, Cleveland, Ohio, Philip K. Hartmann, FROST BROWN TODD LLC, Columbus, Ohio for Amici Curiae.

**OPINION**

THAPAR, Circuit Judge. Anthony Novak thought it would be funny to create a Facebook page that looked like the Parma Police Department's. The Department was not amused. In fact, officers arrested Novak and prosecutors charged him with a state crime. Novak was acquitted at trial, and he now argues his constitutional rights were violated in the ordeal. But because the officers reasonably believed they were acting within the law, Novak can't recover.

I.

According to Anthony Novak, he created "The City of Parma Police Department" Facebook account—a knockoff of the Department's real page—to exercise his "fundamental American right" of "[m]ocking our government officials." R. 6, Pg. ID 1238. And mock them he did. In less than a day, he published half-a-dozen posts "advertising" the Department's efforts, including free abortions in a police van and a "Pedophile Reform event" featuring a "No means no" learning station. The page spread around Facebook. Some readers praised its comedy. Others criticized the page or called out that it was fake. (He deleted their comments.) And still others (nearly a dozen, in total) felt it necessary to call the police station. A few asked if the page was real. The rest expressed confusion or alerted the police to the fake page.

Once the Department heard about the page, it sprang into action. First, officers verified that the official page hadn't been hacked. Then, they posted a notice on the Department's actual page, confirming that it was the official account and warning that the fake page was "being investigated." R. 123-9, Pg. ID 24596. Novak then copied that post onto his knockoff page— allegedly "[t]o deepen his satire." R. 6, Pg. ID 1259.

Then-Lieutenant Kevin Riley tasked Detective Thomas Connor with figuring out who ran the knockoff page. Connor sent a letter to Facebook, asking the company to preserve all records related to the account and take down the page. Riley issued a press release and appeared on the

nightly news, announcing an investigation and warning the public about the fake page. Novak—worried he'd get in trouble for the page—took it down.

Yet the officers continued their investigation. Connor eventually got a search warrant for Facebook, and he discovered that Novak was the page's author. Unsure what sort of case they had, Riley and Connor sought advice from Parma's Law Director, Timothy Dobeck. Dobeck concluded they had probable cause and could seek two more warrants: an arrest warrant from Magistrate Judge Edward Fink and a search warrant from Judge Deanna O'Donnell. The grounds? An Ohio law that makes it illegal to use a computer to disrupt or impair police functions. Ohio Rev. Code § 2909.04(B). Both judges found there was probable cause and issued the warrants.

With warrants in hand, the officers arrested Novak, searched his apartment, and seized his phone and laptop. He spent four days in jail before he made bond. Then prosecutors presented the case to a grand jury, which indicted him for disrupting police functions. But a jury later acquitted him. And after his acquittal, Novak brought dozens of claims against Riley, Connor, and the City of Parma. In a prior appeal, we granted qualified immunity to the officers on some claims. *Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019). Now, Novak appeals the district court's grant of summary judgment to the defendants on the remaining claims.

II.

We review the district court's grant of summary judgment de novo. *Yates v. City of Cleveland*, 941 F.2d 444, 446 (6th Cir. 1991). Since Novak brings numerous interrelated claims, we review them in four groups. We begin with his claims against the officers under 42 U.S.C. § 1983. Second, we tackle his municipal-liability claims against the City of Parma. Third, we consider Novak's state-law claims. And last, two miscellaneous claims.

A. Section 1983 Officer-Liability Claims

Novak brings several section 1983 claims against Lieutenant Riley and Detective Connor. He alleges First Amendment retaliation, Fourth Amendment violations, and First Amendment prior restraint. We address each in turn.

1.  Retaliation

Novak's first set of claims alleges that the police officers retaliated against him in violation of the First Amendment. For their part, the officers contend they are entitled to qualified immunity.

Qualified immunity protects state officers against section 1983 claims unless (1) "they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time" of the offense. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (cleaned up). And the burden lies with the plaintiff to show each prong. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam); *Cunningham v. Shelby County*, 994 F.3d 761, 764–65 (6th Cir. 2021).

To meet his burden, Novak argues that Riley and Connor violated his clearly established right to be free from retaliatory arrest. He suggests the arrest was retaliatory because the officers based it on his Facebook page—which he argues is parody protected under the First Amendment. But there's no recognized right to be free from a retaliatory arrest that is supported by probable cause. *See Reichle v. Howards*, 566 U.S. 658, 663 (2012). So to prevail on his claim, Novak must show it was clearly established that the officers lacked probable cause to arrest him. Because he hasn't done so, the officers are entitled to qualified immunity.

Start with the basics. For probable cause to exist, "the facts and circumstances known to the officer" must be sufficient to lead a "prudent man" to believe an offense has been committed. *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (citation omitted). So here, we look to whether a reasonable officer would believe each element of Ohio's disruption statute was met. Specifically, that Novak (1) used the computer or Internet (2) to "disrupt" or "interrupt" police operations and (3) did so knowingly. *See* Ohio Rev. Code § 2909.04(B).

No one contests that Novak used a computer and the Internet to create his knockoff page. And the officers believed that Novak's page had "disrupted" their operations. They knew the call center had received multiple calls about the page, and the statute imposes no lower bound on how much disruption is required. So the officers could reasonably believe that the calls constituted a disruption. As to the knowledge element, the officers were permitted to rely on

inferences. *See United States v. Tagg*, 886 F.3d 579, 587 (6th Cir. 2018). Here, the officers inferred that Novak knew he was disrupting operations from his decisions to repost the Department's warning post on his own page and to delete comments that explained the page was fake.

But there's a catch: "[P]rotected speech cannot serve as the basis" for probable cause. *Leonard v. Robinson*, 477 F.3d 347, 358 (6th Cir. 2007) (citing *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997)). While protected speech can be evidence that a speaker committed a separate crime, the First Amendment bars its use as the sole basis for probable cause. *See Reichle*, 566 U.S. at 668; *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 1724 (2019); *Novak*, 932 F.3d at 431–32.

Take an example: Protest letters about the draft can support probable cause that the protester didn't intend to register, in violation of draft laws. *Wayte v. United States*, 470 U.S. 598, 612–13 (1985). There, the protected speech—the protest letters—is only *evidence* that the protester is engaging in unprotected conduct that itself constitutes a crime (refusing to register for the draft). The protest letters are not themselves the criminal conduct.

Novak argues that the officers' probable-cause determination is based solely on protected speech. Appellant's Br. 45; *see Novak*, 932 F.3d at 431 ("The sole basis for probable cause to arrest Novak was his speech."). Whether Novak's satirical posts were protected parody is a question of fact. *Novak*, 932 F.3d at 428. But Novak didn't just post fake event advertisements mocking the police department. He also modeled his page after the Department's, using the same profile picture. He deleted comments that let on his page wasn't the official one. And when the Department tried to clarify that Novak's page was imitating its own, he copied the official page's clarification post word for word.[1]

---

[1]We recognize that our prior opinion in this case suggested that Novak's speech was the only source of probable cause for the officers. *See Novak*, 932 F.3d at 431. But we now review the question at summary judgment, where our review is no longer limited to Novak's complaint. And though Novak's Facebook activity and its consequences form the sole basis for probable cause (since he didn't do anything else, like hack into the Department's page), it's possible that not all of his Facebook activity was protected speech. While it's reasonable for Novak to argue that deleting comments and copying the Department's clarification post were speech—specifically, efforts to "deepen his satire," R. 6, Pg. ID 1259—it was similarly reasonable for the officers to view those activities as unprotected conduct.

Whether these actions—deleting comments that made clear the page was fake and reposting the Department's warning message—are protected speech is a difficult question. After all, impersonating the police is not protected speech. *See United States v. Alvarez*, 567 U.S. 709, 721 (2012); *see also id.* at 735 (Breyer, J., concurring); *id.* at 748 (Alito, J., dissenting); *United States v. Chappell*, 691 F.3d 388, 393–94 (4th Cir. 2012). And for good reason—one can easily imagine the mayhem that a scam IRS or State Department website could cause.[2]

But while probable cause here may be difficult, qualified immunity is not. That's because qualified immunity protects officers who "reasonably pick[] one side or the other" in a debate where judges could "reasonably disagree." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 443 (6th Cir. 2016). That's just what the officers did—they reasonably found probable cause in an unsettled case judges can debate. Indeed, Novak has not identified a case that clearly establishes deleting comments or copying the official warning is protected speech. So even with *Leonard*'s protected-speech rule on the books, the officers could reasonably believe that some of Novak's Facebook activity was not parody, not protected, and fair grounds for probable cause.

What's more, the officers had good reason to believe they had probable cause. Both the City's Law Director and the judges who issued the warrants agreed with them. Reassurance from no fewer than three other officials further supports finding that the officers "reasonably," even if "mistakenly," concluded that probable cause existed. *Wesby*, 138 S. Ct. at 591 (cleaned up). That's enough to shield Riley and Connor from liability.

Thus, the officers are entitled to qualified immunity on Novak's retaliation claims.

2. Fourth Amendment

The same analysis guides our consideration of Novak's Fourth Amendment claims.

*Search, Seizure, and Arrest.* Novak argues that the officers lacked probable cause for his arrest, the search of his apartment, and the seizure of his phone and laptop. Yet our precedent

---

[2]Indeed, even if a savvy scammer interspersed his fake website with parody, the criminal law would prevail. Someone purporting to represent the State Department could end up on the hook for impersonating a government agency, if the fake site was a misleading copycat of the real one. And a hacker who replaced the IRS homepage with the tagline "No taxes due this year" could still be convicted based on his conduct—hacking into a government website.

offers a "complete defense" against these claims when officers relied on a magistrate judge's warrant. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (arrest); *see Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020) (search and seizure). And here, the officers obtained warrants from Magistrate Judge Fink and Judge O'Donnell before committing these alleged violations.

But this defense has two exceptions. The first covers cases when an officer provides false information to obtain a warrant. *Sykes*, 625 F.3d at 305. To establish this defense, Novak must show that (1) the officers knowingly or recklessly made false statements or significant omissions; and (2) those "statements or omissions were material, or necessary, to the finding of probable cause." *Id.* (cleaned up).

Novak says that in seeking an arrest warrant from Magistrate Judge Fink, Connor offered false information (that people called thinking the page was real) and left out important context (that Novak's only act was speech, and that the page was a parody or joke). He argues that this negates the officers' warrant defense.[3]

Yet Novak doesn't show that Connor actually provided any false information or misrepresented the nature of the calls. He complains that Connor was inconsistent: Connor told Magistrate Judge Fink that "[p]eople believed [Novak's page] was real," yet later admitted in his deposition that none of the callers in fact thought that. R. 107-1, Pg. ID 19128–32. So according to Novak, Connor misled the magistrate judge. But the call transcripts reveal that some of the callers thought the page might be real. Perhaps Connor's statement could be considered an exaggeration, but not an outright falsehood.

As to Connor's omissions about the nature of Novak's page, it's true that Connor called the page a "fake" Facebook account rather than a "joke" or "parody" account. And he likewise did not specify that the "posts" he complained of in his warrant affidavits were speech.

But neither of these claimed falsities was material to Magistrate Judge Fink's probable-cause determination. Indeed, Magistrate Judge Fink remembered that people called because they were confused, not because they thought the page was real. And he noted that it was the *fact* the

---

[3]Because Judge O'Donnell relied on Magistrate Judge Fink's prior probable-cause determination to issue the search warrant, Novak argues the same false statements and omissions tainted this second warrant as well.

calls occurred at all—rather than their content—that grounded his disruption analysis. Further, Connor's portrayals of Novak's Facebook page as "fake" rather than "parody" and "posts" rather than "speech" were just that—portrayals. It wasn't Connor's job to supply the law, it was his responsibility to supply the facts. And as Magistrate Judge Fink explained, he would have made the same decision even if he had read the entire Facebook page himself. So Novak can't show that these statements were material to the magistrate judge's probable-cause determination. This exception to the warrant defense does not apply.

Nor does the second exception. That one applies if "the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). But as discussed above, the question of probable cause is a close one. So even if the warrants were not supported by probable cause, reliance on them was far from unreasonable. Thus, the officers are entitled to a "complete defense" on these claims. *Sykes*, 625 F.3d at 305.

*Malicious Prosecution.* Novak also alleges malicious prosecution under section 1983. To prevail, Novak must first show that the officers participated in or influenced the decision to criminally prosecute him. *Id.* at 308. And because we construe participation in light of traditional "tort causation principles," the officers must have done more than passively cooperate. *Id.* at 308 n.5. Instead, Novak must show that the officers aided in the decision to prosecute. *Id.*

They did not. A prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes. *Id.* at 316. The only exception is when an officer could "reasonably foresee that his misconduct"—read, false statements—would result in an independent decision to prosecute the plaintiff. *Id.* (citation omitted). Here, the prosecutor independently decided to charge Novak. He reviewed the content of Novak's Facebook page along with the police report, heard from Connor that the police had received a handful of calls about the page, and determined that the page was not protected speech. And Novak does not argue on appeal that the police report included any false statements. Nor does he contend that the prosecutor relied on false statements from Connor in deciding to prosecute him. So there

was no misconduct at play here to maintain the causal chain through the prosecutor's independent decision to bring a case against Novak.[4]

A plaintiff can also show that an officer "participated" by alleging that an officer deliberately or recklessly gave false testimony at trial. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). Novak says that happened here—he alleges that Connor lied to the jurors by telling them Novak's Facebook page interrupted his work on another case. Specifically, he told them he had to postpone a DNA swab and missed a pretrial conference.

But Novak does not support this allegation. Instead, he merely points out that the DNA swab's and pretrial conference's original dates aren't marked in Connor's log, and asserts that they were scheduled for a different day—thus implying that Connor lied that he had other obligations the day he worked on Novak's case. Not quite a smoking gun. And more importantly, not enough to support anything beyond "negligence or innocent mistake," even assuming Connor got the dates wrong at all. *Id.* (quoting *Robertson v. Lucas*, 753 F.3d 606, 617 n.7 (6th Cir. 2014)). The district court properly granted summary judgment for the officers on Novak's malicious-prosecution claim.

### 3. Prior Restraint

Novak next argues that the officers violated the First Amendment by imposing prior restraints on his speech. A prior restraint is an administrative or judicial order that forbids certain speech *ahead of* when that speech is planned to take place. *Alexander v. United States*, 509 U.S. 544, 550 (1993). It may also include threats of prosecution or an "order to a private party to take a specific action" when an officer acts with government authority. *Novak*, 932 F.3d at 433. Because the right to speak without censorship lies at the core of the First Amendment, prior restraints face a "heavy presumption against" validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

---

[4]Malicious-prosecution claims also require three other elements, one of which is the absence of probable cause. *Thompson v. Clark*, 142 S. Ct. 1332, 1337–38 (2022); *Sykes*, 625 F.3d at 308–09. Because we resolve Novak's claim on the first element, we need not discuss the rest here.

Novak claims that three actions constitute unlawful prior restraints: (1) Riley's television interview announcing the investigation of Novak's page; (2) the seizure of his phone and laptop; and (3) Connor's letter to Facebook. But none of these acts meets the definition of a prior restraint.[5]

First, Riley's interview. Novak claims that Lieutenant Riley "publicly threatened to criminally prosecute" the Facebook page's author. Appellant's Br. 47. And he's right that "the threat of invoking legal sanctions" may be an unlawful prior restraint. *See Bantam Books*, 372 U.S. at 67. But Novak provides no facts to support his claim. While he references a television interview and a press release, he does not point to any record evidence of a threat. By contrast, the officers point out that while Riley did announce a criminal investigation into the page, the interview's focus was to "warn the public" that the page was fake and "to stop any continued interruption at the communication center." R. 95-1, Pg. ID 5508. Indeed, even Novak admitted in his deposition that Riley didn't threaten criminal prosecution in his interview. So Novak has presented no dispute of fact as to whether there was even a threat.

Second, the seizure. On this front, Novak argues that the officers "effected a classic prior restraint" by "block[ing] virtually all channels of communication that would otherwise have been available to Novak." Appellant's Br. 48. In support of this argument, he cites the Supreme Court's decision in *City of Ladue v. Gilleo*, 512 U.S. 43 (1994). In *Gilleo*, the Court expressed skepticism of laws that "foreclose an entire medium of expression" like picketing, distributing pamphlets, or displaying residential signs. *Id.* at 55–56. But the opinion did not classify such restrictions as prior restraints. And more importantly, it's irrelevant here. Seizing Novak's phone and laptop did not block all channels of communication. Indeed, the seizure didn't even block him from using Facebook. Novak remained free to borrow friends' electronics or to use a library computer if he wished to continue his social-media antics. So taking his phone and laptop imposed no prior restraint on Novak's speech.

---

[5]Novak argues that the goal of these actions was as much to prevent future speech as to punish past speech. That may be true, but the problem for him is that the officers' actions don't amount to a prior restraint. So even if they were entirely aimed at censoring the content of future posts on the page, his claim can't succeed.

Last, Detective Connor's letter to Facebook. In this letter—sent soon after the Parma Police Department discovered Novak's page—Connor asked Facebook to retain records related to the page in anticipation of a search warrant. Connor then wrote: "It is further requested that this account be taken down or suspended immediately." R. 98-5, Pg. ID 6413. That's all. No demand; no threat. Indeed, Connor himself testified that he didn't have "any expectation" whether Facebook would comply with his request. R. 107-1, Pg. ID 19171. So the letter was a far cry from an "order" under our prior-restraint doctrine; it was a mere request. *See Novak*, 932 F.3d at 433. What's more, by the time Facebook got around to considering the request, Novak had deleted the page himself. The letter thus failed to have any effect at all on Novak's ability to speak, since he removed the page of his own accord.

So Novak's prior-restraint claim against Lieutenant Riley and Detective Connor fails as well.

### B. Municipal Liability

But Novak didn't just sue the officers. He also sued the City of Parma under a theory of municipal liability. To show that Parma is liable under section 1983, Novak can't just show he suffered a constitutional injury inflicted solely by a City employee. Instead, he must show both that he suffered an injury *and* that the alleged violation was caused by the City's policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There are four avenues to make such a claim: official policy or legislation; action authorized by a designated decisionmaker; failure to train or supervise employees; or a custom of acquiescence in rights violations. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). Novak pursues all but the official-policy path. But even assuming Novak suffered a constitutional violation (no small assumption, as discussed above), none of his arguments is persuasive.

*Authorized Action.* Municipal liability attaches to actions taken by a city's authorized policymakers only when those actions set official municipal policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 477, 481–83 (1986). And as with any municipal-liability claim, that policy must have caused the plaintiff's alleged injury. *Monell*, 436 U.S. at 691.

Novak argues that Parma's Law Director, Timothy Dobeck, set the City's official policy when he determined that Riley and Connor had probable cause to continue investigating Novak. And he contends that because Dobeck had the final say over the City's legal opinions, his advice to the officers set Parma's policy on the matter. *See Bible Believers v. Wayne County*, 805 F.3d 228, 260 (6th Cir. 2015) (en banc). But by Novak's lights, every city prosecutor would "set policy" for the municipality several times a day, every time he assessed probable cause. And that cannot be the case.

This argument also overstates Dobeck's role in both municipal decisionmaking and Novak's alleged violations. The Supreme Court in *Pembaur* was careful to distinguish mere "advice" from "orders." 475 U.S. at 484–85. And here, neither Dobeck nor the officers considered his probable-cause determination an order to keep investigating Novak. *Cf. id.* at 485 (declining to "disingenuously label[] the Prosecutor's clear command mere 'legal advice'"). Yet even if Dobeck had made the final municipal determination that the officers had probable cause to arrest Novak, the judges' independent determinations eliminate the causal connection. *Id.* at 484 (noting that a prosecutor's command that officers forcibly enter "directly caused the violation of petitioner's Fourth Amendment rights"). For both of these reasons, Novak's authorized-action theory fails.[6]

*Failure to Train.* A municipality may be liable for failing to train its police officers only if (1) the officers' training "is inadequate to the tasks that the officers must perform"; (2) this inadequacy stems from the municipality's "deliberate indifference" to the constitutional rights at issue; and (3) the inadequacy "actually caused," or "closely relate[s] to," the claimed violation. *Roell v. Hamilton County*, 870 F.3d 471, 487 (6th Cir. 2017) (cleaned up). Here, Novak claims that Parma should have trained its officers "that pure speech is not a crime" save for a few exceptions. Appellant's Br. 59.

Novak's claim can survive summary judgment if he points to evidence that Parma "fail[ed] to provide *any* training on key duties with direct impact" on free-speech issues.

---

[6]Below, Novak also argued that the officers were considered policymakers under this theory of municipal liability. But as he makes no such argument on appeal, he has abandoned it. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991).

*Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006). He says that's the case because Parma officers' only First Amendment training covered protests. There was no discussion of the complexities of parody or other forms of protected speech. What Novak fails to appreciate is that the intricacies of parody are not part of the officers' "key duties" the way protest management is. So there was no duty to further train them here.

What's more, Novak cannot show that deficiencies in training caused the alleged constitutional violations. Indeed, the officers were trained to contact the Law Department (namely, Dobeck) when difficult questions arose. That's just what they did: Riley and Connor looked to Dobeck for advice before pursuing a case. Once he assured them of probable cause, they obtained independent warrants for Novak's arrest and the search of his apartment from two different judges. As the district court pointed out, it strains belief to think an introductory primer on the First Amendment would have led the officers to a different conclusion than three trained lawyers. So Novak can't show that any failure to train actually caused or closely relates to his objections.

*Custom.* Finally, Novak contends that Parma had an established custom and pattern of "indifference to protected speech in criminal investigations." Appellant's Br. 57. And he runs through a list of cases where Parma had to reverse course over protected-speech claims. But he does not explain how this list of cases could form a "clear and persistent pattern" so strong that it resembles official policy condoned by the City. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). Perhaps unsurprising, since it's a "heavy burden" to show municipal liability based on custom. *Id.* at 433. Novak doesn't even suggest (as he must) that this pattern resulted from a deliberate choice "from among various alternatives" that amounts to an unwritten "legal institution." *Doe v. Claiborne County ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507–08 (6th Cir. 1996) (cleaned up). Nor does he explain how that *policy*—despite independent warrants from Magistrate Judge Fink and Judge O'Donnell—caused a constitutional violation. *See Thomas*, 398 F.3d at 429 (quoting *Doe*, 103 F.3d at 508). He simply argues that "Parma should have known better." Appellant's Br. 58. This is not enough to support a finding of municipal liability, so we affirm.

C. State-Law Claims

Novak brings a jumble of state-law claims against the defendants as well. But Ohio law provides the officers statutory immunity so long as they didn't act "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). To find this exception applicable, Ohio courts have looked for "intent to harm," "a complete lack of care," or "an intentional deviation from a definite rule of conduct." *Henderson v. City of Euclid*, No. 101149, 2015 WL 114601, at *11 (Ohio Ct. App. Jan. 8, 2015). And here, the burden lies with Novak to identify specific facts that undermine the officers' immunity. *See Szefcyk v. Kucirek*, No. 15CA010742, 2016 WL 228601, at *3 (Ohio Ct. App. Jan. 19, 2016).

Novak has not done so. He argues the officers are liable since they acted with "a malicious state of mind." Appellant's Br. 62. Ohio law defines that concept as a "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through unlawful or unjustified conduct." *Schoenfield v. Navarre*, 843 N.E.2d 234, 239 (Ohio Ct. App. 2005) (cleaned up). As we have discussed at length above, the officers' conduct may have been lawful and justified by probable cause. But even if it wasn't, the officers' mistaken understanding of First Amendment law is far from intentional harm.

Novak identifies several pieces of evidence that he argues show the officers acted with malice. He points out that Connor said he "didn't care about Novak's First Amendment rights" and argues that Connor lied to Magistrate Judge Fink, to the grand jury, and at trial. R. 123, Pg. ID 24409. We examine each of these in turn.

In context, Connor's deposition testimony specified that he wasn't focused on First Amendment concerns because it "wasn't the focus of [his] investigation." R. 107-1, Pg. ID 19148. But failure to spot the issue doesn't offer evidence for a jury to conclude that Connor acted with a "desire to harm" Novak, as required to show malicious intent. *Schoenfield*, 843 N.E.2d at 239 (citation omitted). At most, it shows negligence.

Novak next says Connor misled Magistrate Judge Fink to obtain a warrant for his arrest. The purported lies? That callers believed the page was real, and that Connor didn't specify the posts were speech and the page was a parody. But as discussed above, none of these statements

misrepresented the facts in this case. The call transcripts support Connor's assertion that some people thought the page might be real. And describing the facts as "posts" on a "fake" page rather than "speech" on a "parody" page was merely his portrayal. It cannot support a finding of malice.

According to Novak, Connor's grand-jury testimony also evinces his malicious intent. Connor testified before the grand jury that Lieutenant Riley told him about Novak's Facebook page and said that "now the police department including the 911 call center and city hall were getting inundated with phone calls" about the account. R. 86-1, Pg. ID 4431. Connor also testified that he had listened to the calls to "the 911 dispatch center," and he found that "people honest to God believed" that the Department had published the posts and that "this was real information." *Id.* at 4432.

Novak takes issue with these statements because, according to him, the call center was hardly "inundated" by the few calls it received about the page. And he says it was misleading to say the calls came to the 911 dispatch center when no one actually called 911. But that cherry-picks Connor's testimony. Immediately after saying that Riley told him the call center was "inundated," Connor specified that there were just 11 calls. *Id.* at 4431–32. And though it was the non-emergency dispatch line, not 911, that received phone calls about the page, Connor simply noted that the calls had come in to the "911 dispatch center"—he didn't say people had called 911. This was entirely accurate, since both 911 calls and non-emergency calls go to the same dispatch center.

Novak's last objection is about the nature of the calls. He argues that Connor misrepresented their content by saying that callers "honest to God believed" the page was real. *Id.* at 4432. But this is closer to mischaracterization than misrepresentation. The transcripts show that most callers were confused, wondering whether the real page had been hacked and asking the dispatcher to confirm the Department hadn't posted the things they'd seen. Certainly, it was a stretch for Connor to say people thought the *content* of Novak's posts was real. But without more, these inconsistencies can't support a jury finding that Connor intended to harm Novak.

Connor's trial testimony is no more help. As discussed above, Novak has not shown that Connor was anything but truthful, or at most negligent, in discussing his scheduling conflicts on another case (the DNA swab and pretrial conference). So this final piece of evidence does little for Novak in his quest to show malice.

Thus, Novak's state-law claims likewise fail.

### D.  Miscellaneous Claims

*Privacy Protection Act.*  Throughout this litigation, Novak has maintained a claim under the Privacy Protection Act, which bars certain searches and seizures of work-product materials. *See* 42 U.S.C. § 2000aa(a). But on this appeal, Novak fails to develop any argument suggesting we should reverse the district court's grant of summary judgment to the defendants. So he has forfeited this claim. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013) ("Issues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited.").

*Conspiracy.*  Novak also began his suit alleging Riley, Connor, and an unnamed individual conspired to violate his rights. In our prior appeal, we noted that Novak would need to provide more facts to maintain his conspiracy argument. *Novak*, 932 F.3d at 436–37. As the district court found below, Novak failed to do so. And he makes no mention of the claim on appeal. So we affirm the district court. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991).

\*     \*     \*

Little did Anthony Novak know when he launched "The City of Parma Police Department" page that he'd wind up a defendant in court. So too for the officers who arrested him. At the end of the day, neither got all they wanted—Novak won't be punished for his alleged crime, and the defendants are entitled to summary judgment on Novak's civil claims.

But granting the officers qualified immunity does not mean their actions were justified or should be condoned. Indeed, it is cases like these when government officials have a particular obligation to act *reasonably*. Was Novak's Facebook page worth a criminal prosecution, two

appeals, and countless hours of Novak's and the government's time?  We have our doubts.  And from the beginning, any one of the officials involved could have allowed "the entire story to turn out differently," simply by saying "No."  Bari Weiss, *Some Thoughts About Courage*, Common Sense (Oct. 19, 2021).  Unfortunately, no one did.

Because the law compels it, we affirm.